UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 4:17-CR-000514 |
| PAULO JORGE DA COSTA CASQUEIRO MURTA | § § § | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO PAULO MURTA'S
MOTION FOR REVIEW OF MAGISTRATE JUDGE'S DETENTION ORDER**

The United States, by and through its undersigned attorneys, hereby responds in opposition to Paulo Jorge Da Costa Casqueiro Murta's ("Defendant" or "Murta") motion for review of Magistrate Judge's Detention Order. DE 233. As Magistrate Judge Sam S. Sheldon found, Defendant poses a significant flight risk. He is a citizen of a non-extraditing country, has significant assets abroad, and has no ties to the United States. He is charged with participating in an international money laundering conspiracy for his role in structuring transactions to conceal approximately $25.9 million in bribe payments and criminal proceeds. The government's proof against Defendant is strong, and he faces a substantial custodial sentence if convicted. Judge Sheldon appropriately considered the entire record, including the testimony provided by witnesses at hearings on July 22, 2021, and July 26, 2021, and post-hearing briefing by both parties, and ordered that the Defendant be detained pursuant to 18 U.S.C. § 3142(e)(1). This Court should deny Defendant's attempt to overturn that decision.

**I.   Introduction**

As outlined in the government's brief in opposition to Defendant's bail motion, Murta was indicted in April 2019 as part of the government's long-running investigation into bribery and corruption and Petróleos de Venezuela, S.A. ("PDVSA"), the Venezuelan state-owned oil company. Gov't Opp'n to Def.'s Bail Mot., DE 220 at 1-2. The government has announced charges against 28

individuals in connection with this investigation, 22 of whom have pleaded guilty.[1] Murta was charged in a superseding indictment, currently pending before this Court, with conspiracy, money laundering, and violating the Foreign Corrupt Practices Act ("FCPA"). Of his seven codefendants, two have waived extradition, appeared voluntarily, and pleaded guilty; two are contesting extradition from Spain; one is at large; one has avoided extradition by acquiring Spanish citizenship; and the final codefendant, Daisy Teresa Rafoi Bleuler, has fled to Switzerland. *Id.* at 3-4.

Defendant contested his extradition for approximately two years until June 2021, when his final appeal was denied and he was arrested and detained by Portuguese authorities. On July 9, 2021, he was extradited to the United States. At his initial appearance here in the Southern District of Texas on July 12, 2021, U.S. Magistrate Judge Dena Hanovice Palermo temporarily detained him based on the government's motion that under 18 U.S.C. § 3142(f)(2), Murta presented a significant risk of flight and no combination of conditions of release would assure his appearance. *See* Order of Detention Pending Hearing, DE 198. After further hearings and briefing, Judge Sheldon ordered Murta detained pending trial, citing six different factors to conclude that Murta was a risk of flight and subject to detention under Section 3142(e). Order of Detention Pending Trial, DE 228 at 2 (hereinafter the "Detention Order" or "Order").

Judge Sheldon's Detention Order also summarizes the extensive evidence supporting Murta's detention. The Order begins by noting the thoroughness and care by which the Magistrate Court analyzed the issue—holding hearings on both July 22 and July 26, as well as reviewing briefs filed by both parties. *Id.* at 3. The Order lays out the facts: Defendant's Swiss citizenship, his lack of ties to the United States, and his lack of status in this country. *Id.* The Order recounts the charges against Murta, and the codefendants and coconspirators already charged and convicted, before continuing

---

[1] The government respectfully requests to incorporate that brief into its arguments here and refers the Court to pages 2–5 of that document for a detailed procedural history of Murta's case.

through the remaining § 3142(g) factors. Finally, the Order notes that the case against Defendant "is strong" and is based on multiple types of evidence: inculpatory statements, cooperating witnesses, and corroborating documentary evidence. *Id.*

The Detention Order details additional factors that create a risk of flight. These include the long potential prison sentence faced by Murta if convicted; his extensive foreign real estate holdings; his citizenship in a non-extraditable country; his wife's Swiss citizenship; and the residence of his wife's adult children in Switzerland. *Id.* The Order concludes its factual analysis by emphasizing that the risk of flight "is not hypothetical" because Daisy Rafoi, Murta's codefendant, actually fled to Switzerland. The Order ends by explaining that the Magistrate Court gave Defendant an opportunity to identify defendants like Murta who were granted bond, and that of the cases Defendant provided, "none of them were similarly-situated to his own circumstances." *Id.*

On September 15, Defendant filed this motion, seeking to reverse Judge Sheldon's decision. Defendant argues that the Court correctly assessed his lack of ties to the District and his significant ties outside of the United States, but erred in finding that he had no status in the United States, and made only conflicting findings as to the weight of the evidence against him. DE 233 at 2–3. He devotes much of his factual argument to one aspect of whether the evidence against him is strong—that is, whether his statements in a March 2018 interview were in fact inculpatory. *Id.* at 3–6. He argues that he did not make various statements attributed to him, that his memory was imperfect, that he had insufficient time to prepare for the interview, and that he was duped into the interview by alleged government misconduct. *Id.* at 4-6.

Defendant also argues that Judge Sheldon erred legally. He claims the Magistrate Court improperly considered Rafoi's flight as "guilt by association." *Id.* at 7. He claims the Magistrate Court miscalculated the potential penalty at sentencing. *Id.* at 8-9. He claims the Magistrate Court failed to weigh his proffered cases, implying that it was due to government misconduct. *Id.* at 10. He claims

3

Judge Sheldon ignored his "serious medical condition." *Id.* at 11-12. And he claims the government committed misconduct by misleading the Magistrate Judge as to the bond status of his codefendants and coconspirators. *Id.* at 13-17.

This Court should reject each of these arguments and affirm the Detention Order. Murta's motion fails because it disputes few relevant facts, offers no new legal arguments, and makes baseless claims of government misconduct with no basis in fact or law. More importantly, it fails because the record is clear that a significant risk of flight exists, and Defendant should be detained. As the Detention Order explained, Murta is a flight risk. He has the motive, the means, and if released, the opportunity to leave, live with his family in a non-extraditable country, and avoid trial absolutely.

**II.     Defendant's Bond Package is Vague and Inadequate.**

In light of the significant risk of flight described in the Detention Order, Defendant's motion fails to provide a bond package that would provide adequate assurance that he would appear for trial. The Detention Order notes that Defendant has significant financial assets, but the instant motion inexplicably fails to propose a bond amount. *See* DE 233 at 2. Defendant claims that he would live in an apartment that he and his wife have rented, but the government is aware only of a 30-day Airbnb rental. *See* Def.'s Brief in Support of Bail, Ex. 6, DE 213-6. This short-term rental is not a meaningful tie to the Southern District of Texas for purposes of the Bail Reform Act and will have expired long before Defendant's December trial date. Moreover, Defendant's wife, who is his sole family member in the District, is a noncitizen and will likely be required to leave the United States before Defendant is tried. Defendant's bond proposal is wholly insufficient and provides short-term measures that will likely expire before Defendant's trial date. Indeed, Judge Sheldon reviewed the same bond package (which at least contemplated a bond in the amount of $875,000, though only in the event that amount was returned by Portuguese authorities) and found that it was insufficient to reasonably assure the Defendant's appearance in court.

**III.    The Magistrate Court Did Not Err in its Findings of Fact.**

Defendant concedes that the Detention Order correctly identified multiple bases for detention, including a lack of significant community or family ties to this District and significant family or other ties outside of the United States. DE 233 at 2. Defendant, however, disagrees with certain other of Judge Sheldon's findings, including those concerning the strength of the government's case.

Despite Defendant's claims to the contrary, the Detention Order plainly states that the weight of the evidence against the Defendant is strong.[2] DE 228 at 3. Judge Sheldon noted that the government "has multiple cooperating witnesses who will provide direct testimony regarding Defendant's involvement in the scheme and corroborating documentary evidence." *Id.* Relying on that evidence alone the Magistrate Court could have found that the strength of the government's case weighed in favor of detention. The "corroborating documentary evidence" noted by Judge Sheldon includes Defendant's own written statements, in the form of his own emails with his coconspirators and a hand-written flow-of-funds chart, which shows payments flowing to the "amigos" after passing through numerous shell accounts. *See* March 22, 2013, Email and Attachment, attached hereto as Exhibit 1. Those payments to the "amigos" sit at the heart of the FCPA and money laundering scheme charged in the Superseding Indictment. Defendant's motion ignores this documentary evidence and anticipated direct testimony from Defendant's own coconspirators.

Instead, Defendant trains his fire on the government's use of his own statements made to law enforcement in 2018 at his detention hearing—statements which, as explained further below, were in writing, that he and his lawyer had a chance to review and correct, and which he and his lawyer <u>signed</u>. At that interview, Defendant claimed not to know certain of his coconspirators before shifting his

---

[2] Defendant argues that the Magistrate Court made conflicting findings as to the weight of the evidence at the detention hearing. However, the Magistrate Court concluded its assessment clearly, stating: "… from what I hear, I do think it is a strong case against [Murta.]" (7/26 Tr. at 115.) Judge Sheldon subsequently repeated that finding in the Detention Order. DE 228 at 3.

story after he was shown documents, which the government submits is evidence of consciousness of guilt.[3] Defendant, however, argues that because he was not adequately prepared to speak with law enforcement in 2018, his purported failure of recollection should not weigh heavily against him. DE 233 at 6 (noting that Defendant could have "spent more time, effort, and resources to prepare for the interview"). This claim ignores the circumstances of the interview. At the time of the interview, Defendant was being investigated by Portuguese authorities in what his Portuguese lawyer described as "maybe the biggest investigation ever, criminal investigation in Portugal," (7/26 Tr. at 69), concerning the collapse of the Espirito Santo Group. Beginning in 2017, as a result of the pending investigation, Defendant was subject to certain restrictive measures by the Portuguese authorities. *Id.* at 66. Defendant attended the interview with his Portuguese criminal lawyer, who was representing him in the Portuguese investigation. Against that backdrop, in 2018, U.S. federal agents sat alongside Portuguese authorities and asked Defendant questions concerning transactions through Espirito Santo Group accounts. It strains credulity to argue that Defendant was unaware of the subject matter or seriousness of the investigation.

Moreover, during the interview, Defendant had the opportunity to consult with his attorney, who also represented him in the Portuguese proceedings. At the close of the interview, Defendant and his lawyer were given the opportunity to review the interview report prepared by the Portuguese authorities, and they both signed the last page of the document and initialed each page, thereby adopting its content. All of the other attendees at the interview, including Special Agents with

---

[3] During the interview, Defendant was asked, *inter alia*, whether he knew Abraham Shiera, who is a central participant in the conspiracy alleged in the Superseding Indictment, and who had been publicly charged in the United States in 2016 for his role in a sprawling FCPA and money laundering scheme. Murta responded that he knew him only from the news. Defendant further told law enforcement that he had not corresponded with Shiera. It was only after he was confronted with a document that he claimed merely that Shiera was not his client.

Homeland Security Investigations, also signed the last page of the document and initialed each page. *See* Portuguese Interview Report of Defendant, attached hereto as Exhibit 2.[4]

Defendant's claim that he was misled at the time of his interview, or lulled into a false sense of security by the government based on the interviewing agents purportedly referring to him as a witness, is similarly misplaced. DE 233 at 5. The 2018 interview took place more than one year before Defendant was charged by indictment in this case. His claim that he was a target of the U.S investigation at the time of his interview is baseless, as is Defendant's reliance on an inapposite provision of the Justice Manual concerning advice of rights for grand jury witnesses in an effort to conjure a misconduct allegation. *Id.* at 6. The Justice Manual directs prosecutors to advise witnesses of their status before they testify in grand jury to negate "any possible compulsion to self-incrimination which might otherwise exist" in the grand jury setting. *See United States v. Washington*, 431 U.S. 181, 188 (1977). Defendant was not a grand jury witness and his 2018 interview in Portugal was entirely voluntary. As noted above, Defendant was represented by counsel at the time of the interview. Defendant's claim that he was misled is meritless and his claim that agents violated Department policy is frivolous.[5]

Defendant also claims that Judge Sheldon erred in asserting that Defendant has no legal status in the United States. Defendant is correct that he was brought into the country based on a grant of parole, but this objection to the Detention Order is trivial. Defendant's temporary "status" confers only the right to be present in the United States to confront the instant charges. Defendant has no

---

[4] Defendant's argument that the government has not produced informal correspondence with Portuguese authorities is moot. This Court has already denied Defendant's discovery motion on this same issue. *See* Order Denying Def.'s Mot. for Discovery and Inspection, DE 231.

[5] As is his claim that Cesar Rincon was treated differently. *See* DE 233 at 6. At the time of Cesar Rincon's interview with Portuguese authorities, he had already been indicted by a grand jury sitting in this District and had pleaded guilty to his role in the money laundering scheme with which he was charged.

legal status that provides any cognizable tie to the United States or assurance that Defendant will remain in the country were he released on bond.

## IV. The Magistrate Court Appropriately Considered the Section 3142(g) Factors and Ordered Detention.

As set forth in the Detention Order, Judge Sheldon found "[b]y a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required." DE 228 at 2. In coming to that conclusion, Judge Sheldon considered each relevant factor pursuant to Section 3142(g), including the weight of the evidence against Defendant, the length of incarceration faced by Defendant if convicted, significant ties (or lack thereof) to the community, significant family or other ties outside of the United States, legal status in the United States, and the possibility of deportation or removal after conviction. *Id.* at 2-3. Judge Sheldon found that all of these factors weighed in favor of detention.

As discussed above, Defendant does not dispute the majority of Judge Sheldon's factual findings. Rather, he points to law on entirely different issues – determination of guilt or innocence during a trial and the application of the Sentencing Guidelines at the time of <u>sentencing</u>, not during a bond determination – to argue that he should be released. DE 233 at 7-9. Rather than cite to persuasive authority or facts in the record that support his position, Murta reiterates arguments considered and rejected by Judge Sheldon and relies on a series of *ad hominem* attacks on the government.

    A. <u>The Magistrate Court Properly Concluded that Defendant Lacks Ties to the United States and the Consequences of Flight are Severe.</u>

As Judge Sheldon made clear during the detention hearing, and as the Defendant does not even attempt to rebut, if Defendant were "released and both he and his wife fled, then the case would be over, just like it was for [Daisy Rafoi,] another co-defendant." (7/26 Tr. at 115). Judge Sheldon further emphasized this point in ordering detention, noting that the government's concerns about the

8

consequences that would follow if Defendant were to flee to Switzerland were not hypothetical because the government had already lost the ability to extradite Rafoi after she fled to Switzerland. DE 228 at 3. In referencing Rafoi, the Magistrate Court was not improperly using another defendant's actions to assess whether Murta should be detained pending trial, as Defendant contends, but rather pointing to an incontrovertible fact relating to extradition of Swiss nationals from Switzerland. Judge Sheldon thus appropriately considered the consequences of potential flight to Switzerland.

Moreover, the Magistrate Court considered the Defendant's history while on bond in Portugal and found it unpersuasive with respect to a bond determination in the United States. As the government explained at the hearings before Judge Sheldon on July 22 and 26, and in its brief in opposition to Defendant's release (DE 220), the Defendant has no ties to the Southern District of Texas and limited ties to the United States outside of his criminal activity. He is a Swiss citizen, and Switzerland does not extradite its citizens to the United States. His family lives abroad: his wife is a Swiss citizen who resided with Defendant in Portugal; his children, sisters, and mother live in Portugal; and his wife's children reside in Switzerland. Moreover, Defendant's properties in Portugal, worth approximately $3.5 million, were frozen by the Portuguese in connection with the criminal case against him there. If Defendant had fled Portugal, these assets would have been tied up in extensive and lengthy civil proceedings, during which time he would not have been able to sell them. *See* DE 220 at 13; DE 228 at 3. He also would have lost the €750,000 (approximately $875,000) bond that he posted to secure in release.

Magistrate Judge Sheldon considered and rejected Defendant's argument that because he did not flee from Portugal, he does not pose a risk of flight from the Southern District of Texas. Defendant offers no new facts or case law on this point, but instead simply raises the same argument that the Magistrate Judge squarely rejected. DE 233 at 8. Moreover, as Defendant explains in his motion for release (*Id.* at 6, n.2), he has not been formally indicted in Portugal; thus, the circumstances

9

and motivations behind his decision to remain there are entirely different than those in the United States, where he has been indicted <u>and</u> faces a lengthy prison term if convicted. Indeed, Defendant's extensive personal and financial ties to Portugal and the difference in the procedural posture of proceedings against him there, which may have provided incentive for him to remain in Portugal, are precisely the kind of ties that he lacks in the Southern District of Texas.[6] *See United States v. Kachkar*, 701 Fed. App'x 744, 747 (11th Cir. 2017) (upholding a district court's decision to reject an argument by the defendant that a "failure to flee while under investigation meant that [defendant] would not flee after having been indicted").

  B. <u>The Magistrate Court Correctly Concluded that the Significant Penalty Defendant Faces Weighs Heavily in Favor of Detention.</u>

Judge Sheldon properly considered the nature and circumstances of the offenses for which Defendant is charged in determining that he should be detained pending trial. As the government explained in its brief in opposition to Defendant's release, in the Fifth Circuit, the severity of the potential punishment faced by the defendant is considered as part of the nature and circumstances of the offense. DE 220 at 7-8, 9 (citing cases). In making a determination about the severity of the potential punishment, courts look to either a potential sentencing calculation under the United States Sentencing Guidelines or the maximum penalty imposed by the statute. *Id.* That the Sentencing Guidelines are not mandatory pursuant to *United States v. Booker*, 543 U.S. 220 (2005), or that this Court may ultimately impose a non-Guidelines sentence, are factors this Court will undoubtedly consider at

---

[6] The Defendant's proposed agreement to "waive, in writing and on the record, any rights not to be extradited to the US that he has under the Swiss extradition treaty with the US" (DE 233 at 8) is an unenforceable promise based on a misunderstanding of extradition law. Defendant cites to no authority to suggest that Swiss authorities would honor this promise, and the government is aware of no such authority. The fact that a court in in the District of Columbia accepted such a waiver as part of a bond package in a case in which the defendant was released to the custody of a rabbi to live in a religious facility, was charged with a different crime, and where the defendant was from South Africa, not Switzerland, provides no support for release here. *See United States v. Karni*, 298 F. Supp. 2d 129, 133 (D.D.C. 2004).

10

sentencing. In making a bond determination, however, the focus is on the penalty the defendant <u>may</u> face. *See United States v. Stanford*, 341 Fed. Appx. 979, 982 (5th Cir. 2009) (discussing the "daunting sentence" of 375 years that Stanford faced if found guilty on all counts); *see also United States v. Ebrahim*, No. 4:19-CR-0271-SDJ, 2020 WL 1190173 at *5 (E.D. Tex. Mar. 12, 2020) (assessing the nature and circumstances of the offense and finding that though the defendant may ultimately face a lighter sentence if convicted, the facts at the detention stage were insufficient to make a "determination about a likely sentence," and thus relying on the maximum penalty based on the offenses charged). At this stage in the proceedings, it is impossible for the court to know what a defendant's ultimate sentence may be, and thus must rely on calculations that can be made based on the charged offenses.

Nor is the need to avoid unwarranted sentencing disparities, a consideration under 18 U.S.C. § 3553, a factor with respect to whether pretrial detention is warranted under Section 3142(g). Even if the Court were to consider recent sentences imposed in other cases arising out of the government's long-standing investigation into PDVSA, the sentences in the cases cited by Defendant (DE 233 at 9) provide no support for Defendant's argument for bond. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

C. <u>The Magistrate Court Considered the Cases Cited by Defendant But Found Them to be Unpersuasive.</u>

At the conclusion of the detention hearing on July 26, 2021, Judge Sheldon indicated that he was inclined to order detention because the government had shown by clear and convincing evidence that no condition or combination of conditions could reasonably assure the Defendant's appearance. (7/26 Tr. at 115-16). Nonetheless, he declined to rule from the bench and requested that the Defendant file a brief identifying cases "where a similarly-situated defendant was released on bond." DE 228 at 3; *see also* 7/26 Tr. at 116-17. Defendant cited six cases from different circuits in his brief in support of bail. In its brief in opposition to Defendant's release, the government went through

11

each case cited by the Defendant and explained how those cases differed from Defendant's. DE 220 at 10-12. As indicated in the Detention Order, Judge Sheldon considered these cases but found that "none of [the defendants] were similarly situated to [the Defendant's] own circumstances." DE 228 at 3.[7] Defendant's nationwide search for a single analogous case supporting pretrial release was unsuccessful.

Moreover, in its brief in opposition to pretrial release, the government cited to a number of cases from the Fifth Circuit in which similarly-situated defendants were held pending trial in this District. DE 220 at 9. The government also provided the court with the circumstances surrounding the detention of Defendant's coconspirators and codefendants, all of whom were held pending trial. DE 220 at 8-9. These defendants were only released once there was a change in circumstances warranting their release, *i.e.*, their acceptance of responsibility and change of plea to guilty.

### D. The Magistrate Court Adequately Considered and Addressed Defendant's Medical Condition.

Defendant argues that his medical condition "is a factor that should be considered under the Bail Reform Act." DE 233 at 11. The question, however, is not whether a defendant's medical condition can be properly treated at a pretrial detention facility as Defendant suggests (*see id.* at 12); rather a defendant's "physical and mental condition" is but a factor in determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g); *see United States v. Ellis*, 646 Fed.

---

[7] Contrary to Defendant's claim, the government accurately described the Second Circuit's standard. DE 233 at 10. Defendant's argument, one of many attempts to attack the government, is incorrect. The Second Circuit requires courts to make a two-step inquiry, with each step in the inquiry requiring a determination based on a preponderance of the evidence: first, whether the defendant is a risk of flight; and second, if the court finds that there is a risk of flight, whether there are no conditions or combination of conditions that can reasonably ensure the defendant's appearance in court. *See United States v. Dreier*, 596 F. Supp 2d 831, 832 (S.D.N.Y. 2009); *United States v. Madoff*, 586 F. Supp. 2d 240, 247-48 (S.D.N.Y. 2009). The Fifth Circuit does not impose a similar two-step inquiry, and instead requires the court to make one determination by a preponderance.

Appx. 889, 890 (11th Cir. 2016) (affirming pretrial detention of defendant who argued, *inter alia*, that her chronic high blood pressure and recent hernia surgery weighed in favor of release finding that "the district court was entitled to conclude that [defendant's] 'significant overseas resources and connections' and her 'criminal history and her character establish a preponderant risk of flight.'"); *United States v. Marino*, 731 F. Supp. 2d 323, 327 (S.D.N.Y 2010) (denying bail despite defendant's heart condition and noting that "[t]he ultimate issue before the Court is whether any condition or combination of conditions reasonably would assure the safety of the community if Marino were released, not whether release would be better for Marino."); *United States v. Nelson*, No. 18-CR-044-RJA-HKS, 2018 U.S. Dist. LEXIS 98539, *11 (W.D.N.Y. 2018) (denying motion to revoke detention where wheelchair-bound defendant had suffered a stroke prior to detention and had two mini-strokes in custody and explaining that while "it is more difficult for the Defendant to obtain appropriate medical treatment in prison . . . the question under the Bail Reform Act is whether this evidence undercuts the Government's strong argument that no condition or combination of conditions can reasonably ensure the safety of the community").

At the detention hearing, Defendant's counsel spent a considerable amount of time introducing evidence of Defendant's medical history, arguing that "[i]t goes to his ability to get medical care in prison or elsewhere." 7/26 Tr. at 101. In considering this evidence and counsel's arguments, Judge Sheldon correctly stated that this evidence is "not under the G factors." *Id.* In ordering detention, Judge Sheldon did not fail to address Defendant's medical condition, as Defendant suggests; instead, it is Defendant who failed to establish how his medical condition makes him less of a flight risk as required under Section 3142(g). *See Kachkar*, 701 Fed. Appx. at 747 ("Kachkar contends that the federal detention center cannot properly treat his [diabetes and hemochromatosis]. . . . But

Kachkar does not explain why those conditions showed that he was not a flight risk."). Indeed, Defendant's specific medical condition does not prevent him from fleeing the country.[8]

    E. <u>The Government Did Not Mislead the Magistrate Court Regarding Information Accessible in the Public Docket.</u>

The government does not dispute that Defendants Roberto Rincon, Luis Carlos De Leon, Abraham Shiera, and Cesar Rincon were granted bond pending their sentencings following their formal acceptance of responsibility and entry of a guilty plea. That information is readily accessible on the public docket. In no way was the Magistrate Judge misinformed, much less misled. The relevant question is whether those codefendants and coconspirators were risks of flight at the time of their detention hearings. In analyzing the 3142(g) factors, the government simply pointed the Magistrate Court to particular facts other magistrate judges in this District found persuasive in ordering detention of four defendants involved in the same PDVSA scheme as Defendant. When compared to Defendant's circumstances, these facts provide an even stronger basis for Defendant's detention (*e.g.* codefendants' with deeper ties to the United States who were still detained). █

█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
████████████████████████████████████████

---

[8] Defendant's own exhibits show that his medical needs are not being ignored while in detention. *See* DE 233-8, Ex. G (noting that referral to healthcare provider had been made); *see also* DE 233-7, Ex. F at 11-12 (noting that at Defendant's request he "was given J&J COVID vaccine" and that his request for hearing aid batteries was "addressed").

## **CONCLUSION**

Based on the foregoing, the United States respectfully requests that Defendant's motion for review of Magistrate Judge's Detention Order be denied and that the Defendant remain detained pending trial.

Respectfully submitted,

| | |
|---|---|
| JOSEPH S. BEEMSTERBOER | JENNIFER LOWERY |
| ACTING CHIEF | ACTING U. S. ATTORNEY |
| Fraud Section | Southern District of Texas |
| Criminal Division | |
| United States Department of Justice | |
| | |
| */s/ Drew Bradylyons* | */s/ Robert S. Johnson* |
| | |
| DREW BRADYLYONS | JOHN P. PEARSON |
| MARIHUG P. CEDEÑO | ROBERT S. JOHNSON |
| TRIAL ATTORNEYS | ASSISTANT UNITED STATES |
| SONALI D. PATEL | ATTORNEYS |
| ASSISTANT CHIEF | |
| | |
| Fraud Section, Criminal Division | U.S. Attorney's Office |
| U.S. Department of Justice | Southern District of Texas |
| 1400 New York Avenue, N.W. | 1000 Louisiana, Ste. 2300 |
| Washington, D.C.  20530 | Houston, TX 77002 |
| Tel:    (202) 262-7809 | Tel:    (713) 567-9385 |

## CERTIFICATE OF SERVICE

I hereby certify that, on September 29, 2021, I filed the foregoing motion with the Clerk of the Court using the ECF/CM system for filing and service on all counsel of record.

*/s/ Drew Bradylyons*
Drew Bradylyons
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
