UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | **Criminal No. 4:17-CR-514-S** |
| **PAUL JORGE DA COSTA CASQUEIRO MURTA** | |

**PAULO MURTA'S MOTION TO COMPEL DISCOVERY**

Paulo Murta moves this Court to issue a discovery order, under the Court's inherent authority, Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and related authority. He shows as follows:

**I.  Background**

   *A. The Government's MLAT Requests*

During the investigation of this case, the government sought to collect evidence from several foreign countries. *See* Gov't Omnibus Resp., Dkt. 222 at 7–8; Dkt. 233-4. For each request, the government sent formal Mutual Legal Assistance Treaty ("MLAT") letters to authorities in a foreign country, and the foreign governments sent back formal responses. In this case, the government relies on one of those MLAT requests as the basis for its claim that the statute of limitations was suspended for 651 days. Dkt. 222 at 7–8. The government sent that specific MLAT request to Switzerland on November 7, 2016, and the government asserts that it "continued to receive materials from the Swiss Authorities in response to this MLAT through at least August 20, 2018." *Id.* at 8. Additionally, the government sent an MLAT request to Portugal, asking that it schedule an

interview with Mr. Murta, that it allow American agents to conduct the interview, and that it not record any part of the interview. Dkt. 233-4.

As part of discovery, the government has provided Mr. Murta with copies of the formal MLAT communications between the countries, but it has refused to provide any related documents that it deems "informal communications" between the countries. *See* Dkt. 233-5 at 3 ("We will not be producing informal communications with foreign authorities").

### B. The March 2018 Interview in Portugal

On March 5, 2018, the Acting Deputy Director of the Office of International Affairs within the Department of Justice ("DOJ") sent a formal request for assistance to the "Central Authority of Portugal." *See* Dkt. 233-4. In it, the DOJ requested the assistance of Portuguese authorities "pursuant to the laws of the United States and Portugal." *Id.* at 2. In part, the DOJ asked that Portuguese authorities "[c]onduct police interviews of [three people, including] Paulo Jorge Casqueiro Murta." *Id.* at 7. With that request, the DOJ sent a long list of "[q]uestions to be asked and/or areas of questioning." *Id.* At 7–8. The DOJ further asked that two Homeland Security agents be permitted "to travel to Portugal to be present for and, to the extent permissible, participate in the interviews." *Id.* at 8. Furthermore, the DOJ requested "that the Portuguese authorities ***not electronically record (audio and/or video) the interviews.***" *Id.* (emphasis added). Within days, Portuguese authorities scheduled that interview.

The Portuguese Central Department of Investigation and Criminal Action notified Mr. Murta that he was required to appear in one of their offices on March 20, 2018, to be

interviewed as a witness — what the Portuguese system calls an "inquiry." The Department did not explain the basis for its demand or the topic to be discussed. Under Portuguese law, witnesses must attend a law-enforcement inquiry upon request. *See* Declaration of H. Salinas at 2 (Feb. 21, 2022), Exhibit 1. Additionally, Mr. Murta was given a written notice that he must appear for the inquiry and that failure to appear could be punished by a fine or jail time. *Id.*

On March 20, 2018, Mr. Murta appeared with his lawyer, as ordered, and he spent the next nine hours being interviewed by American agents from Homeland Security. *See id.* Portuguese officials were also present, including one Portuguese prosecutor. Consistent with the Portuguese notice that Mr. Murta was only a witness, the American agents reiterated to Mr. Murta and his attorney that he was only a witness, not a subject or a target. *Id.* Mr. Murta was not advised that he could terminate the interview or refuse to answer their questions. *Id.* And the meeting was not recorded — per the Department of Justice directive to Portugal. Dkt. 233-4 at 8.

Since being indicted in this case, Mr. Murta has made several requests for discovery, specifically requesting, *inter alia*, any notes or reports written by the American agents who were interrogating him for nearly nine hours on March 20, 2018. Counsel for the government assert that no American took notes or wrote a report about a nine-hour interview that agents flew to Portugal to conduct. Exhibit 2.

At Mr. Murta's bond hearing, Special Agent Brandon Munoz with Homeland Security Investigations ("HSI") testified. *See* Transcripts, Dkt. 203 & 209. Agent Munoz has been involved in this investigation for about nine years. Dkt. 209 at 12, Lines 10–12.

Although he was not present for it, Agent Munoz described the March 2018 interview in Portugal as "the HSI interview in Portugal." *Id.* at 26, Lines 15–16. He confirmed that it was the American agents who were questioning Mr. Murta during that interview. *Id.* at 26–27. Despite nine years of involvement with this case, Agent Munoz claimed that he did not know how the American government viewed Mr. Murta at the time of that interview. *Id.* at 28, Lines 3–8. He did not know whether Mr. Murta was, at that time, viewed as a witness or a subject of the investigation. *Id.* He also did not know what Mr. Murta was told during that interview. *Id.* at 29, Lines 2–6.

Agent Munoz also testified about notetaking during the March 2018 interview. He said that typically agents would make notes of a day-long interview they flew overseas to conduct. *Id.* at 28, Lines 18–22. Agent Munoz confirmed that those notes would include any statements that agents made to Mr. Murta or his lawyer about the subject of the interview and whether he was a target or a witness. *Id.* at 28–29. As for a more formal report about the interview, Agent Munoz was not sure, but said, "[m]ore than likely, yes," such reports would exist. *Id.* at 33, Lines 5–11.

The government asserts that no American agent — the agents who were exclusively responsible for interrogating Mr. Murta over the span of nearly nine hours — took any notes or created any report during an all-day interview they flew across the Atlantic Ocean to conduct.

## II.  Categories of Discovery

Under Rule 16, the government must provide the defendant with "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to

4

interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Fed. R. Crim. P. 16(a)(1)(A). The government must also permit a defendant to inspect tangible documents and data in its possession, custody, or control, if (1) *the item is material to preparing the defense*, (2) the government intends to use the item in its case-in-chief at trial, or (3) the item was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E) (emphasis added).

### A. *Informal Communications relating to MLAT Requests (both Switzerland and Portugal)*

Mr. Murta requests **all** communications between the Department of Justice and foreign governments, and all internal communications regarding why the United States was making each request, in regard to the MLAT requests relating to this case. This request encompasses all communication, to include "informal" communications. The government asserts, without citation, that it "continued to receive materials from the Swiss Authorities in response to this MLAT through at least August 20, 2018." Dkt. 222 at 8. As this Court knows, however, the government's assertion is insufficient as a legal matter, *cf. United States v. Pursley*, No. 20-20454, at *8 (5th Cir. Jan. 12, 2022) ("the record in this matter is sparse, in large part because the Government failed to produce evidence that is within its possession"), and its efforts to conceal communications relating to these MLAT requests should not be permitted. Those communications are material to the preparation of Mr. Murta's defense, Rule 16(a)(1)(E), and they are essential evidence as to the legal question of when each foreign government took a "final action" as relevant to 18 U.S.C. § 3292. *Pursley*, No. 20-20454, at *7 (this test "requires only that the foreign government

think that is [sic] has provided a complete response") (internal quotation marks and citation omitted). Without access to all communication to and from the foreign governments in response to the DOJ's MLAT requests, Mr. Murta cannot litigate, and this Court cannot properly calculate, the length of any tolling period under § 3292. *See id.*

These communications are vital in light of a recent whistleblower complaint filed by a former DOJ prosecutor.[1] That prosecutor has alleged that some of DOJ's MLAT requests are purely a pretext so that the government can seek an extension of the statute of limitations. *Id.* He further noted that it seemed some prosecutors had "dragged their feet" when responding to questions from foreign countries about their MLAT requests, illustrating that their true intent was not to quickly collect the requested evidence. *Id.*

Before that complaint was made, the government's use of another tolling order had publicly raised suspicion. In that case, the government dropped its reliance on a tolling order as soon as the defendant was granted a hearing to probe "the government's true motivations" in seeking the tolling order. *Id.* (discussing *United States v. Bogucki*, 316 F. Supp. 3d 1177, 1183 (N.D. Cal. 2018)). According to the whistleblower complaint, after that occurred, a DOJ supervisor held an internal meeting admitting that the MLAT had been pretextual, but explaining that such conduct would still be tolerated in the future as

---

[1] *See* Jack Crowe, *Former Justice Department Attorney Warns That Prosecutorial Abuses Go Beyond FISA Process*, Nat'l R., https://www.nationalreview.com/news/former-justice-department-attorney-warns-that-prosecutorial-abuses-go-beyond-fisa-process/ (Feb. 13, 2020); *see also* Aruna Viswanatha and Dave Michaels, *Justice Department Accused of Abusing Process to Extend Statute of Limitations*, Wall St. J., https://www.wsj.com/articles/justice-department-accused-of-abusing-process-to-extend-statute-of-limitations-11580657654 (Feb. 2, 2020).

long as it was not memorialized in writing. *Id.* Those events appear to have taken place around the same time as the MLAT requests and responses in this case.

For all those reasons, Mr. Murta should receive, in discovery, all informal communication in the government's possession regarding the MLAT requests it sent in the course of investigating this case. This request encompasses at least three categories of communication:

1. The informal communications between the United States and Portuguese authorities regarding the March 2018 interview of Mr. Murta;
2. The informal communications between the United States and Portugal, and the United States and any other country, including Switzerland, where an MLAT was submitted in connection with this case; and
3. The internal informal communications of the United States, as to the reasons it was seeking each MLAT request (*e.g.*, emails among prosecutors, between prosecutors and agents, internal memos, etc.).

### B. *Notes and Reports by Agents Present During the March 2018 Interrogation*

Mr. Murta requests any notes or other written materials created by any American law enforcement agent present during his interview in Portugal on March 20, 2018. This request encompasses notes and materials about that interview, whether they were written **before, during, or after** the interview. He additionally requests any memoranda, report, or other written materials of the statements he made during that interview.

During the pretrial conference in this case, the Court said "I'm going to enter an order directing [the government] to inform the Court and counsel as to whether or not any agent by name has taken notes, had notes that he went in there with and then asked questions and what those — whether or not those are in his possession or destroyed. That's what I want to know." Transcript of Pretrial Conference (Aug. 23, 2021) at 29–30, Dkt.

7

225. The government has only partially complied. By email, the prosecution has said that no American agents took notes or created ***any*** record of Mr. Murta's interview — the only written material about that interview, the government says, was a report created by a Portuguese official. But the government has not told counsel or the Court whether any American agent "had notes that he went in [to the March 2018 meeting] with and then asked questions." *Id.*

### C. HSI Policies on Conducting Interviews

During that pretrial conference, the prosecution explained the pivotal nature of the his policies on this question. Regarding the baffling failure of American agents to write down a single word during a nine-hour interview that they flew to Europe to conduct, AUSA Pearson explained, "the question would be whether — if HSI has a policy that they're required to memorandize interviews." *Id.* at 26. Mr. Murta requests a copy of all HSI policies regarding how its agents should conduct and memorialize interviews, regardless of whether the person being interviewed is labeled a "witness," "subject," "target," "defendant," or any other label.

For those reasons, Mr. Murta asks the Court to issue a discovery order regarding the particular items discussed.

Respectfully submitted,

/s/ Samy Khalil
Samy Khalil
Texas Bar No. 24038997
samy@khalil.law
Joshua Lake
S.D. Tex. No. 2695263
Colorado Bar No. 45285
joshua@khalil.law
**KHALIL LAW PLLC**
River Oaks Bank Building
2001 Kirby, Suite 1002
Houston, Texas 77019
713.904.4477 – Telephone
713.565.9915 – Fax

*Attorneys for Paulo Murta*

## CERTIFICATE OF CONFERENCE AND SERVICE

The government opposes this motion. On February 21, 2022, I filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which served a copy on all counsel of record.

/s/ Samy Khalil
Samy Khalil

9