UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:17-CR-000514 |
| | § | |
| PAULO JORGE DA COSTA | § | |
| CASQUEIRO MURTA | § | |

GOVERNMENT'S RESPONSE IN OPPOSITION TO PAULO MURTA'S
MOTION TO DISMISS SUPERSEDING INDICTMENT FOR
FAILURE TO STATE AN OFFENSE, LACK OF JURISDICTION, DUE PROCESS
VIOLATION, AND UNCONSTITUTIONAL VAGUENESS

The United States, by and through its undersigned attorneys, hereby responds in opposition to defendant Paulo Jorge Da Costa Casqueiro Murta's ("Defendant" or "Murta") motion to dismiss the superseding indictment for failure to state an offense, lack of jurisdiction, due process violation, and unconstitutional vagueness. (DE 262). Defendant argues, *inter alia*, that: (1) Count Fourteen, which alleges that he conspired to violate the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78dd-1 *et seq.,* fails due to deficient allegations concerning (a) Defendant's role as an agent of Messrs. Luis Carlos De Leon, Abraham Shiera, Roberto Rincon, and their U.S.-based companies, and (b) Defendant's actions in the United States in furtherance of the criminal scheme; (2) Counts Thirteen, Eighteen and Nineteen, which allege that he laundered money and conspired to launder money, are legally defective because (a) Defendant did not initiate or receive the transactions and because (b) he was not physically present in the United States when the transactions charged in Counts Eighteen and Nineteen took place; (3) the prosecution against Defendant violates due process because his conduct does not have a sufficient nexus to the United States; and (4) the charged statutes are impermissibly vague as applied to Defendant.

Defendant's arguments fail because the government has properly pleaded its allegations; the Superseding Indictment needs nothing more than to track the statutory language and provide a time and date for the defendant's criminal conduct. *See, e.g., United States v. Cluck*, 143 F.3d 174, 178 (5th Cir. 1998) (*quoting United States v. Webb*, 747 F.2d 278, 284 (5th Cir. 1984)) ("To be sufficient, an indictment needs only to allege each essential element of the offense charged so as to enable to accused to prepare [his] defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding."). Further, the allegations against Murta, unlike those against Daisy Rafoi, describe a trip by Murta to the United States in connection with the charged scheme. (DE 129 ¶ 206). The government submits that Defendant's conduct falls squarely within the reach of the FCPA and Money Laundering Control Act ("MLCA"), and that the allegations against Rafoi were similarly proper, Murta's presence in the United States is an additional factor and distinction that Defendant's arguments fail to overcome.[1] For these and the reasons below, Defendant's motion to dismiss should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2019, a grand jury sitting in this District returned a superseding indictment charging Murta, along with other co-defendants, with multiple offenses, including conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Thirteen), conspiracy to violate the FCPA, 15 U.S.C. §§ 78dd-1 *et seq.*, in violation of 18 U.S.C. § 371 (Count Fourteen), and two

---

[1] The government recognizes that several of the arguments Defendant raises in his motion to dismiss are dependent or based on legal rulings made by this Court in its order dismissing the charges against co-defendant Daisy Teresa Rafoi Bleuler (DE 255), in which the Court rejected some of arguments the government raises herein. The government has noticed an appeal to the Fifth Circuit, and its opening brief is due to be filed on March 30, 2022. While the government's appeal is pending, the government reasserts the arguments previously made in order to preserve them in this prosecution. Notably, however, as explained in greater detail below, several of Defendant's arguments can be rejected even were the Court to apply the same conclusions as it came to in dismissing Rafoi's case because Defendant is alleged to have taken action in furtherance of the bribery scheme in the United States.

counts of substantive money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (Counts Eighteen and Nineteen). (DE 129).

These charges arose from Defendant's role in a bribery and money laundering scheme whereby he assisted a group of U.S.-based businessmen, Venezuelan officials, and former Venezuelan officials in laundering the proceeds of their bribery scheme through the international financial system, including through banks in the United States and around the world. The U.S.-based businessmen, Roberto Rincon and Abraham Shiera, who have been charged separately,[2] paid bribes to a group of current and former Venezuelan officials—some of whom are Defendant's co-defendants—in exchange for assistance in corruptly securing energy contracts from Petróleos de Venezuela, S.A. ("PDVSA") and its subsidiaries and obtaining payment priority on outstanding contracts. PDVSA is Venezuela's state-owned and state-controlled oil and energy company. Defendant resided in Portugal during the time period covered in the Superseding Indictment, but traveled to the United States in late February 2012 in connection with the scheme to launder money and pay bribes (DE 129 ¶ 206).

## STANDARD OF REVIEW

A.    <u>Federal Rule of Criminal Procedure 7(c)(1)</u>

An indictment need only be a "plain, concise, and definite written statement of the essential facts constituting the offense charged" and "give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). As a constitutional matter, "an indictment must 1) enumerate[ ] each *prima facie* element of the charged offense, 2) notif[y] the defendant of the charges filed against [him], and 3) provide[ ] the defendant with a double jeopardy defense against future prosecutions." *United States v. Suarez,* 966

---

[2] *See United States v. Roberto Enrique Rincon-Fernandez and Abraham Jose Shiera-Bastidas*, No. 4:15-cr-654 (S.D. Tex.).

3

F.3d 376, 382 (5th Cir. 2020) (internal quotation marks omitted; alterations in *Suarez*); *see also Webb*, 747 F.2d at 284.

"The test of the validity of an indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Webb*, 747 F.2d at 284 (citing *United States v. Hass*, 583 F.2d 216 (5th Cir. 1978)). "Under this liberal review, [the court] look[s] to a practical, non-technical reading of the indictment as a whole, and an indictment will be held sufficient unless 'no reasonable construction of the indictment would charge the offense for which the defendant has been convicted.'" *United States v. Cluck*, 143 F.3d at 178 (citing *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994)); *see also United States v. Balde*, 943 F.3d 73, 89 (2d Cir. 2019) ("the standard for the sufficiency of an indictment is not demanding"; "in order to sufficiently charge a crime, an indictment must do little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime" (internal quotation marks omitted)). "[I]t is generally sufficient that an indictment set forth the offense in the words of the statute itself as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense." *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir.1986) (internal citations omitted); *see also United States v. Cauble*, 706 F.2d 1322, 1351 (5th Cir.1983); *United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir.1983).

B.   Subject Matter Jurisdiction

Section 3231 of Title 18 confers subject matter jurisdiction on district courts to entertain criminal prosecutions. 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States."). "To confer subject matter jurisdiction upon a federal court, an indictment need only charge a defendant with an offense against the United States in language similar to that used in the relevant statute." *United States v. Desurra*, 865 F.2d 651, 654 (5th Cir. 1989). The courts are clear that any alleged defect in the indictment, such as

4

the failure to allege an essential element of an offense, does not deprive the court of subject matter jurisdiction.  *See United States v. Scruggs*, 714 F.3d 258, 263 (5th Cir. 2013); *United States v. Cotton*, 535 U.S. 625, 630-31 (2002); *United States v. Ayika*, No. EP-11-CR-2126-DB, 2014 WL 12528355 at *3 (W.D. Tex. Sept. 15, 2014) (holding, on a motion to dismiss a health care fraud indictment for lack of jurisdiction, that an indictment that charged defendant "with a violation of a federal statute in language similar to that used in the statute" conferred "subject matter jurisdiction upon the Court, notwithstanding any alleged defect in the indictment," even where the indictment did not contain the words "affecting interstate commerce," the jurisdictional element of the statute).

The question of whether a prosecution is an impermissible extraterritorial application of U.S. law, "is a question on the merits rather than a question of a tribunal's power to hear the case." *United States v. Rojas*, 812 F.3d 382, 390 (5th Cir. 2016) (quoting *Villanueva v. United States DOL*, 743 F.3d 103, 107 n. 4 (5th Cir. 2014)); *see also Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) (clarifying that the question of extraterritorial application of a statute is not a question of subject matter jurisdiction).[3]

## ARGUMENT

## I.   The Court Should Deny Defendant's Motion to Dismiss Count 14

Defendant seeks dismissal of Count 14 of the Superseding Indictment, which charges him with conspiring to violate the FCPA pursuant to 18 U.S.C. § 371, because, according to him, (1) the Court does not have extraterritorial jurisdiction over him, despite the fact that the indictment alleges domestic conduct; and (2) the Superseding Indictment fails to allege sufficient facts that he acted as

---

[3] In stating that the extraterritorial reach of a statute limits a court's subject matter jurisdiction, Murta has reached further back in the law, citing the Fifth Circuit's en banc decision in *Boureslan v. Aramco, Arabian Americana Oil Co.*, 892 F.2d 1271 (5th Cir. 1990), without noting its subsequent history. Although the Supreme Court granted certiorari and affirmed the result in that case, *see EEOC v. Arabian American Oil Co.*, 499 U.S. 244 (1991), it later disavowed some of the language in that opinion, explaining that it only "agreed with the lower courts' views of the limited geographical reach of the statute" and that any references to jurisdiction in that case and similar cases were "unrefined," "drive-by jurisdictional rulings" that should be accorded no precedential effect on the question whether the federal court had subject matter jurisdiction.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006).

an agent of a domestic concern or that he committed an FCPA violation in the United States.  Both of Defendant's arguments are without merit, and this Court should deny his motion to dismiss.

"The elements of a conspiracy under 18 U.S.C. § 371 are (1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy." *United States v. Nicholson*, 961 F.3d 328, 338 (5th Cir. 2020) (internal quotation marks omitted).  The Superseding Indictment here alleges two objects of the charged conspiracy: a violation of Section 78dd-2 of the FCPA and a violation of Section 78dd-3 of the FCPA.

The FCPA prohibits payments to a foreign official for purposes of: (1) influencing any act or decision of the foreign official in his or her official capacity; (2) inducing the foreign official to do or not do any act in violation of his or her lawful duty; (3) securing any improper advantage; or (4) inducing the foreign official to use his or her influence with a foreign government or instrumentality thereof to affect or influence any act or decision of the government or instrumentality, in order to assist the payor in obtaining or retaining business for or with, or directing business to, any person.  15 U.S.C. § 78dd-1(a)(1); *see United States v. Kay*, 359 F.3d 738, 743 (5th Cir. 2004).  The act applies to the following categories of persons: (1) issuers of securities, or any officer, director, employee, or agent of an issuer or any stockholder acting on behalf of an issuer, 15 U.S.C. § 78dd-1; (2) domestic concerns (other than issuers)—meaning U.S. citizens, nationals, or residents, or corporations, partnerships, associations, joint-stock companies, business trusts, unincorporated organizations, or sole proprietorships that have their principal place of business in the United States or are organized under the laws of a State, territory, possession, or commonwealth of the United States—or any officer, director, employee, or agent of a domestic concern or any stockholder acting on behalf of a domestic concern, 15 U.S.C. § 78dd-2; and (3) persons (other than issuers or domestic

6

concerns), or any officer, director, employee, or agent of such person or any stockholder acting on behalf of such person, acting while in the territory of the United States, 15 U.S.C. § 78dd-3.

    A.    <u>The Superseding Indictment Sufficiently Alleges that Defendant Took an Action in the United States in Furtherance of the Charged Bribery Scheme for the Purposes of Section 78dd-3</u>

As noted above, Section 78dd-3 applies to any person acting while in the United States. A "person" means "any natural person other than a national of the United States . . . or any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship organized under the law of a foreign nation or political subdivision thereof." 15 U.S.C. § 78dd-3(f)(1).

The Superseding Indictment sets forth the elements of Section 78dd-3, which Defendant and his co-conspirators are alleged to have conspired to violate (¶ 236(b)); notes that the time period for the conspiracy in which Defendant's participation began "in at least 2012" and continued "through at least 2013" in the "Southern District of Texas and elsewhere" (¶236); contains detailed allegations regarding the purpose of the conspiracy, the manner and means of the conspiracy, and overt acts committed in furtherance of the conspiracy (¶¶ 237-257); and realleges and incorporates 219 prior paragraphs of allegations about the offenses (*see* ¶ 235). Plainly, this 75-page indictment puts Defendant on notice of the charges against him. The Superseding Indictment also alleges specifically that "on or about February 28 or 29, 2012," Defendant "traveled to Miami, Florida to meet with Shiera, Shiera Associate 1, and others in connection with the scheme" (¶ 206). He thus is alleged to have committed an act in the United States—specifically, traveling to Miami to attend a meeting with co-conspirators and co-schemers—which was "in furtherance" of the bribery and money laundering scheme.[4] Those allegations are sufficient at this stage in the proceedings.

---

[4] In his motion, Defendant inserts "money-laundering" in brackets into his quotation of paragraph 206 of the Superseding Indictment. DE 262 at 4. In fact, the government alleges that Murta's trip to the United States was in furtherance of both the bribery and money laundering scheme.

Nevertheless, where there is a credible disagreement over what conduct the government is criminally charging . . . it is not impermissible for the court to reach beyond the indictment to factual allegations in the government's pleadings." *United States v. Firtash*, 392 F. Supp. 3d 872, 883 (N.D. Ill. 2019). Here, Defendant does not dispute that he was in the United States on February 28 and 29, 2012, nor could he because his travel records show that he arrived in Miami on February 28, 2012, and left Miami for Caracas on February 29, 2012. Based on email correspondence between co-conspirators in preparation for the meeting, the plan for the meeting was to meet with Defendant on the morning of February 29, 2012, to discuss the proposed structures that Defendant was going to create for Shiera. While Shiera is expected to testify that he did not ultimately attend the meeting in Miami, but his associates, who were in Miami on the same dates as Defendant, were to attend. Shiera is expected to further testify that he conducted all of his legitimate business at BES with other bankers, and that he (or his associates) only met with Murta in connection with the bribery and money laundering scheme. Murta does not dispute that he attended the meeting in his motion to dismiss. (*See*, generally, DE 262 at 14-15).

The Superseding Indictment not only includes allegations sufficient to allege a violation of the FCPA, it also includes allegations sufficient to allege a conspiracy between Defendant, Shiera, Rincon, De Leon, and others. A conspiracy does not require that each overt act alleged be criminal in nature, "it suffices if, however innocent, the *act furthers* the criminal venture." *United States v. Alvarez*, 610 F.2d 1250, 1255 n.5 (5th Cir. 1980). The meeting that Defendant attended did exactly that. The purpose of the meeting was to discuss the bribery scheme and the structures that would be used to transfer the bribe proceeds, and after the meeting, the government will present evidence at trial that after the meeting Defendant began to work on setting up the structures that would be used as part of the scheme. Nonetheless, even without the proffer of evidence that the government expects to present

at trial, at this stage in the proceedings, under the liberal standards of Rule 7(c), the allegations in the Superseding Indictment are more than sufficient.

Despite the fact that the allegations in the Superseding Indictment go beyond the statutory language, Defendant complains that "the superseding indictment does not allege that [he] committed any *criminal* act" in furtherance of the scheme while in the United States. (DE 262 at 14). That is not the law. The statute does not require that Defendant commit a "criminal" act in the United States, it only requires that he commit "any act" in furtherance of the bribe offer, promise, or payment in the United States. 15 U.S.C. § 78dd-3. This is consistent with the structure of the statute, which also criminalizes each use of interstate commerce in furtherance of an offer, promise, or payment of a bribe, regardless of the nature of the wire. *Id.* The language of the statute is clear – just as the use of the "mails" or "means or instrumentalities of interstate commerce" must be in furtherance of the offer, authorization, or payment to a foreign official, so must "any act" in the United States be in furtherance of the offer, authorization, or payment to a foreign official. The word "furtherance" ordinarily means the "act or process of facilitating the progress of something or of making it more likely to occur; promotion or advancement." *Black's Law Dictionary* (11th ed. 2019). Similarly, the Oxford English Dictionary defines the word "furtherance" as "the fact or state of being furthered or helped forward; the action of helping forward; advancement; aid, assistance." *Oxford English Dictionary* (2d ed. 1989). The clause "in furtherance of" in the statute thus makes clear that an "act" in the United States for some other purpose that was not in furtherance of the offer, authorization, or payment would not meet the elements of the offense. Here, the placement of the clause "in furtherance of" after "any act" and before "any offer . . .," indicates that it is the act committed in the United States that constitutes a violation of the statute.

Defendant cites no authority for his novel interpretation of the FCPA, nor could he, because none exists. The Fifth Circuit, in *United States v. Kay*, 513 F.3d 432 (5d Cir. 2007), looked to the plain

language of the FCPA and came to the same conclusion about what the statute required in the context of a wire sent in furtherance of an offer or payment with respect to charges brought under Section 78dd-2.  In *Kay*, the defendants argued that the indictment failed to allege that they made "use of the mails or any means or instrumentality of interstate commerce" in furtherance of a corrupt offer, payment, or promise to pay because the indictment alleged that they used barges and other methods of interstate commerce, including an overnight mail delivery service, to move false documents that underreported the amount of grain on barges going from the United States to Haiti.  *Id.* at 452. According to the defendants, the government failed to prove that the documents were sent in interstate commerce in "furtherance" of the bribes.  Instead, they claimed that the bribes, which were paid in cash in Haiti, were paid to clear the false shipping documents.  *Id.*  The court addressed the issue of whether a "defendant can only be convicted under the bribery portion of the FCPA if the defendant used the mails or other interstate commerce 'in furtherance of making the bribe itself' and not for more broad use of interstate commerce for activities that support the bribe payment."  *Id.* at 453.

In deciding the question, the court declined to look at the legislative history of the FCPA, because the plain language of the statute was sufficiently clear that it applies "to defendants that 'make use of . . . any means or instrumentality of interstate commerce . . . in furtherance of an offer, payment, promise to pay, or authorization [to pay] . . . ."  *Id.*  The defendants in *Kay* tried to portray the false shipping documents, each set of which were charged as a substantive FCPA count in the indictment, as a product of the bribes, rather than documents that were transmitted through interstate commerce in furtherance of the bribes.  However, the court rejected that argument, because the evidence showed that the documents were used to calculate the bribes and thus sent in furtherance of paying the bribes, which were then paid in cash to government officials in Haiti.  *Id.* at 453-54.

The same interpretation that the *Kay* court undertook with respect to the use of the mails or means or instrumentalities of interstate commerce applies to the portion of Section 78dd-3 at issue here: the plain language of the statute is clear—it applies to a defendant, like Murta, who commits *any* act in furtherance of an offer, payment, promise to pay, or authorization to pay in the United States that support the bribe payment. *Id.* at 453.[5]

B.  The Superseding Indictment Sufficiently Alleges that Defendant is an Agent of Domestic Concerns for the Purposes of Section 78dd-2

Defendant also argues that the Superseding Indictment fails to sufficiently allege that he is an agent of a domestic concern pursuant to Section 78dd-2. Defendant's main argument is that the facts in the Superseding Indictment establish that he was an intermediary, and not an agent. (DE 262 at 12-13). Leaving aside the fact that one can be both an intermediary and an agent, Defendant is not quibbling with the sufficiency of the Superseding Indictment, he is actually raising a factual dispute as to whether he qualifies as an agent of Shiera, Rincon, De Leon, and others. The appropriate forum to raise that dispute is at trial, not a motion to dismiss. "[A] defendant may not properly challenge an indictment, sufficient on its face, on the grounds that the allegations are not supported by adequate [or disputed] evidence, for an indictment legally returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for a trial of the charge on the merits." *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975) (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)). Moreover,

---

[5] Defendant urges the Court to use inapposite law regarding extraterritorial jurisdiction to come to the opposite conclusion. (ECF 262 at 15-16 (citing *RJR Nabisco Inc. v. European Cmty.*)). But, Section 78dd-3 does not raise questions of extraterritorial jurisdiction—it requires an act in the United States. Moreover, even applying the test articulated in *RJR Nabisco*, the Court has jurisdiction over Defendant because (1) the FCPA plainly is intended to have extraterritorial reach and (2) the scheme perpetrated by Defendant had numerous substantial ties to the United States. Indeed, the two principal conspirators were U.S.-based businessmen, who used U.S.-registered companies and U.S. bank accounts in furtherance of the scheme, and who took a number of actions in the United States in connection with scheme, including sending emails and text messages, initiating wire transfers, purchasing property, and participating in meetings.

it is well established in the Fifth Circuit that whether an agency relationship exists is a question of fact for the jury.  *See MTO Maritime Transport Overseas, Inc. v. McLendon Forwarding Co.*, 837 F.2d 215, 218 (5th Cir. 1988)  (explaining that the "existence, or lack thereof, of an agency agreement . . . is a question of fact"); *Wood v. Holiday Inns, Inc.*, 508 F.2d 167, 173 (5th Cir. 1975) ("The existence and scope of a principal-agent relationship is generally for the jury to determine."); *Seaboard Properties, Inc. v. Buchanan*, 278 F.2d 679, 681 (5th Cir. 1960) ("Generally speaking, the question of whether an agency relationship exists is a question of fact to be resolved by the jury.").  In addressing the question in the context of the FCPA, the district court in *United States v. Hoskins* came to the same conclusion, explaining that the "existence of an agency relationship is a highly factual inquiry and it was for a jury at trial in the first instance, and not the Court on a motion to dismiss, to determine whether the Government had proven Defendant to have been an agent."  123 F. Supp. 3d 316, 318 (D. Conn. 2015).

Despite Defendant's arguments to the contrary, the government has adequately alleged that Defendant was an agent of Shiera, Rincon, De Leon, and others, and though not required, that the agency relationship "occurred in the United States."  (DE 255 at 21).  As discussed in Section I.A *supra*, Defendant traveled to Miami to attend a meeting with Shiera's associates to discuss the bribery scheme and the structures that would be set up to launder bribe proceeds.  That meeting, which was scheduled to discuss the bribery scheme and the structures that would be used to implement it and occurred on or about February 28 or 29, 2012, is one of the earliest actions the Defendant is alleged to have taken in the Superseding Indictment.  While the government disputes that an agency relationship must include alleged conduct in the United States, that is the ruling of this Court.  But even under that ruling dismissing the Superseding Indictment against co-defendant Daisy Rafoi, the allegations against Defendant are sufficient because the Superseding Indictment contains allegations that Defendant acted unlawfully in the United States.  Whether Defendant was an agent of a domestic concern does not implicate the subject matter jurisdiction of the court or involve an extraterritorial

application of the FCPA.  The government is not required to present "direct evidence of an agency relationship" between Defendant and the domestic concerns with whom he conspired in the Superseding Indictment, particularly where the Superseding Indictment alleges facts underlying the agency relationship between Defendant, Rincon, Shiera, and others.  (DE 255 at 15).

The Superseding Indictment alleges that Defendant acted as an agent of Rincon, Shiera, both domestic concerns, and others, and that he conspired with them to violate the FCPA. (DE 129 ¶¶ 12, 20, 30, 236(a)).  The Superseding Indictment also alleges specific facts related to Defendant's agency relationship, including that Defendant "assisted Rincon and Shiera in opening bank accounts," which were opened at their direction (¶190); created false justifications for the bribe payments, in order to facilitate their payment (¶193); participated in meetings in the United States and Dubai to discuss the scheme and the accounts that Shiera and others wanted him to set up in connection with the scheme (¶¶ 206, 209); helped create documents to justify a bribe payment as a fake loan at the direction of Shiera and his associates, and ensured that bribe payments flowed through bank accounts at BES that Defendant created for the bribe recipients (¶¶ 212-223); and worked at Shiera's direction to find ways to quickly transfer bribe payments (¶¶ 230-232).  At trial, the government will present further evidence of Defendant acting as an agent under Rincon and Shiera's control, but at this stage in the proceedings, the allegations in the Superseding Indictment are sufficient.

C.   The Superseding Indictment Does Not Present a Question of Extraterritorial Application of the FCPA

The Defendant's argument that the FCPA does not apply extraterritorially is both incorrect and irrelevant, because the Superseding Indictment charges domestic conduct, namely, that Defendant traveled to Miami to participate in a meeting to discuss the bribery scheme and the structures that would be used in connection with the scheme.  Moreover, co-conspirators Rincon and Shiera, took a number of actions in the United States, including attending meetings, initiating wire transfers, purchasing real estate, and sending and receiving emails and text messages.  Because the charged

13

conduct is domestic, there is no need to address the extraterritorial application of the statute.  *See Pasquantino v. United States*, 544 U.S. 349, 371 (2005) ("'[The defendants'] offense was complete the moment they executed the scheme inside the United States….This domestic element of petitioners' conduct is what the Government is punishing in this prosecution. . ."); *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 271-72 (2010) (distinguishing *Pasquantino* on the ground that the wire fraud scheme was completed based on conduct in the United States); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 596 (S.D.N.Y. 2014) ("Because all of the conduct material to elements of the Travel Act occurred within the United States, the presumption against extraterritoriality does not apply.").

Defendant attempts to gloss over the fact that he engaged in domestic conduct and argues that the allegations in the Superseding Indictment are insufficient to establish that he took "any criminal act" in furtherance of an FCPA violation in the United States.  As explained in Section I.A *supra*, that simply is not the law.  Defendant can violate the FCPA if he takes "any act" in the United States in furtherance of a payment, promise, offer, or authorization to pay.  Where the government has alleged domestic conduct, there simply is no question of extraterritorial application of the statute for the Court to consider.  Just because Defendant also engaged in conduct that occurred outside the United States, that does not render the entirety of the allegations against him extraterritorial.  As a result, the Court should deny his motion to dismiss on these grounds.

D.   Murta is Liable for FCPA Violations Under General Conspiracy Principles Under Sections 78dd-2 and 78dd-3

Defendant is liable for conspiring to violate the FCPA even if he does not fall under the enumerated categories of persons covered by the statute.  Even assuming, *arguendo*, that Defendant was not an agent of a domestic concern or failed to take any action in furtherance of the scheme in the United States, he is nevertheless liable for conspiring to violate both Sections 78dd-2 and 78dd-3 of the FCPA and has additional liability under Section 78dd-3 because his co-conspirators engaged in acts in furtherance of the conspiracy in the United States, separate and apart from any act committed

by Defendant himself while present in the United States.[6]  *See Hoskins*, 902 F.3d 69, 97-98 (2d. Cir. 2018) (holding that an agent of a domestic concern can violate the FCPA by conspiring with individuals who took actions in the United States).  The general rule in conspiracy and accomplice liability cases is that one who is incapable of committing a particular offense may still be guilty of conspiring to commit, causing, or aiding and abetting that offense.  *See, e.g.*, *Ocasio v. United States*, 136 S. Ct. 1423, 1430 (2016) ("[A] conspirator may be convicted even though he was incapable of committing the substantive offense himself.") (internal quotation marks omitted); *Salinas v. United States*, 522 U.S. 52, 64 (1997) (noting in the bribery context that "[a] person, moreover, may be liable for conspiracy even though he was incapable of committing the substantive offense"); *United States v. Rabinowich*, 238 U.S. 78, 86 (1915) ("A person may be guilty of conspiring although incapable of committing the objective offense.").

In *Gebardi v. United States*, 287 U.S. 112 (1932), the Supreme Court created an exception to this general principle in the limited circumstance where Congress criminalizes an act that necessarily requires the participation of two persons and chooses to cover only one of those persons.  *Id.* at 123 ("We think it a necessary implication of that policy that when the Mann Act and the conspiracy statute came to be construed together, as they necessarily would be, the same participation which the former contemplates as an inseparable incident of all cases in which the woman is a voluntary agent at all, but does not punish, was not automatically to be made punishable under the latter.").  For the *Gebardi*

---

[6] Defendant was charged with violating Section 371 and is subject to the jurisdiction of the United States because, as the Superseding Indictment alleges, overt acts were committed within the United States.  *See United States v. Baker*, 609 F.2d 134, 138 (5th Cir. 1980) ("The objective territorial principle has been asserted successfully . . . even if the defendant never performed any act within the United States [but] he was part of a conspiracy in which some coconspirator's activities took place within United States territory."); *United States v. Davis*, 608 F.2d 555, 556-57 (5th Cir. 1979) ("The jurisdiction of the United States extends to conspiratorial acts occurring outside the country intended to have effects in the United States, at least where an overt act in the United States in furtherance of the conspiracy can be proved.").

Court, it was the "inseparable" nature of the act—the man transporting and the woman being transported—and the necessary participation of both in that act, that led the court to conclude that Congress intended one not to be prosecuted. *Id.*

Subsequent Supreme Court and circuit cases have embraced this principle in the appropriately limited and unusual circumstances outlined in *Gebardi. See, e.g.*, *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 246 (1940) (distinguishing *Gebardi* as a case "where the participation of those . . . against whom the judgment of conviction was reversed was necessary for the existence of the crime charged"); *United States v. Pino-Perez*, 870 F.2d 1230, 1231-32 (7th Cir. 1989) (en banc) ("When a 'crime is so defined that participation by another is necessary to its commission,' that other participant is not an aider and abettor.") (quoting *United States v. Southard*, 700 F.2d 1, 20 (1st Cir. 1983)); *United States v. Lupino*, 480 F.2d 720, 725 (8th Cir. 1973) ("The [*Gebardi*] exception to the general rule is also limited to cases where the essential participants are the only conspirators.").

Indeed, the Supreme Court in *Ocasio* recognized the limited scope of *Gebardi*: "the *Gebardi* Court explicitly reaffirmed the longstanding principle that [i]ncapacity of one to commit the substantive offense does not necessarily imply that he may with impunity conspire with others who are able to commit it" and "ma[de] perfectly clear that a person may be convicted of conspiring to commit a substantive offense that he or she cannot personally commit." 136 S. Ct. 1423, 1432. The Supreme Court explained that *Gebardi's* holding is a limited one: it stands only for the proposition that "when that person's consent or acquiescence is inherent in the underlying substantive offense, something more than bare consent or acquiescence may be needed to prove that the person was a conspirator." *Ocasio*, 136 S. Ct. at 1431-32 (internal quotation marks omitted). *See also Pinkerton v. United States*, 328 U.S. 640, 643 (1946) (*Gebardi* applies "where the definition of the substantive offense excludes from punishment for conspiracy one who voluntarily participates in another's crime," and it is an exception "of a limited character").

16

In *United States v. Castle*, 925 F.2d 831 (5th Cir. 1991), the Fifth Circuit relied on *Gebardi* in holding that foreign officials, who do not fall within the categories of covered persons under the FCPA, may not be prosecuted under the general conspiracy statute for conspiring to violate the act. *Id.* at 832-33. The court (through its incorporation of the district court's opinion) stated that Congress intended the FCPA to deter and punish certain activities that necessarily involve the agreement of at least two people, but Congress chose to punish only one party to the agreement. *Id.* at 833. "[B]y the same analysis" as in *Gebardi*, the court said, it "may not allow the Executive to override the Congressional intent not to prosecute foreign officials for their participation in the prohibited acts." *Id.* Although the court in *Castle* noted that it did not see *Gebardi* as applying only to "protected" persons, *id.* at 833-34, it made clear that it was relying on *Gebardi* in finding "an affirmative legislative policy to leave unpunished a well-defined group of persons who were necessary parties to the acts constituting a violation of the substantive law," *id.* at 836.

*Castle*'s narrow holding—that foreign officials, who are "necessary parties" to FCPA violations, were affirmatively excluded from the act's reach and therefore, under *Gebardi*'s limited principle, cannot be liable for conspiracy to violate the statute—is inapplicable here. Defendant was a facilitator, and a member of the conspiracy, but he was not the foreign official bribe recipient. Thus, Defendant is not a necessary party to the FCPA offense, and his consent or acquiescence was not inherent in the substantive offense. *See Ocasio*, 136 S. Ct. at 1431-32.

Indeed, rather than undermining it, *Castle supports* Defendant's liability as a conspirator: in describing the FCPA's legislative history, the court stated that "[i]n the conference report, the conferees indicated that the bill would reach as far as possible, and listed all the persons or entities who could be prosecuted. *The list includes virtually every person or entity involved, including foreign nationals who participated in the payment of the bribe when the U.S. courts had jurisdiction over them*." 925 F.2d at 835 (citing H.R. Conf. Rep. No. 831) (emphasis added). *See also id.* at 835 ("Congress included *virtually every possible*

*person connected to the payments* except foreign officials" and therefore "it is only logical to conclude that Congress affirmatively chose to exempt this *small class of persons* from prosecution.") (emphasis added).

Defendant's argument is further undermined by the 1998 amendments to the FCPA.  In enacting 15 U.S.C. § 78dd-3, the territorial jurisdiction provision, Congress pronounced that, "[a]lthough this section limits jurisdiction over foreign nationals and companies to instances in which the foreign national or company takes some action while physically present within the territory of the United States, *Congress does not thereby intend to place a similar limit on the exercise of U.S. criminal jurisdiction over foreign nationals and companies under any other statute or regulation*."  S. Rep. No. 105-277 at 5; H.R. Report No. 105-802 at 23 (emphasis added).  Thus, more than merely leaving undisturbed the general principle that 18 U.S.C. §§ 2 and 371 shall apply to those statutes enacted in their wake, Congress provided an unambiguous statement that it intended them to apply in cases just such as this.

Accordingly, under standard conspiracy principles, even assuming, *arguendo*, that Defendant did not fall within the substantive reach of the FCPA based on taking an act in furtherance of the conspiracy within the United States and based on his status as an agent of a domestic concern, he can still be liable for conspiring to violate the statute.  *See United States v. Lake*, 472 F.3d 1247, 1265 (10th Cir. 2007) (distinguishing *Castle* because "the foreign official in *Castle* had agreed to be paid a bribe" and "the role of the defendant coconspirator was so central to the commission of the substantive offense that the failure of the statute defining the substantive offense to prohibit that role explicitly was a compelling indication of legislative intent not to punish such a coconspirator"); *id.* at 1264-66 (rejecting the argument that one cannot be charged with conspiring to circumvent the internal controls of a publicly traded company under 15 U.S.C. § 78m because, unlike in *Gebardi* and *Castle*, "[t]he involvement of one defendant as a coconspirator was hardly essential for the other defendant to commit the substantive circumvention offense").

The government respectfully submits that the Court should not apply its holding in *United*

*States v. Rafoi*, which is based on its reading of the Second Circuit's decision in *United States v. Hoskins*, 902 F.3d 69 (2d Cir. 2018), and instead should take the path of the district court in *United States v. Firtash*, 392 F. Supp. 3d 872 (N.D. Ill. 2019), which declined to follow *Hoskins* and held that defendants—who were not even alleged to be agents of domestic concerns or qualifying foreign nationals—could be liable for conspiring to violate the FCPA. *Id.* at 888-92. The *Firtash* court concluded that the defendants there could not "fairly be described as victims of the alleged crimes, nor are they members of a group the FCPA was designed to protect. And while they were certainly alleged to be involved in the alleged crimes, their participation as co-conspirators was not definitionally 'essential' to the statute's violation." *Id.* at 892. Accordingly, the *Gebardi* exception to conspiratorial liability did not apply. *Id.*

Even assuming *arguendo* that the Superseding Indictment insufficiently alleges Defendant's status as an agent or the Defendant's commission of an act in furtherance of the conspiracy in the United States, he is properly charged with conspiring to violate the FCPA under general conspiracy principles.

## II.   The Defendant's Motion to Dismiss Counts Thirteen, Eighteen and Nineteen Should be Denied.

Defendant's arguments regarding Counts Thirteen, Eighteen and Nineteen should likewise be rejected. Defendant claims that the money laundering counts (both substantive and conspiracy) fail to state offenses against him because: (1) Defendant did not commit any money-laundering conduct in the United States; and (2) the transfers charged in Counts Eighteen and Nineteen were not "to the defendant or made by the defendant." (DE 262 at 16-17). Defendant bases his arguments on an incorrect interpretation of Section 1956(f), reading it to require—contrary to its plain language—that Defendant be physically present in the United States when the transactions charged in Counts Eighteen and Nineteen were made, and that he made them. Defendant also ignores facts and charges pled in the indictment, including that Defendant travelled to the United States in connection with the

scheme, (DE 129 ¶ 206), and that Defendant both *caused, and aided and abetted,* the making of the wire transfers in violation of 18 U.S.C. § 2.

      A.    <u>Counts Eighteen and Nineteen Properly Charged Money Laundering Transactions Falling Within the Extraterritorial Provision of the Money Laundering Control Act, 18 U.S.C. § 1956(f)</u>

According to Defendant, Counts Eighteen and Nineteen fail because the Superseding Indictment does not allege that Mr. Murta committed any money-laundering conduct in the United States.  (DE 262 at 16).  More specifically, he complains that the indictment does not allege that he was "in the United States at the time of the two transactions listed in Counts 18 and 19," and that "the alleged transfers of money were not made *by* or sent *to* Mr. Murta."  (*Id.* at 17).  Defendant also contends that Counts Eighteen and Nineteen are, in his words, "discreet offenses," occurring only on March 25 and May 8, 2013, the days of the respective wire transfers, which, in his view, means that "the crime consists only of the transaction, not actions taken before or after the transaction."  (*Id.* at 17-18).

These arguments fail for a number of reasons, but first among them is the plain language of the statute.  The extraterritorial jurisdiction provision of the money laundering statute, 18 U.S.C. § 1956(f), provides:

There is extraterritorial jurisdiction over the conduct prohibited by this section if—

(1) the conduct is by a United States citizen or, *in the case of a non-United States citizen, the conduct occurs in part in the United States*; and

(2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000."

18 U.S.C. § 1956(f) (emphasis added).  In interpreting Section 1956(f), Defendant both ignores the plain language of the statute as written, and he engrafts new language onto the statute.  Ultimately, Defendant's reconstituted version of the statute renders it meaningless.

First, Defendant fails to acknowledge that the statute only requires that "part" of the money laundering "conduct" occur in the United States, rather than all of the conduct. In making this distinction, the statute implicitly acknowledges that the prohibited money laundering conduct is not just one discreet act, such as only the sending or receipt of a wire in the United States. The statute defines the terms "conducts," "transaction," and "financial transaction." 18 U.S.C. 1956(c)(2)-(4). Those definitions establish that the verb "conducts" as used in subsections (a)(1) and (a)(3) extends to "initiating, concluding, or participating in initiating, or concluding" the relevant transaction. 18 U.S.C. 1956(c)(2). The term "conducts" involves multiple parts, some of which may be occurring in the United States and some not. For instance, in a cross-border wire transfer, the sending of the wire may be occurring in the United States, but obviously the receipt of the wire would be happening somewhere else, so that the prohibited conduct, the wire transfer, is happening "in part in the United States" and in part elsewhere. Defendant would focus solely on the portion of the money laundering conduct occurring in the United States, as if that encompassed the entirety of the money laundering conduct, and claim that what he did outside the United States, therefore, does not fall within the statute. This view directly conflicts with the statute's acknowledgement that "part" of the money-laundering "conduct" is happening outside the United States.

Defendant's contention that he must be physically present in the United States at the time of the money laundering conduct and that he personally perform that conduct in the United States would add two entirely new requirements to the plain language of Section 1956(f). Nowhere in Section 1956(f) does it state that Defendant must himself be present in the United States and that he personally be the one to send or receive the funds in the United States. The statute also does not state that it must be Murta's own bank account that sends or receives the funds, as he suggests. (*See* DE 262 at 18 (arguing that it was Rincon's accounts that sent and received the funds and not Murta's)).

Consistent with the plain language of the statute, courts interpreting Section 1956(f) have not required a defendant to be physically present in the United States, requiring only that some part of the *conduct* occur here.  The requirements for extraterritorial jurisdiction are met when part of *a transaction* constituting the charged conduct occurs in the United States.  *See United States v. Garcia*, 533 F. App'x 967, 982 (11th Cir. 2013) (holding that requirements of extraterritorial jurisdiction met for foreign defendant where evidence shows transaction was initiated in United States); *Firtash*, 392 F. Supp. 3d at 886 (noting, in a case where certain defendant has not engaged in conduct in the United States, that courts generally hold that a transfer from a foreign account to an account at a financial institution in the United States and a transfer from an account in the United States to a foreign financial institution occur in part in the United States under § 1956(f)) (quoting *United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 93 (D.D.C. 2017)); *United States v. Stein*, No. 93-cr-0375, 1994 WL 285020, at *4-5 (E.D. La. June 23, 1994) (noting § 1956(f) satisfied as to noncitizens who cause the transfer of money from United States to London, even when they were not physically present in the United States when the transaction occurred).  In *Garcia*, the defendant, who was not alleged to have engaged in any conduct in the United States and was charged with money laundering and drug trafficking, argued that jurisdiction under the MLCA should not extend to conduct that took place "largely outside the United States."  The court, in rejecting that argument, noted that the requirements for extraterritorial jurisdiction were met where cash shipments originated in the United States.  *Garcia*, 533 F. App'x at 982.

On their face, Counts Eighteen and Nineteen allege conduct that took place "in the Southern District of Texas and elsewhere," (DE 129 ¶ 261), thereby adequately notifying Defendant of the location of the conduct that provides extraterritorial jurisdiction.  *See United States v. Hagen*, No. 3:19-cr-00146-B, 2020 WL 1929848, *10 (N.D. Tex. Apr. 21, 2020) (denying defendants' motion to dismiss for failing to list specific transactions at issue and details of those transactions; holding that indictment

stating that defendants "transferred funds from somewhere in the United States to a place outside United States, with the intent to promote unlawful activity," sufficiently alleged conspiracy). In addition, Counts Eighteen and Nineteen incorporate by reference other factual allegations in the Indictment. (DE 129 ¶ 260). Specifically, they allege that the payments of $4,456,336.31 and $4,000,000 were transferred from Rincon Company 2 to Rincon Company 8. *Id.* ¶ 261. The Superseding Indictment explains that Rincon Company 2 was a company organized under the laws of Texas and headquartered in the Southern District of Texas. *Id.* ¶ 22. The Superseding Indictment plainly alleges that at least part of the laundering conduct took place in the Southern District of Texas. *Garcia*, 553 F. App'x at 982 (explaining that there is extraterritorial jurisdiction even where most of the laundering activity occurred outside of the U.S., because 18 U.S.C. § 1956(f) requires only that part of the conduct occur within the United States); *United States v. Bodmer*, 342 F. Supp. 2d 176, 191 (S.D.N.Y. 2004) (the clear intent of 18 U.S.C. § 1956(f) is to include foreigners within the scope of the money laundering statute); *Stein*, 1994 WL 285020, at *4-5 (holding that 18 U.S.C. § 1956(f) confers jurisdiction over a foreign person who remains abroad but causes the transfer of money from the U.S. to London).

If Defendant's interpretation of Section 1956(f) were accepted, conferring jurisdiction only over defendants who are physically present in the United States for some portion of the offense, then the extraterritorial reach of the statute would be read out of existence. A defendant who commits a portion of the alleged offense while physically present in the United States is not acting "extraterritorially." This absurd result demonstrates that Defendant's interpretation of Section 1956(f) cannot be correct.

B.   Defendant Caused and Aided and Abetted a Wire Transfer

In addition to both ignoring and altering the plain language of the statute, Defendant ignores the facts and charges pleaded on the face of the Superseding Indictment. The Superseding Indictment

charges Defendant with violating Section 1956(a)(2)(A) and Section 2, the aiding and abetting statute. Defendant claims that the money laundering allegations in the Superseding Indictment are deficient because "the alleged transfers of money were not made *by* or sent *to* Mr. Murta." (DE 262 at 17). Counts Eighteen and Nineteen allege, *inter alia*, that Defendant did "knowingly conduct, and aid, abet, and cause others to conduct . . . [a] financial transaction[.]" (DE 129 ¶ 261). This charging language is consistent with the text of 18 U.S.C. § 2, which states that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2(b). Defendant's effort to read 18 U.S.C. § 2 out of Counts Eighteen and Nineteen is foreclosed by the Fifth Circuit. In *United States v. Cavalier*, the Court rejected the argument Defendant's seeks to make here:

> "Cavalier also argues that § 1956(a)(1)(A)(i) applies only to one who conducts or attempts to conduct a financial transaction involving proceeds, and not one who causes to be conducted such a transaction. Because Cavalier fails to read § 1956 in the context of § 2(b), we reject this argument. Undoubtedly, if Cavalier himself had sent the proceeds of his mail fraud to GMAC in order to satisfy the lien, he would have been punishable under § 1956."

*United States v. Cavalier*, 17 F.3d 90 n.2 (5th Cir. 1994) (citation omitted). The court should follow *Cavalier* and deny Defendant's motion to dismiss Counts 18 and 19.

### C.   Defendant Is Properly Charged with Conspiracy to Commit Money Laundering

Defendant further argues that Count Thirteen should be dismissed because the substantive money laundering offenses charged in Counts Eighteen and Nineteen are defective. (DE 262 at 18). This argument is entirely unavailing, as Count Thirteen expressly alleges that Murta travelled to the United States in connection with the scheme. (DE 129 ¶ 206). In light of this allegation, the Court need not reach the issue of whether Murta is subject to the extraterritorial provision of the MCLA. Count Thirteen alleges a money laundering conspiracy taking place in the Southern District of Texas, giving Defendant appropriate notice of the charges. (*See, e.g.*, DE 129 ¶ 186 ("From in or around 2012 and continuing until at least 2013, in the Southern District of Texas and elsewhere. . . . ")).

Defendant's conduct in the United States subjects him to conspiracy liability in the United States, but even if he had not travelled here, his motion to dismiss should be denied. A defendant need not travel to the United States to be convicted of conspiring to launder money. *See United States v. Sadighi*, 199 F.3d 1334 (9th Cir. 1999) (holding that the government has the power to prosecute every member of a money laundering conspiracy that takes place in United States territory, including those who never entered the United States) (citing *United States v. Correa-Negron*, 462 F.2d 613, 614 (9th Cir. 1972)). As the Fourth Circuit recently held, Section 1956(f)'s extraterritorial reach applies to money laundering conspiracies under Section 1956(h). *United States v. Ojedokun*, 16 F.4th 1091, 1103-1108 (4th Cir 2021). In that case, the Fourth Circuit rejected the argument that Section 1956(f) "cannot apply" where the defendant's "actions occurred entirely overseas and [the defendant] did not enter the United States at any time during the conspiracy." *Id.* at 1106. Rather, as the Fourth Circuit explained, "by making an agreement with at least one resident of the United States and engaging in a conspiracy extensively carried out in this country, [the defendant] took part in a course of conduct relevant to the § 1956(h) charge that transpired within the United States, placing his actions squarely within the confines of § 1956(f)(1)." *Id.* at 1108. The relevant conduct in this case likewise took place "in part" in the United States, and therefore Murta can be held liable for money laundering conspiracy based on the Superseding Indictment's allegations.

## III.   This Conspiracy's Substantial Nexus to the United States Does Not Violate Due Process

Defendant cites *United State v. Lawrence*, 727 F.3d 386 (5th Cir. 2013), along with inapposite cases regarding civil jurisdiction, and claims that this prosecution violates due process because there is an insufficient nexus between Defendant and the United States. In prosecutions of non-U.S. citizens, "due process requires the government to demonstrate that there exists a sufficient nexus between the conduct condemned and the United States' such that application of the statute would not be arbitrary or fundamentally unfair to the Defendant." *Lawrence*, 727 F.3d at 396 (citation omitted).

25

Here, Defendant took a trip to the United States in connection with the scheme where he availed himself of United States jurisdiction.  But even more importantly, Defendant participated in a sprawling intercontinental money laundering and bribery scheme that was principally for the benefit of two wealthy businessmen residing in the United States, Roberto Rincon and Abraham Shiera, both of whom have pleaded guilty.  These bribe payers owned businesses registered in the United States, for which Murta helped win contracts by establishing structures to funnel money to Venezuelan officials.  Defendant's due process argument is wholly meritless; Defendant traveled to the United States in connection with the scheme, and the scheme charged in the Superseding Indictment has a substantial nexus to the United States.

## IV. Neither the FCPA nor the Money Laundering Statute is Unconstitutionally Vague as Applied to Murta

Defendant's unconstitutional vagueness arguments also fail.  Defendant argues for dismissal of the "first half of Count 14 against Mr. Murta . . . because the term 'agent' would be unconstitutionally vague as applied" to him.  (DE 262 at 32).  To be clear, Defendant does not argue that the term itself is vague; Defendant takes issue with the alleged facts that support an agency relationship in the Superseding Indictment.  However, as previously discussed, that is not a constitutional vagueness argument—it is a factual claim that Defendant does not meet the elements of the statute.  Such factual claims are for a jury to decide.

A criminal statute is constitutionally vague if it "either forbids or requires the doing of an act in terms so vague that [individuals] of common intelligence must necessarily guess at its meaning and differ as to its application."  *United States v. Lanier*, 520 U.S. 259, 266 (1997) (citation omitted).  The Fifth Circuit has held that "[t]he FCPA delineates seven standards that may lead to a conviction" and "[a]ll are phrased in terms that are reasonably clear so as to allow the common interpreter to understand their meaning."  *United States v. Kay*, 513 F.3d 432, 441 (5th Cir. 2007).  While the government has alleged sufficient facts relating to Defendant's agency relationship with domestic

concerns pursuant to the FCPA, (*see supra* pp. 12-13), Defendant believes that at most the government alleges that he was a contractual service provider.  (DE 262 at 33).  However, the constitutional vagueness doctrine is not implicated merely because "it may at times be difficult to prove an incriminating fact[,] but rather because it is unclear as to what fact must be proved."  *FCC v. Fox Television*, 567 U.S. 239, 253 (2012).  "Nor can a court declare a law unconstitutionally vague based on 'the mere fact that close cases can be envisioned' under its provisions."  *Consumer Fin. Prot. Bureau v. ITT Educ. Servs.*, 219 F. Supp. 3d 878, 900 (S.D. Ind. Mar. 6, 2015) (citing *United States v. Williams*, 553 U.S. 285, 305-06 (2008)).  Rather, "courts refuse to apply a statutory standard only where it is so amorphous that reasonable observers have no choice but to 'guess at its meaning[,] and differ as to its application.'"  *Id.* (citing *Connally v. General Constr. Co.*, 269 U.S. 385, 391, (1926)).  "[P]erfect clarity and precise guidance have never been required."  *Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989).

Determining the meaning of "agent" does not require guesswork or subjective judgment.  As recognized by this Court, while the term is not defined in the statute, "courts have held that the term's common law meaning is intended by Congress."  (DE 255 at 5n.6) (citations omitted).  Indeed, what is required for an agency relationship has clear meaning in the law.  *See Christiana Trust v. Riddle*, 911 F.3d 799, 803 (5th Cir. 2018) ("To determine whether an agency relationship exists, the Supreme Court looks to the Restatement of Agency[.]") (citing *Meyer v. Holley*, 537 U.S. 280, 285 (2003)); Restatement (Third) of Agency § 1.01 ("Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.").  Defendant here does not argue that the term "agent" itself lacks clear meaning in the law, thus no ambiguity exists and much like the constitutional vagueness doctrine, the rule of lenity does not apply.  *United States v. Casillas-Casillas*, 845 F.3d 623, 626 (5th Cir. 2017) ("The rule of lenity . . . applies only when, after consulting traditional canons of statutory construction, [a court is]

left with an ambiguous statute.") (citation omitted).  In the context of the FCPA, the Fifth Circuit observed that "a man of common intelligence would have understood that … in bribing foreign officials, [he] was treading close to a reasonably-defined line of illegality." *United States v. Kay*, 513 F.3d 432, 442 (5th Cir. 2007).  Moreover, Portugal and Switzerland are both signatories to the OECD Convention on Combating Bribery of Foreign Public Officials in International Business Transactions and Related Instruments, thus similar laws prohibiting bribery of foreign officials exist in both jurisdictions in which Defendant has held citizenship.[7]  Here, Defendant conspired with and served as an agent to U.S. businessmen who were paying bribes to Venezuelan officials.  It is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340 (1952).  At trial, the government will submit evidence of Defendant's furtive actions (*e.g.* referring to bribe recipients as "amigos" in documents shared with his co-conspirators) to establish that Defendant knew he was violating the law

Defendant cites this Court's decision in *United States v. Rafoi* as a basis for dismissal based on constitutional vagueness.  The Court ruled that the meaning of "agent" is a question implicating the Court's subject matter jurisdiction.  (DE 255 at 22).  As previously discussed, (*see supra* pp. 11-12), the government respectfully disagrees that "agency" presents a jurisdictional question; whether or not an agency relationship exists is "highly factual" and for a jury to decide.  *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 522 (2d Cir. 2006); *Gay v. Barge 266*, 915 F.2d 1007, 1012 (5th Cir. 1990) (directed verdict as a matter of law was improper because, among other things, "a reasonable jury might find that Reese himself acted as an agent of Brown & Root in its capacity as shipowner").

---

[7] *See* OECD Ratification Status as of May 2018, available at: https://www.oecd.org/daf/anti-bribery/WGBRatificationStatus.pdf.

Finally, Defendant argues in wholesale fashion that the court should dismiss Counts Thirteen, Eighteen, and Nineteen because "application of the FCPA, money-laundering, and conspiracy statutes to Mr. Murta's alleged conduct" render those statutes unconstitutionally vague.  (DE 262 at 35).  But aside from his agency argument, Defendant fails to identify any particular provisions in those statutes he finds vague, making it impossible to assess his vagueness challenge.  *See United States v. Ortiz*, 738 F. Supp. 1394, 1398 (S.D. Fla. June 1, 1990) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid.") (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  Accordingly, these arguments should also be rejected.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that Defendant's motion to dismiss the Superseding Indictment be denied.

Respectfully submitted,

| | |
|---|---|
| JOSEPH S. BEEMSTERBOER | JENNIFER LOWERY |
| ACTING CHIEF | ACTING U. S. ATTORNEY |
| Fraud Section | Southern District of Texas |
| Criminal Division | |
| United States Department of Justice | |

*/s/ Drew Bradylyons*          */s/ Robert S. Johnson*

| | |
|---|---|
| DREW BRADYLYONS | JOHN P. PEARSON |
| MARIHUG P. CEDEÑO | ROBERT S. JOHNSON |
| TRIAL ATTORNEYS | ASSISTANT UNITED STATES |
| SONALI D. PATEL | ATTORNEYS |
| ASSISTANT CHIEF | |

| | |
|---|---|
| Fraud Section, Criminal Division | U.S. Attorney's Office |
| U.S. Department of Justice | Southern District of Texas |
| 1400 New York Avenue, N.W. | 1000 Louisiana, Ste. 2300 |
| Washington, D.C.  20530 | Houston, TX 77002 |
| Tel:     (202) 262-7809 | Tel:     (713) 567-9385 |

## CERTIFICATE OF SERVICE

I hereby certify that, on March 7, 2022, I filed the foregoing motion with the Clerk of the

Court using the ECF/CM system for filing and service on all counsel of record.

*/s/ Drew Bradylyons*
Drew Bradylyons
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice

30