UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **PAULO JORGE DA COSTA CASQUEIRO MURTA** | **Criminal No. 4:17-CR-514-S** |

**PAULO MURTA'S SUPPLEMENT AND REPLY REGARDING HIS MOTION TO SUPPRESS STATEMENTS MADE IN VIOLATION OF THE FIFTH AMENDMENT AND HIS *MIRANDA* RIGHTS**

## Table of Contents

I. Multiple factual disputes require an evidentiary hearing. ............................................. 3

II. Mr. Murta was in custody for *Miranda* purposes because a reasonable person in his position would not have felt at liberty to terminate the interrogation and leave. ... 4

III. The length of the interrogation "raises considerable suspicion" that Mr. Murta was subjected to a custodial interrogation. ................................................................. 7

IV. The government asks the Court to interpret Portuguese law, but it does not provide any authority for its interpretations. ................................................................ 9

V. American authorities misled Mr. Murta and his counsel, such that they lacked essential knowledge about the nature of Mr. Murta's rights and risks, so Mr. Murta's statements were involuntary. ................................................................ 10

Mr. Murta asked this Court to suppress statements he made during an interrogation conducted by American agents in Portugal on March 20, 2018. Dkt. 265. He explained that Portuguese law compelled him to attend that meeting, under penalty of prosecution, so he reasonably understood that he was not free to leave. *Id.* at 10. Mr. Murta explained that because he was not provided *Miranda* warnings[1] and was interrogated by American agents, his statements (both written and oral) should be suppressed. *Id.* at 11. The government disputes whether Mr. Murta was in custody. Gov't Resp. at 1, Dkt. 280.

Mr. Murta replies to address some of the government's arguments, and he raises the supplemental argument that his statement was not voluntary under the Fifth Amendment.

I. **Multiple factual disputes require an evidentiary hearing.**

The government disputes (without providing evidence, affidavits, or declarations) several facts proffered by Mr. Murta through his motion and attached declaration. The Fifth Circuit "has consistently held that a petitioner is entitled to an evidentiary hearing only where a factual dispute, if resolved in his favor, would entitle him to relief, and not where a petitioner's allegations are merely conclusory allegations unsupported by specifics." *Murphy v. Johnson*, 205 F.3d 809, 816 (5th Cir. 2000); *see also United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (an evidentiary hearing is necessary if a defendant has alleged "sufficient facts which, if proven, would justify relief."). Even without a motion, "when the evidence clearly reflects a question of the voluntariness of a

---

[1] The *Miranda* warnings are (1) that the person has the right to remain silent; (2) anything he says can and will be used against him in court; (3) he has the right to consult with a lawyer and have the lawyer with him during the interrogation; and (4) if he is indigent, a lawyer will be appointed to represent him. *See Miranda v. Arizona*, 384 U.S. 436, 467–73 (1966).

confession, the trial court must raise the issue on its own motion." *United States v. Guanespen-Portillo*, 514 F.3d 393, 402 (5th Cir. 2008). Mr. Murta has provided a sworn declaration and extensive legal argument establishing that he is entitled to relief, so an evidentiary hearing should be scheduled.

### II. Mr. Murta was in custody for *Miranda* purposes because a reasonable person in his position would not have felt at liberty to terminate the interrogation and leave.

The government errs by confusing a formal arrest with the *Miranda* custody test. *See* Gov't Resp. at 6 (arguing that Mr. Murta was not in custody because he was not restrained and was not placed under arrest). To the contrary, the "in custody" determination turns on the surrounding circumstances and whether a reasonable person would have felt at liberty to leave. *United States v. Wright*, 777 F.3d 769, 773–75 (5th Cir. 2015). Here, the compelled interrogation lasted nearly a full day[2] and took place inside a law-enforcement office with multiple agents present, and no agent ever advised Mr. Murta that he was free to remain silent and avoid self-incrimination. Portuguese law forbade Mr. Murta from refusing the interview, under penalty of prosecution. *See* Declaration of H. Salinas at 2, Dkt. 265-1 ("If the person does not appear [for the interview], the person is committing a crime.").

The government cites *Minnesota v. Murphy*, 465 U.S. 420, 467 (1984), for the proposition that a suspect is not necessarily in custody when compelled to appear at a meeting. Gov't Resp. at 9. But the government has tried that before. In *United States v.*

---

[2] The government emphasizes that there were breaks in the interrogation, but it admits that the interrogation "began at 10:00 a.m." and "ended at approximately 6:50 p.m." Gov't Resp. at 4–5. That is an all-day interrogation, even if Mr. Murta was allowed to eat a meal in the middle.

4

*Jacobs*, 431 F.3d 99, 107 (3d Cir. 2005), the government cited *Murphy* for the same proposition. The Third Circuit rejected the government's argument, found that the defendant was in custody, and included a substantive footnote addressing the many flaws in the government's reliance on *Murphy*. *Id.* at 107–108 & n.10. Those flaws include that "the very definition of being 'in custody' is essentially being 'compelled to be somewhere.'" *Id.* at n.10. Additionally, the court reasoned, "[p]resumably *Murphy* should be limited to the probation context," because it involves a "baseline" that the "probationer will be required to attend meetings," which are "arranged by appointment at a mutually convenient time." *Id.* (cleaned up).[3] In *Murphy* itself, the Supreme Court had made clear that it relied on a distinction between a probation office, where the defendant frequently appears, and a custodial setting, involving "an unfamiliar atmosphere," because officers can "capitalize on the suspect's unfamiliarity with the officers and the environment." *Murphy*, 465 U.S. at 433.[4] The government, nonetheless, persists in citing *Murphy* for an unwarranted broader proposition, but this Court should follow the Third Circuit in rejecting that attempt.

Likewise, the government relies on *United States v. Mandujano*, 425 U.S. 564, 579–80 (1976), without providing crucial details relevant to that Court's decision. The *Mandujano* Court did, as the government says, hold that witnesses subpoenaed to the grand

---

[3] The government says "parolee" and "parole officer," Gov't Resp. at 9, but in *Murphy*, the defendant had been "placed on probation" and was required "to report to his probation officer periodically." 465 U.S. at 420.

[4] In this case, Mr. Murta was summoned to an unfamiliar location dominated by law enforcement, at a time and place unilaterally chosen by law enforcement.

jury are not in custody for *Miranda* purposes, but the Court emphasized the uniqueness of the grand jury context. *Id.* at 571 ("The grand jury is an integral part of our constitutional heritage," which "provide[s] a shield against arbitrary or oppressive action," and is made up "of a representative body of *citizens* acting under oath and under judicial instruction and guidance.") (emphasis added). That uniqueness decided the case. "[J]udicial inquiries and custodial interrogation" are simply not "equivalents." *Id.* at 579. There is far less compulsion to speak before a grand jury made up of "impartial observers to guard against intimidation or trickery . . . under the guidance of a judge" compared to the "inherent" compulsion in in a police interrogation. *Id.* at 579–80 (cleaned up). There are "marked contrasts," the Court explained, "between a grand jury investigation and custodial interrogation." *Id.* at 580. The government seeks to equate the two. Gov't Resp. at 9. That attempt fails.

Finally, the government makes too much of the fact that Mr. Murta had a Portuguese lawyer present during the interrogation. *See* Gov't Resp. at 1, 3–4, 6. As the Seventh Circuit has explained:

> No authority of which we are aware holds that a suspect's discussions with defense counsel can double for the usual warnings given by law enforcement officers; indeed, the contrary position — that whatever warnings are otherwise required by *Miranda* must be administered by the public authorities — is quite well-established.

*Sweeney v. Carter*, 361 F.3d 327, 331 (7th Cir. 2004). And in *State v. Deweese*, 213 W. Va. 339 (W. Va. 2003), the Supreme Court of Appeals of West Virginia interpreted *Miranda* and concluded that "the mere presence of defense counsel at an interrogation does not negate the necessity for providing the warning against self-incrimination. This warning,

as required by the *Miranda* decision, is an absolute prerequisite to interrogation." *Id.* at 348. That court cited the Fifth Circuit, which had written that the government "may not nullify the protection *Miranda* affords a defendant by using trickery to extract incriminating statements from him that otherwise could not be obtained without first giving him the required warnings." *Id.* at 349 (quoting *United States v. Hayles*, 471 F.2d 788, 791 (5th Cir. 1973)). In this context, that rule means that agents must still warn a defendant of his right to remain silent and avoid self-incrimination, even if he has already exercised his right to counsel. *Id.* Thus, the court held, "[t]o the extent that the trial court found that defense counsel's presence obviated the need for giving *Miranda* warnings" to the defendant, that finding was erroneous. *Id.*

This case involves more than merely a failure to warn: federal agents appear to have employed trickery, *see Hayles*, 471 F.2d at 791, to convince Mr. Murta and his lawyer that he faced no danger of criminal prosecution and was merely a witness. *See* Declaration of H. Salinas at 2, Dkt. 265-1. And under Portuguese law, a witness must answer questions, and a witness's answers cannot be used against him if the witness later becomes a defendant. *Id.* at 3. The government cannot employ misrepresentations and fail to warn a defendant that he has a right to remain silent, and then seek to profit from its subterfuge. Mr. Murta's statements should be suppressed.

### III. The length of the interrogation "raises considerable suspicion" that Mr. Murta was subjected to a custodial interrogation.

The government attempts to minimize the length of Mr. Murta's interrogation, Gov't Resp. at 11, but it lasted all day, which entitles Mr. Murta to a presumption of

7

custody for *Miranda* purposes. Mr. Murta's interrogation lasted from 10 a.m. until 6:50 p.m., with a few breaks. That all-day interview is far longer than others in which defendants were deemed to have been in custody for *Miranda* purposes. The Fifth Circuit has determined, multiple times, that a "detention of approximately an hour raises considerable suspicion that an individual has been subjected to a custodial interrogation," although it does not constitute *per se* custody. *United States v. Cavazos*, 668 F.3d 190, 194 n.1 (5th Cir. 2012) (cleaned up); *see also United States v. Wright*, 777 F.3d 769, 777 (5th Cir. 2015); *United States v. McGrew*, 397 F. App'x 87 (5th Cir. 2010) (unpublished); *cf. United States v. Kim*, 292 F.3d 969, 977 (9th Cir. 2002) (finding custody and a "full-fledged interrogation, not a brief inquiry," in a 50-minute interview that took place inside the defendant's own store). The government remains notably silent about that binding Fifth Circuit precedent, acknowledging only the part of the test that aids its cause: a one-hour interrogation does not constitute *per se* custody. Gov't Resp. at 11 (citing *Wright*, 777 F.3d at 775). It also neglects to convey the full analysis in *Wright*: "[t]he interview lasted one hour and two minutes," which the Fifth Circuit called a "lengthy interview," and the court concluded that "the length of the questioning weighs in favor of finding that it was custodial." *Wright*, 777 F.3d at 771–72, 77. Although the court warned against overreliance on the length of the questioning, it weighed that factor in the defendant's favor even though the interview was barely an hour long. *Id.* at 777.

The interview here went far beyond one hour — even on the government's allegations, Mr. Murta was interrogated for "just over five hours." Gov't Resp. at 5. And he remained in the same location for two more hours. *Id.* That all-day interrogation, at a

8

law enforcement office, was far longer than the one-hour periods the Fifth Circuit has deemed presumptively custodial.

## IV. The government asks the Court to interpret Portuguese law, but it does not provide any authority for its interpretations.

Several times, the government asks the Court to accept its assertions about Portuguese law, but it provides no declaration, affidavit, or other evidence to support its assertions. *See* Gov't Resp. at 3 n.1 (asserting that Mr. Murta attended under penalty of a fine or "preventive detention"), 4 & 11 (asserting a right to refuse to answer under Portuguese law), 6 (asserting that no one present had authority to arrest Mr. Murta), 8 & n.2 (same), 9 (asserting that a Portuguese order to attend an inquiry is "closest" to an American grand jury subpoena). The government's assertions are disproven by a sworn statement from Henrique Salinas, Ph. D., who is a lawyer, professor of Portuguese criminal law and criminal procedure law, and partner in the criminal and compliance section of a highly regarded Portuguese law firm. *See* Dkt. 265-1. The Court should not accept the government's invitation to interpret foreign law, particularly in a way that contradicts an expert in that field.

And, as discussed in the next section, the issue is not only the specific requirements and privileges afforded under Portuguese law — rather, the issue is also what the American authorities indicated to Mr. Murta and his counsel about the nature of Mr. Murta's rights and risks.

### V. American authorities misled Mr. Murta and his counsel, such that they lacked essential knowledge about the nature of Mr. Murta's rights and risks, so Mr. Murta's statements were involuntary.

Mr. Murta disputes the government's claim that his March 2018 statements "were made voluntarily," Gov't Resp. at 1, and the Court can suppress his statements on the alternative ground that they were involuntary under the Fifth Amendment.

To determine whether a statement was voluntary, courts consider the totality of the circumstances. *United States v. Rogers*, 906 F.2d 189, 190–91 (5th Cir. 1990). That inquiry has two parts: Did the defendant (1) make a free and deliberate choice, without intimidation, coercion, or deception; and (2) have a full awareness of his constitutional rights and the consequences of abandoning them? *Id.* at 191 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)); *see also Soffar v. Cockrell*, 300 F.3d 588, 592 (5th Cir. 2002). In *Rogers*, a sheriff's deputy and his trainee told the defendant that he would not face criminal charges if he cooperated with them. *Id.* at 190. The defendant later received a call from that same sheriff's office, saying that someone wanted to talk to him. *Id.* When Rogers arrived at the sheriff's office, a federal agent questioned Rogers after reading him his *Miranda* rights and getting him to sign a waiver of those rights. *Id.* Then Rogers made statements that were ultimately suppressed as "not voluntary for purposes of the Fifth Amendment." *Id.* at 191. The Fifth Circuit explained that Rogers "misunderstood the consequences of speaking freely to the law enforcement officials," because he reasonably believed he would not be prosecuted if he kept cooperating. *Id.* at 192 (quoting *Colorado v. Spring*, 479 U.S. 564, 575 (1987)). His statement was thus involuntary because it "was

10

not made with a full awareness of the consequences of the decision to abandon his rights or with the requisite level of comprehension" *Id.*

More recently, the Fifth Circuit determined that a motion to suppress a statement as involuntary "would have been very likely to succeed" because the defendant had been told that his statement would not be used against him. *Morris v. Thaler*, 425 F. App'x 415, 420 (5th Cir. 2011) (unpublished) (citing *Rogers*, 906 F.2d at 192). Because defense counsel had not filed such a motion, the Fifth Circuit found his performance constitutionally deficient and remanded the case for an evidentiary hearing on the issue. *Id.* at 422, 424.

Here, the Department of Justice asked Portuguese authorities to schedule an interview with Mr. Murta. *See* Dkt. 233-4 (Mar. 5, 2018, letter from DOJ to Portugal). The DOJ indicated that Mr. Murta was a "*witness* in relation to the U.S. investigation of . . . others." *Id.* at 3–4, 9 (emphasis added). The DOJ further asked Portugal to "not electronically record . . . the interview[]." *Id.* at 8. Portugal acquiesced to both requests, and its Office of the Public Prosecutor issued an order directing Mr. Murta to appear on March 20, 2018, for what the Portuguese call an "inquiry." *See* Gov't Resp. at 3. Neither Mr. Murta nor his counsel were told that the United States was involved. *See* Dkt. 265-1 at 2. When Mr. Murta and his lawyer arrived as ordered, it became evident that two American agents were in control. Those agents introduced themselves and led the meeting, asking all the questions. *Id.* The American agents repeatedly told Mr. Murta and his counsel that Mr. Murta was "only a witness" — they repeated that multiple times, including at the meeting's conclusion. *Id.*

11

Under Portuguese law, that witness designation invokes several procedural rules. *See id.* at 2–3. First, that person must appear if requested, and they can be jailed for committing a crime if they do not appear.[5] *Id.* at 2. Second, if Portuguese authorities later designate that person as a defendant, they cannot use against him any statements made while only a witness. *Id.* at 3. Third, a witness does not have the same right to review evidence that a defendant would have: under Portuguese law, a defendant has the right to demand to see all evidence against him *before* answering questions. *Id.*

The government and its agents led Mr. Murta and his Portuguese counsel to believe that all those witness protections applied to Mr. Murta, repeatedly calling him "only a witness." But now they have indicted Mr. Murta and plan to use his statements as evidence against him. Mr. Murta and his counsel appeared in response to a Portuguese notice to appear, at a Portuguese law enforcement office, for an interview attended by Portuguese prosecutorial officials. They were repeatedly told that Mr. Murta was only a witness, and they reasonably concluded that Mr. Murta, therefore, had all the rights and privileges of a witness under Portuguese law. Mr. Murta made statements that day, reasonably believing that those statements could not be used against him. He "misunderstood the consequences of speaking freely to the law enforcement officials," so his statements were not voluntary under the Fifth Amendment and must be suppressed. *Rogers*, 906 F.2d at 192.

---

[5] The government asserts otherwise, Gov't Resp. at 3 n.1 & 8, but it offers nothing to rebut the sworn declaration of a professor of Portuguese criminal law and procedure. Dkt. 265-1.

Respectfully submitted,

/s/ Samy Khalil
Samy Khalil
Texas Bar No. 24038997
samy@khalil.law
Joshua Lake
S.D. Tex. No. 2695263
Colorado Bar No. 45285
joshua@khalil.law
**KHALIL LAW PLLC**
River Oaks Bank Building
2001 Kirby, Suite 1002
Houston, Texas 77019
713.904.4477 – Telephone
713.565.9915 – Fax

*Attorneys for Paulo Murta*

# CERTIFICATE OF SERVICE

On March 14, 2022, I filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which served a copy on all counsel of record.

/s/ Samy Khalil
Samy Khalil

13