UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 4:17-CR-514-S |
| PAULO JORGE DA COSTA CASQUEIRO MURTA | |

**PAULO MURTA'S REPLY REGARDING HIS MOTION
TO COMPEL DISCOVERY**

## Table of Contents

I. Requested Discovery ................................................................................................ 4

II. "Informal" MLAT correspondence is often dispositive of limitations questions arising under 18 U.S.C. § 3292, so it should be provided in discovery. ...................... 4

III. The government omitted a crucial fact about the authority upon which it relies. ......... 8

IV. Homeland Security policies on conducting interviews are material to Mr. Murta's defense, as the government previously recognized. ...................................................... 9

Mr. Murta asked this Court to issue a discovery order compelling the government to produce three categories of discoverable items. Def. Mtn., Dkt. 266. The government opposes that request, but in so doing it overlooks its earlier representations, this Court's prior statements, and binding precedent. Gov't Resp., Dkt. 279.

The government continues to argue that the statute of limitations was extended by way of an *ex parte* tolling order under 18 U.S.C. § 3292. *See* Dkt. 277; Dkt. 222 at 7–8. The government relies on an order issued on January 12, 2017. Gov't Resp. at 6. It goes wrong, however, by asserting that "[i]nformal communications with foreign authorities and internal communications at the Department of Justice have no bearing on calculating the date the foreign authority took final action on the MLAT and calculating the period of tolling." *Id.* at 7. Contrary to the government's assertion, informal correspondence often controls the § 3292 analysis.

Within the Houston division of the Southern District of Texas alone, the Department of Justice has repeatedly attempted to shirk its obligations regarding discovery of MLAT requests and related materials, and the Fifth Circuit has routinely rebuked those attempts at evasion. *See, e.g.*, *United States v. Pursley*, --- F.4th ---, No. 20-20454, at *8 n.1 (5th Cir. Jan. 12, 2022) (vacating conviction after trial and writing that "the record in this matter is sparse, in large part because the Government failed to produce [MLAT-related] evidence that is within its possession"); *United States v. Wilson*, 322 F.3d 353, 364 (5th Cir. 2003) (vacating conviction after trial and drawing a "particularly strong adverse inference" against the government because it had failed to call government witnesses who possessed critical MLAT-related information); *cf. United States v. Kozeny*, 493 F. Supp. 2d 693, 710

3

(S.D. N.Y. 2007) (explaining that the government had omitted enclosures to an MLAT letter until the court ordered it to produce those documents).

## I. Requested Discovery

Mr. Murta asks the Court to compel the government to provide discovery that is necessary to determine when Switzerland took a final action on the November 2016 MLAT request that resulted in the January 2017 tolling order upon which the government relies. That would include the following:

- Any and all communications and records of communications (such as emails, voicemails, and communication logs) between the Office of International Affairs ("OIA") in the Department of Justice and the Swiss authorities regarding this investigation (MLAT no. 182-48765) and an investigation related to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (MLAT no. 182-50035); and

- Any and all records, both formal and informal, sent by Swiss authorities in response to MLAT requests in either of those investigations.

In addition, Mr. Murta maintains his request that the Court compel the government to provide him with Homeland Security's policies regarding how its agents should conduct and memorialize interviews.

## II. "Informal" MLAT correspondence is often dispositive of limitations questions arising under 18 U.S.C. § 3292, so it should be provided in discovery.

The government has failed to provide Mr. Murta with complete records of its MLAT communications with Switzerland. Both the parties and the Court need those records to evaluate Mr. Murta's argument that he was indicted after the limitations period expired. *See* Dkts. 267, 285; *see also United States v. Meador*, 138 F.3d 986, 992 (5th Cir. 1998) ("[A] determination of when 'final action' has been taken by a foreign government,

4

within the meaning of § 3292(b), must turn on whether a dispositive response to an official request for evidence from our government has been obtained.").

The government has not provided complete discovery of these materials. It has provided Mr. Murta with two relevant Swiss letters in response to the November 2016 MLAT request — to which the DOJ assigned "docketing" number 182-48765. *See* Gov't Exh. A & B, Dkts. 279-1 & 279-2. The government has also provided five Swiss letters sent in response to an MLAT request based on a different grand jury's investigation. Those five letters relate to an investigation into ███████████████, to which the DOJ assigned "docketing" number 182-50035. That investigation may be the one about which the government informed the Honorable Sim Lake, in September 2015, writing that a grand jury in another district was "investigating related conduct." *See* Dkt. 286 (Def. Exh. 1 at 7). Several sources reveal that the DOJ has more related correspondence that it has not produced to Mr. Murta.

First, on the face of the letters provided in discovery, we see proof that more correspondence exists. *See* Gov't Exhibit A, Dkt. 279-1. On August 15, 2018, Swiss authorities wrote to the Department of Justice in response to the November 2016 MLAT upon which the government relies (*see* Gov't Resp. at 6). *Id.* In that letter, the Swiss authorities wrote, "These bank records were sent to your Office when executing part of the request on *1st May 2018*." *Id.* at 2 (emphasis added). The government has not provided Mr. Murta with any MLAT correspondence to or from Switzerland in May 2018. The face of Government Exhibit A thus appears to reveal that more correspondence exists.

5

Second, the government has produced Swiss records that show additional correspondence exists. Exhibit 1 (attached hereto) consists of certifications from Swiss authorities and Swiss banks, corresponding to requests made by the DOJ in the relevant MLAT requests. These certifications, however, are not accompanied in discovery by any correspondence that indicates when the Swiss authorities delivered the certifications to the DOJ, which is relevant to the calculation of a "final action" date. None of the MLAT letters provided in discovery mention any of these three bank accounts, so Mr. Murta cannot determine when these Swiss records were produced to the DOJ.

Third, the government has steadfastly refused to produce "informal" communications regarding its MLAT requests, rather than denying any such communications exist. *See* Dkt. 233-5 at 3 ("We will not be producing informal communications with foreign authorities."); Gov't Resp. at 7 ("Informal communications . . . are not discoverable."). In fact, the government has produced at least one such "informal" communication in discovery: an email sent from the DOJ to officials in Portugal. Exhibit 2. In that email, a DOJ employee transmitted an MLAT request to Portuguese authorities and summarized the American investigation. *Id.* We may safely assume that foreign authorities also emailed DOJ in response to its MLAT requests. That type of informal communication can resolve the issue of when a foreign government took "final action." *See, e.g.*, *United States v. Ratti*, 365 F. Supp. 2d 649, 659–60 (D. Md. 2005) (deciding the date of "final action" based, in part, on "[a] letter from a Department of Justice trial attorney of June 13, 2000 to the OIA" and "a one sentence letter . . . sent to the DOJ by another Italian magistrate"); *Wilson*, 322 F.3d at 356, 359, 362 (concluding

6

that the government failed to meet its burden of proof, after reviewing testimony of a DOJ employee and a "correspondence log" kept by the Office of International Affairs ("OIA") within the DOJ); *Kozeny*, 493 F.Supp.2d at 709 & 710 n.75 (granting defense motions to dismiss on limitations grounds after reviewing sworn testimony and a written declaration from an OIA employee who attested to dates of correspondence, including "inquiries by OIA regarding the status of the official request").

Fourth, other litigation reveals that the OIA routinely keeps records that have not been provided in this case. *See Wilson*, 322 F.3d at 364 (remanding for a *second time* because "the district court clearly erred in finding that the Government proved that the MLAT letter was sent by a preponderance of the evidence"). In *Wilson*, the defendant challenged the government's assertion that it had actually sent an MLAT request, so the government called one witness, a paralegal specialist who worked for the OIA. *Id.* at 355–56. The paralegal testified that OIA's "official policy was to keep [records about Federal Express shipping] for one year," but she said that "a computer-generated correspondence log from OIA . . . signified that the document had been sent." *Id.* at 356. In fact, "the OIA's docketing unit logs incoming and outgoing correspondence into OIA's computer system." *Id.* at 356 n.5; *see also Kozeny*, 493 F.Supp.2d at 710 n.75 (describing sworn testimony and a written declaration from an OIA employee who attested to dates of correspondence). As the Fifth Circuit in *Wilson* noted, this issue was critical because "[t]he prosecutor needed such proof in order to respond to Wilson's original motion to dismiss the indictment as time-barred." 322 F.3d at 359. The court observed that the government had "failed to meet proof with proof in every step of the litigation." *Id.* at 362. The Fifth Circuit

explained that it "has long recognized that a party's failure to . . . produce evidence that would clarify or explain disputed factual issues can give rise to a presumption that the evidence, if produced, would be unfavorable to that party." *Id.* at 363 (citations omitted). From that case, we have evidence that OIA has a policy of documenting its correspondence through a "docketing unit," to include a computer-generated "correspondence log" documenting incoming and outgoing correspondence within OIA. *Id.* at 356.

The Fifth Circuit has vacated convictions when district courts fail to sufficiently consider deficiencies in the government's evidence of § 3292 tolling. *Pursley*, No. 20-20454, at **7–8; *Wilson*, 322 F.3d at 364. It is also clear from those cases that informal communications can decide cases involving tolling orders under § 3292. *Id.*; *see also Ratti*, 365 F. Supp. 2d at 659–60.[1] For those reasons, Mr. Murta asks the Court to order the government to provide him the requested MLAT correspondence.

**III. The government omitted a crucial fact about the authority upon which it relies.**

The government calls "baseless" the claims raised by a former federal prosecutor — reporting that the DOJ explicitly condoned the filing of pretextual tolling orders so long as the pretext was not memorialized — but the government offers no evidence to the contrary. Gov't Resp. at 7. The government then asks the Court to rely on two decisions involving that whistleblower's claims. *Id.* The government makes much of those two courts' denials of motions to compel MLAT discovery, but it omits a crucial fact in both

---

[1] The government asserts otherwise, Gov't Resp. at 6 ("Tolling calculations rely upon the transmission of formal correspondence between state authorities."), 7 ("Informal communications with foreign authorities and internal communications at the Department of Justice have no bearing on calculating the date the foreign authority took final action on the MLAT and calculating the period of tolling."). It cites no authority for these assertions.

8

cases: "Significantly, it [was] undisputed that the charges . . . [did] not rely on the Tolling Order at all." *United States v. Bases*, No. 18-cr-48 at *11 (N.D. Ill. Oct. 6, 2020); *see also United States v. Vorley*, No. 18-cr-35 at *9 (N.D. Ill. Sept. 12, 2020) ("The government is not relying on the tolling order to render timely any of the charges the defendants are facing."). It is no surprise, then, that the courts found MLAT discovery to be immaterial in those two cases, because the government did not rely on any tolling order for its argument that indictments were filed within the limitations period. Not so here, where the government *does* rely upon a tolling order. Absent a *valid* tolling order, the superseding indictment against Mr. Murta was filed outside the limitations period.[2] That reliance renders material all communications and documents concerning the MLAT request upon which the January 2017 tolling order was based.

### IV. Homeland Security policies on conducting interviews are material to Mr. Murta's defense, as the government previously recognized.

During a pretrial conference in this case, a prosecutor conceded that HSI[3] policies about conducting interviews would be important to this case. Transcript of Pretrial Conference (Aug. 23, 2021) at 26, Dkt. 225. The Court recognized that if, as the government asserts, no American agent prepared "their own report for which they could be questioned or cross-examined . . . we're going to have the argument of how far can [that agent] chase whatever it is that comes out of somebody else's mouth and relate back to the

---

[2] Mr. Murta has argued that the tolling order upon which the government relies is not valid for several reasons. Dkts. 267, 285.

[3] HSI stands for "Homeland Security Investigations."

9

interview." *Id.* at 25. The prosecutor responded, "I agree, Your Honor. I think that's entirely fair game for cross-examination." *Id.* The Court queried, "Why should [an agent] be permitted to testify about something he heard when that would probably be in violation of the policies of the agency, unless they have a different policy when they're in foreign countries than they would in the U.S.?" *Id.* at 26. The prosecutor explained, "the question would be whether — if HSI has a policy that they're required to memorandize interviews." *Id.* at 26. He then tried to move past the issue, *id.*, but the Court replied:

> I'm trying to make sure that I don't end up with a constitutional issue before me having to do with whether or not the conduct of the agents in a foreign country is excused because they're in a foreign country. I think we've had some recent case law in this regard. And I need to be able . . . to respond to that by not just whether or not there is some documentation or feeling intentionally or because policy dictates or permits or because the Portuguese authority would not permit. *Those kind of things it seems to me to be relevant to the question that's going to come up in this trial*.

*Id.* at 27 (emphasis added).

Despite that, the government still fights to keep those policies away from the Court and counsel. The government recognizes and opposes Mr. Murta's request for these policies, Gov't Resp. at 1 & 9, but it does not offer any argument or authority for why it should not produce them. *See generally id.* at 9. Mr. Murta maintains his request that the Court order the government to provide him with HSI's policies regarding how its agents should conduct interviews.

A proposed order is attached.

Respectfully submitted,

/s/ Samy Khalil
Samy Khalil
Texas Bar No. 24038997
samy@khalil.law
Joshua Lake
S.D. Tex. No. 2695263
Colorado Bar No. 45285
joshua@khalil.law
**KHALIL LAW PLLC**
River Oaks Bank Building
2001 Kirby, Suite 1002
Houston, Texas 77019
713.904.4477 – Telephone
713.565.9915 – Fax

*Attorneys for Paulo Murta*

## CERTIFICATE OF SERVICE

On March 14, 2022, I filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which served a copy on all counsel of record.

/s/ Samy Khalil
Samy Khalil
