## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. 4:17-CR-514-S** |
| **PAULO JORGE DA COSTA CASQUEIRO MURTA** | |

### PAULO MURTA'S REPLY REGARDING HIS MOTION TO DISMISS BASED ON FAILURE TO STATE AN OFFENSE, LACK OF JURISDICTION, DUE PROCESS VIOLATION, AND VAGUENESS

## Table of Contents

I.    This prosecution violates due process because there is virtually no nexus between the United States and Mr. Murta himself. ................................................................... 3

II.   The presumption against extraterritoriality cannot be ignored. .................................. 5

III.  The government has failed to state an offense in its four charges against Mr. Murta, because it has failed to adequately allege the jurisdictional elements. ....... 6

IV.   The relevant statutes are vague as applied to Mr. Murta's alleged conduct. .............. 9

V.    Alternatively, the rule of lenity and "lingering doubts" can decide this case in Mr. Murta's favor. ............................................................................................... 11

Mr. Murta asked this Court to dismiss all four charges against him on four grounds: (1) the superseding indictment fails to state offenses, (2) the court does not have extraterritorial jurisdiction over Mr. Murta, (3) this prosecution violates due process because there is almost no nexus between Mr. Murta himself and the United States, and (4) the relevant statutes are vague as applied to Mr. Murta. *See* Def. Mtn., Dkt. 262. In the alternative, he explained that the Court could rule in his favor based on the rule of lenity or the "lingering doubt" standard that applies to questions of extraterritorial statutory application. *Id.* at 25, 27, 33. The government opposes that motion, Gov't Resp., Dkt. 278, but critical errors doom its arguments. Mr. Murta replies to address some of those errors, but he maintains every argument raised in his original motion.

## I.   This prosecution violates due process because there is virtually no nexus between the United States and Mr. Murta himself.

The government asserts, without authority,[1] that this prosecution against Mr. Murta does not violate due process. Gov't Resp. at 25–26. It does so in one brief paragraph with no authority to supports its position. *Id.* The Court should reject the government's contention and agree with Mr. Murta that his prosecution is fundamentally unfair in violation of the Due Process Clause of the Fifth Amendment because Mr. Murta personally has had virtually no contact with the United States. Def. Mtn. at 28–31.

---

[1] The government cites *United States v. Lawrence*, 727 F.3d 386 (5th Cir. 2013), upon which Mr. Murta relies, but only to establish the applicable legal standard. Gov't Resp. at 25. It fails to cite *any* authority for its assertion that Mr. Murta himself has sufficient ties to the United States based on the acts and locations of other defendants and their businesses. *Id.* at 25–26.

Even on the government's allegations, Mr. Murta spent barely 24 hours in this country, Dkt. 129 at ¶ 206; Gov't Resp. at 8, and he has no other ties to the United States. *See* Def. Mtn. at 28, 31. The government has argued before that Mr. Murta "has no ties to the United States." Gov't Resp. Opposing Review of Detention at 1, Dkt. 239; *see also* Gov't Resp. Opposing Bail at 6, Dkt. 220 (arguing that Mr. Murta "has no ties to the United States outside of his [alleged] criminal activity"). But it now argues nearly the opposite. The government claims that the American ties of other defendants and their businesses can suffice to create a nexus between Mr. Murta and the United States. Gov't Resp. at 25–26. It also contends that "the scheme charged in the Superseding Indictment has a substantial nexus to the United States." *Id.* at 26. Both assertions ignore binding precedent.

The Fifth Circuit has been clear that due process imposes an *independent* requirement upon the government when it seeks to prosecute non-United States citizens: the prosecution must "demonstrate that there exists a sufficient nexus between the conduct condemned and the United States such that application of the statute would not be arbitrary or fundamentally unfair to the defendant." *Lawrence*, 727 F.3d at 396 (cleaned up). The test is whether the defendant *himself*, not any of his alleged co-conspirators or codefendants, has a sufficient nexus to the United States. *Id.* Much like the minimum contacts test in personal jurisdiction, this due-process nexus requirement permits federal courts to assert jurisdiction over a non-citizen defendant only if he could reasonably anticipate being brought before a United States court to face charges. *See United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998) ("The nexus requirement serves the same purpose as the 'minimum contacts' test in personal jurisdiction."). The due-

process focus is upon the defendant and his conduct, nothing more.  *Lawrence*, 727 F.3d at 396.  Here — as the government has put it — Mr. Murta "has no ties to the United States."  Dkt. 220 at 6.  There is not a sufficient nexus between Mr. Murta and the United States, so this prosecution violates the Fifth Amendment's guarantee of due process.

## II.  The presumption against extraterritoriality cannot be ignored.

As Mr. Murta wrote in his motion to dismiss, "[t]he Supreme Court and lower courts employ a canon of statutory interpretation known as the presumption against extraterritorial application."  Def. Mtn. at 5 (citing *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013); *Boureslan v. Aramco, Arabian Am. Oil Co.*, 892 F.2d 1271, 1272–73 (5th Cir. 1990), *aff'd by EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244 (1991); *United States v. Hoskins*, 902 F.3d 69, 95 (2d Cir. 2018)).  That presumption "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord."  *Kiobel*, 569 U.S. at 115 (internal quotation marks and citations omitted).  The government avoids that presumption and asks this Court not to apply the presumption.  Gov't Resp. at 14 ("[T]here is no need to address the extraterritorial application of the statute.").[2]  The Court should decline that invitation.

As this Court has written, "[t]here are strong policy reasons for [this presumption.] . . . Unless Congress expresses an affirmative intent and that intent is clearly expressed, United States law should not apply extraterritorially."  Mem. Opinion and Order, Dkt. 255 at 18 n.17 (citing *Arabian Am. Oil Co.*, 499 U.S. at 248).  In this case, it is

---

[2] The government's response only uses the word "presumption" once, when it quotes an opinion from the Southern District of New York.  Gov't Resp. at 14.

anything but clear that Congress intended these statutes to apply to Mr. Murta's alleged acts, nearly all of which were committed outside the United States.  In fact, Congress appears to have intentionally barred prosecution of foreign nationals under these facts, but at the least, the statutes are ambiguous, which should lead to a ruling in Mr. Murta's favor. Contrary to the government's suggestion, the presumption against extraterritorial application cannot be ignored.

### III. The government has failed to state an offense in its four charges against Mr. Murta, because it has failed to adequately allege the jurisdictional elements.

Mr. Murta argued that the superseding indictment fails to state an offense, so the charges against him should be dismissed.  Def. Mtn. at 10–22.  In response, the government fails to address binding Fifth Circuit precedent.  That court recently explained in *United States v. Suarez* that an indictment "must *allege* that the defendant committed each of the essential elements of the crime charged; it is not sufficient to merely *state* the elements of the crime."  966 F.3d 376, 382–83 (5th Cir. 2020) (cleaned up, emphasis in original); *see also United States v. Dentler*, 492 F.3d 306, 309 (5th Cir. 2007) ("To be valid, an indictment must charge positively and *not inferentially* everything essential." (cleaned up, emphasis added)).  The Third Circuit put it this way:  "We are thus constrained to reject the government's contention that an indictment or information charges an offense, for purposes of Rule 12(b)(2) [later super-ceded by Rule 12(b)(3)(B)], as long as it recites in general terms the essential elements of the offense, even if the specific facts alleged in the charging instrument fail to satisfy those elements."  *United States v. Panarella*, 277 F.3d 682, 685 (3d Cir. 2002), *reversed on other grounds by United States v. Wright*, 665 F.3d

560, 567 (3d Cir. 2012)).  Nonetheless, the government makes a similar contention here. Gov't Resp. at 3–4.  The government cites *Suarez*, *id.*, but it does not address its facts, its holding, or the court's explanation that "it is not sufficient to merely *state* the elements of the crime."  *Suarez*, 966 F.3d at 382–83 (emphasis in original).  Mr. Murta relied upon *Suarez* in his motion, Def. Mtn. at 10–11, 11 n.3, & 13, but the government notably does not attempt to distinguish it.[3]  The government's failure to allege sufficient *jurisdictional* facts renders the Superseding Indictment invalid, so Mr. Murta asks the Court to dismiss his four charges for failure to state an offense.

The government also asserts that "[Mr.] Murta's trip to the United States was in furtherance of both the bribery and money laundering scheme."  Gov't Resp. at 7 & n.4. But it does not cite any evidence of that in the Superseding Indictment.  In fact, the Superseding Indictment does not support the government's claim, because it alleges only that the trip was in furtherance of the money-laundering conspiracy.  *See* Superseding Indictment, Dkt. 129 at 56 ("Acts in Furtherance of *the* Conspiracy," in the section of the indictment relating to Count 13 (Conspiracy to Commit Money Laundering)) & 58 (¶ 206) (listing Mr. Murta's one trip to the United States, in the same section relating to Count 13). The government's argument fails because a challenge to the sufficiency of an indictment must "be decided based on the facts alleged within the four corners of the indictment, not the evidence outside of it."  *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007); *see*

---

[3] The government instead cites Fifth Circuit cases from decades before *Suarez* and to a Second Circuit decision that does not (and could not) overrule the Fifth Circuit's *Suarez* decision.  Gov't Resp. at 4 (citing *Cluck*, *Balde*, *Gordon*, *Cauble*, and *Montemayor*).

*also United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017).  As Mr. Murta explained in his motion to dismiss, the superseding indictment fails to allege sufficient facts to establish that he was an agent of a domestic concern, that he committed an FCPA violation while in United States territory, or that he committed money-laundering conduct in the United States.  Def. Mtn. at 10–22.

In addition, Counts 13 and 14 fail to allege that Mr. Murta had the requisite *mens rea* before or during his Miami trip on February 28, 2012 — the superseding indictment does not allege that Mr. Murta had knowingly joined a conspiracy before or during that meeting.  *See United States v. Cessa*, 861 F.3d 11, 130 (5th Cir. 2017) (to prove a money-laundering conspiracy, the government must show, *inter alia*, "that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose"); *United States v. Arledge*, 553 F.3d 881, 888 (5th Cir. 2008) (to prove a conspiracy under 18 U.S.C. § 371, the government must prove, *inter alia*, "the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy"); *cf.* USSG § 1B1.3, cmt. n.3(B) ("A defendant's relevant conduct [under the United States Sentencing Guidelines] does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct.").  Paragraph 206 of the superseding indictment alleges that Mr. Murta went to Miami "in connection with" the money-laundering scheme charged in Count 13, but it does not allege that Mr. Murta knew of that scheme or that he had joined the scheme by that date.  Similarly, the indictment alleges that, prior to the Miami trip, Mr. Murta had already opened bank accounts in Portugal, but it does not allege that he yet knew about any money-laundering or bribery

scheme or that he had knowingly joined such a scheme.  Dkt. 129 at ¶¶ 246, 248–49.  In sum, the government has failed to allege that Mr. Murta knowingly joined any conspiracy before or during the Miami trip, so it has failed to allege that his brief visit to Miami knowingly furthered any conspiracy.  *See* Def. Mtn. at 14–16; *see also* Gov't Resp. at 9 ("The clause 'in furtherance of' . . . makes clear that *an 'act' in the United States for some other purpose that was not in furtherance* of the offer, authorization, or payment *would not meet the elements of the offense*.") (emphasis added).  As a result, the government has failed to allege that Mr. Murta committed any criminal act within the United States or that he knowingly furthered any crime while here.  Hence, it has failed to state an offense and failed to adequately allege the jurisdictional element of the charged crimes.

For those reasons, Counts 13, 14, 18, and 19 should be dismissed for failure to state an offense.  *Id.*

## IV. The relevant statutes are vague as applied to Mr. Murta's alleged conduct.

"The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (cleaned up).  A statute that violates that prohibition on vagueness "violates the first essential of due process." *Id.* at 595–96 (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).  The "void-for-vagueness doctrine . . . guarantees that ordinary people have fair notice of the conduct a statute proscribes." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (cleaned up).

9

That doctrine directs that courts may not enforce "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (cleaned up). This prosecution violates that requirement because the relevant statutes failed to provide fair notice that Mr. Murta's alleged conduct would subject him to criminal prosecution in this country. *See* Def. Mtn. at 31–33. The government, in its superseding indictment, labels Mr. Murta an "agent," but at most it alleges that he was a contractual service provider or that he acted alongside others. The indictment does not, however, allege facts that any reasonable person would interpret as the type of mutual assent and control indicative of an agency relationship. Thus, as applied to Mr. Murta, the term "agent" in the Foreign Corrupt Practices Act ("FCPA") is unconstitutionally vague.

In addition, for all four charges, the indictment fails to allege facts that would put a reasonable person in Mr. Murta's position on notice that he might face prosecution inside the United States. As noted, the superseding indictment does not allege that Mr. Murta knowingly joined any conspiracy before or during his only trip to the United States, yet the government charges him as if his "[prohibited] conduct occur[red] in part in the United States," *see* 18 U.S.C. § 1956(f)(1), and as if he conspired to violate the FCPA "while in the territory of the United States." 15 U.S.C. § 78dd-3(a). The government has not alleged conduct that any reasonable person would interpret as criminal conduct while in the United States, so its proposed constructions of those statutes render them unconstitutionally vague as applied to Mr. Murta.

As applied to Mr. Murta, those statutes (particularly their "agent" and extraterritorial jurisdiction elements) are so vague as to violate due process. As this Court wrote in Ms. Rafoi-Blueler's case, "The law seeks certainty, *particularly concerning a court's jurisdiction.* Certainty in the law provides fair warnings which should be given to the world in language that non-citizens and foreign nationals understand, of what the law of the United States seeks to do, and how they may steer clear of any transgressions." Dkt. 255 at 22 n.20 (citing *United States v. Kay*, 513 F.3d 432, 441 (5th Cir. 2007) (emphasis added)). The government's strained statutory interpretations would not offer either certainty or fair notice to someone in Mr. Murta's position, who committed the acts alleged against him, so the charges against Mr. Murta should be dismissed. *See id.*

## V. Alternatively, the rule of lenity and "lingering doubts" can decide this case in Mr. Murta's favor.

Mr. Murta believes that each of the relevant laws clearly supports his position, but even if there is some ambiguity in them, the Court may rule in his favor under the rule of lenity. Last week, Justice Gorsuch, joined by Justice Sotomayor, wrote that "[t]he 'rule of lenity' is a new name for an old idea—the notion that 'penal laws should be construed strictly.'" *Wooden v. United States*, 595 U.S. ---, No. 20-5279 (Mar. 7, 2022) (Gorsuch, J., concurring) (slip op., at 6) (quoting *The Adventure*, 1 F. Cas. 202, 204 (No. 93) (CC Va. 1812) (Marshall, C.J.)). Lenity exists, in this country, as "a means for upholding the Constitution's commitments to due process and the separation of powers." *Id.* Importantly, "[l]enity works to enforce the [due process] fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws." *Id.* (slip op.,

at 7).   For that reason, "[w]here the traditional tools of statutory interpretation yield no clear answer . . . [t]he next step is to lenity."  *Id.* (slip op., at 13).  Although Mr. Murta believes the relevant statutes are clearly in his favor, at the very least they are subject to multiple interpretations, so the Court may apply the rule of lenity to rule in his favor.

In addition, the Court may rule in Mr. Murta's favor based on the "lingering doubt" that remains about whether Congress intended these extraterritorial applications.  *See* Def. Mtn. at 25, 27.  "[T]he presumption against extraterritorial application of United States statutes requires that any lingering doubt regarding the reach of [a statute] be resolved against" extraterritorial application.  *Smith v. United States*, 507 U.S. 197, 203–04 (1993).

Respectfully submitted,

/s/ Samy Khalil
Samy Khalil
Texas Bar No. 24038997
samy@khalil.law
Joshua Lake
S.D. Tex. No. 2695263
Colorado Bar No. 45285
joshua@khalil.law
**KHALIL LAW PLLC**
River Oaks Bank Building
2001 Kirby, Suite 1002
Houston, Texas 77019
713.904.4477 – Telephone
713.565.9915 – Fax

*Attorneys for Paulo Murta*

<u>**CERTIFICATE OF SERVICE**</u>

On March 14, 2022, I filed the foregoing pleading with the Clerk of Court using the

CM/ECF system, which served a copy on all counsel of record.

/s/ Samy Khalil
Samy Khalil