## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

UNITED STATES OF AMERICA

v.

Criminal No. 4:17-CR-514-S

PAULO JORGE DA COSTA
CASQUEIRO MURTA

## PAULO MURTA'S MOTION TO DISMISS SUPERSEDING INDICTMENT BASED ON A CONSTITUTIONAL SPEEDY TRIAL VIOLATION

# Table of Contents

I.   Procedural and Factual History ...................................................................................4

II.  Summary of Relevant Dates .....................................................................................9

III. A Constitutional Violation Has Occurred. ............................................................10

   A.   Length of Delay: The Government alleges crimes last committed in 2013,
        and now four years after it indicted Mr. Murta, it is still asking to delay his
        trial. ............................................................................................................... 10

   B.   Reason for Delay: Mr. Murta has never requested a continuance, but the
        Government has repeatedly undermined his desire for a speedy trial. ............. 11

   C.   Diligent Assertions of The Right: Mr. Murta has consistently asserted his
        right to, and desire for, a speedy trial. ............................................................. 13

   D.   Prejudice: The excessive delay has jeopardized Mr. Murta's long-term
        health, inflicted incredible anxiety and concern upon him, and impaired
        his defense. ..................................................................................................... 14

        1.   Mr. Murta spent nine months in pretrial incarceration, exacerbating his
             critical health condition for which he received wholly inadequate care. ...... 14

        2.   Mr. Murta has experienced extraordinary anxiety and concern, even
             since he was released on bond. ...................................................................... 16

        3.   Mr. Murta's defense has been impaired because of the Government's
             ten-year delay in bringing him to trial. ......................................................... 17

IV.  This Case is Markedly Different than *Duran-Gomez* ...................................................18

   A.   Mr. Murta has never moved for a continuance, much less done so ten
        times, and he has repeatedly asserted his right to a speedy trial. ..................... 18

   B.   Mr. Murta has objected to tolling and has asserted his right to a speedy
        trial. ................................................................................................................. 19

   C.   Mr. Murta has experienced significant anxiety and concern. ........................... 20

V.   The Superseding Indictment Must Be Dismissed Based on a Sixth Amendment
     Violation. ...............................................................................................................21

VI.  Alternatively, Rule 48(b) Grants the Court Broad Discretion to Dismiss. ................21

Paulo Murta moves this Court to dismiss the superseding indictment against him because his Sixth Amendment right to a speedy trial has been violated. The Government is prosecuting him for actions it says he took more than a decade ago, yet the Government is still attempting to delay his trial. He was indicted four years ago, but the Government says it still needs more time to prepare. The Government continues to violate Mr. Murta's constitutional right to a speedy trial, and the Court should dismiss the charges against him.

Both criminal defendants and the American public have an interest in a speedy trial. *See Zedner v. United States*, 547 U.S. 489, 501 (2006). "[A]lthough the Sixth Amendment recognizes a societal interest in prompt dispositions, it primarily safeguards the defendant's speedy trial right — which may or may not be in accord with society's." *Id.* That right has been deemed "fundamental" to our justice system since the founding era; it "has its roots at the very foundation of our English law heritage" and was first articulated in the Magna Carta. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). "The history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution." *Id.* at 226.

Naturally, then, the Government and the Court both owe an "affirmative obligation" to a criminal defendant to bring him to trial promptly. *United States v. Black*, 918 F.3d 243, 253 (2d Cir. 2019). That burden "weighs particularly heavily on the government, which owes the additional duty of … pressing the court for a reasonably prompt trial." *Id.* (cleaned up).

## I.    Procedural and Factual History

The superseding indictment ("SSI") accuses Mr. Murta of conspiring to commit money laundering (Count 13), conspiring to violate the Foreign Corrupt Practices Act (Count 14), and committing substantive money laundering (Counts 18 and 19).  *See* Dkt. 129.[1]  It alleges that his crimes ran from 2012 until no later than May 2013.  *See id.* ¶¶ 186, 236, 261, 262.  Six years after those acts ended, the Government indicted Mr. Murta.  *Id.*  At the time, he lived in Portugal, where he was arrested in May 2019 based on an American warrant.

On June 2, 2021, at the conclusion of extradition proceedings, Portuguese authorities re-arrested Mr. Murta at the request of the United States.  *See* Testimony of H. Salinas, Dkt. 209 at 86; Testimony of E. Murta, Dkt. 209 at 96.  American authorities, however, failed to timely transport him from Portuguese custody to the United States.  Portugal requested that American authorities pick up Mr. Murta no later than June 21, 2021.  Dkt. 253-1 at 2.  Shortly before that deadline, however, the Department of Justice requested an additional 20 days, *id.*, and a Portuguese court granted that request.  Dkt. 253-2 at 3.  Mr. Murta finally arrived in Houston on July 9, 2021.  *See* Dkt. 233-7 at 7 (listing the "Date/Time of Arrival" at the Joe Corley Detention Center as 7/9/21 at 19:05).  In total, he spent 38 days in custody during the transportation process.  Because of the Government's failure to transport him promptly, Mr. Murta did not have an initial appearance in this district until July 12, 2021.

---

[1] The original indictment, filed in August 2017, did not charge Mr. Murta. *See* Dkt. 1.

At that initial appearance, the United States moved to detain Mr. Murta, and after multiple rounds of argument and briefing, a magistrate judge granted that request. Dkt. 228. Trial was set for August 30, 2021. Dkt. 201.

A week before that trial date, this Court held a pretrial conference. *See* Transcript of Pretrial Conference (Aug. 23, 2021), Dkt. 225. The Court informed the parties that it would be issuing a new scheduling order, although neither party had requested a continuance. *Id.* at 46–47. At that time, Mr. Murta expressed his concern "in terms of exercising our speedy trial rights" because he had been in custody since June 2, 2021. *Id.* at 47. He noted that the "70-day speedy trial clock [was] upon us." *Id.* The Court responded, "I'll leave that in your hands." *Id.*

On August 30, 2021, the Court entered an amended scheduling order, which reset trial until December 13, 2021. Dkt. 229. The Court did not explain its reasoning or its basis for choosing that date. *See id.* A week later, on September 7, 2021, the United States filed an opposed motion to clarify, asking the Court to enter a post-hoc explanation for its amended scheduling order. Dkt. 232. Mr. Murta opposed that motion because he did not believe delay was necessary, and he maintained his desire for a speedy trial. The Court did not act on the Government's request.

Shortly after the Court continued the trial, Mr. Murta filed an opposed motion for the Court to review his detention order, seeking to be released from custody during the delay. Dkt. 233. He highlighted the magistrate judge's finding that Mr. Murta has "a medical condition that seems documented," and he attached records proving that his

condition is serious and that it was not being treated in pretrial detention. *Id.* at 11–12 (citing Dkts. 213, 233-7, 233-8). The Court did not rule on that motion.

Once again, on November 8, the Court *sua sponte* entered a new scheduling order, even though neither party had requested a continuance. Order, Dkt. 250. That order set trial for March 21, 2022. *Id.* Three days after the Court's November 8 order, Mr. Murta filed an opposed motion to sever, explicitly seeking to protect "his right to a speedy trial under both the Speedy Trial Act and the Sixth Amendment." Dkt. 252 at 3. He also asked that the Court "give this motion expedited consideration." *Id.* at 6.

The Court held a hearing on March 3, 2022, 18 days before trial was set to begin. *See* Transcript (Mar. 3, 2022), Dkt. 282. At that hearing, Mr. Murta said he was "ready to go to trial." *Id.* at 20. On the other hand, the Government asked the Court to continue the trial date based on "CIPA issues," although it never proffered any other grounds for requesting additional time. *Id.* at 5.

Before that hearing, Mr. Murta had filed a motion to dismiss based on a violation of the Speedy Trial Act. Dkt. 263. He noted that he had "pressed for a speedy trial" throughout his prosecution. *Id.* at 25.[2] Specifically, he had "never moved for a continuance or asked the Court to delay his trial." *Id.* He also emphasized "the deleterious impact [] a lengthy period of pretrial detention [had had] on his health," which was one of his many reasons for seeking "to protect his right to a speedy trial."

---

[2] At the March 3 hearing, Mr. Murta repeated that he had been "asking for a speedy trial even since our August 23rd pretrial conference" and had filed a motion to sever on that basis. Tr. at 7 (Mar. 3, 2022), Dkt. 282.

*Id.* "Excessive pretrial incarceration," he explained, had placed his "long-term hearing and health in danger." *Id.* at 29.

The Court did not rule on Mr. Murta's speedy trial motion, *see* Order at 19 n.15, Dkt. 332, but it granted several other motions to dismiss, fully disposing of Mr. Murta's case on July 11, 2022. Dkt. 332. After the Court denied a Government motion to stay its dismissal order, *see* Dkt. 344, the Government filed the same request in the Fifth Circuit, which granted an administrative stay and specifically ordered this Court "to continue holding Murta's passport." Dkt. 348. As a result, Mr. Murta was forced to remain in this country longer, even though this Court had dismissed all his charges. The Government prevailed on appeal. In all, the Government's appeal caused an extra eight months of delay (from the dismissal on July 11, 2022, to remand on March 2, 2023).

Even now, on remand, the Government *still* seeks to delay Mr. Murta's trial. A year ago, at a pretrial conference on March 3, 2022, the Government gave no indication that it was unprepared for trial, although it sought a delay for the Court to review classified information. Yet now, nearly a decade into the Government's investigation, four years after indicting Mr. Murta, and nearly a year after the last trial setting (when it was presumably ready for trial), the Government has now boldly asserted that "it is unreasonable to expect the parties to adequately prepare for trial" within 70 days. Dkt. 387 at 1; *see* 18 U.S.C. § 3161(d)(2) (trial to occur within 70 days following

reinstatement of an indictment after appeal).[3]  Mr. Murta could not disagree more strongly, and he continues to be ready for trial, as he was before the Government took its appeal.  Tr. at 9 (Mar. 3, 2022), Dkt. 282 ("We are ready to go to trial."); *id.* at 18 ("we are interested in a speedy trial"); *id.* at 20 ("we are still insisting on our speedy trial rights both under the Constitution and under the Speedy Trial Act.").

Below, we include a list of relevant dates.

---

[3] In the first 11 days after remand, the Government had already *twice* asked the Court to toll the Speedy Trial Act clock.  Gov't Mot. to Toll (Mar. 3, 2023), Dkt. 387 (The Government "requests that the Court … toll the Speedy Trial Act … to the date of the next status hearing"); Tr. at 13 (Mar. 13, 2023), Dkt. 391 (The "Government would ask, if we are making an oral motion, that the time between now and the filing of pretrial motions on April 3rd be tolled under the Speedy Trial Act.").  The Court denied both requests.  *See* Tr. at 13 ("I'm not going to do that"); Order (Mar. 13, 2023), Dkt. 394 ("The Court denies any tolling of the speedy trial act.").

## II. Summary of Relevant Dates

| | |
|---|---|
| Last acts alleged against Mr. Murta in the SSI. | May 2013 |
| The Government indicted Mr. Murta. | April 24, 2019 |
| Mr. Murta was first arrested in Portugal based on the Superseding Indictment. | May 9, 2019 |
| Portuguese officials re-arrested Mr. Murta after completion of extradition proceedings. | June 2, 2021 |
| Initial appearance in Houston. | July 12, 2021 |
| The Court held a pretrial conference, at which time it announced an intent to issue an amended scheduling order. Mr. Murta expressed concern that the "70-day speedy trial clock [was] upon us." The Court responded, "I'll leave that in your hands." | August 23, 2021 |
| The Court entered an amended scheduling order, setting trial for December 13, 2021. | August 30, 2021 |
| Mr. Murta opposed a Government motion to clarify, which asked the Court to exclude time under the Speedy Trial Act. | September 7, 2021 |
| The Court *sua sponte* entered a second amended scheduling order, setting trial for March 21, 2022. | November 8, 2021 |
| Mr. Murta filed a motion to sever, to protect "his right to a speedy trial under both the Speedy Trial Act and the Sixth Amendment." | November 11, 2021 |
| Mr. Murta filed several motions, including a motion to dismiss based on a violation of the Speedy Trial Act. | February 21, 2022 |
| The Court held a pretrial conference. Mr. Murta was "still insisting on [his] speedy trial rights both under the Constitution and under the Speedy Trial Act" because he was "ready to go to trial." | March 3, 2022 |
| The Court granted multiple motions to dismiss. | July 11, 2022 |
| The Fifth Circuit issued its mandate. | March 2, 2023 |
| The Government moved to toll the Speedy Trial Act. | March 3, 2023 |
| The Government again moved to toll the Speedy Trial Act. | March 13, 2023 |

**III. A Constitutional Violation Has Occurred.**

The Sixth Amendment right to a speedy trial protects three interests of a criminal defendant: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). When determining whether a defendant's right to a speedy trial has been violated, courts consider four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 530.

### A. Length of Delay: The Government alleges crimes last committed in 2013, and now four years after it indicted Mr. Murta, it is still asking to delay his trial.

The first *Barker* factor, length of delay, "functions as a triggering mechanism" — when there is at least one year between accusation and trial, a court must examine the other three factors. *Barker*, 407 U.S. at 530; *see also United States v. Duran-Gomez*, 984 F.3d 366, 374 (5th Cir. 2020). A delay of "four and one-half years is unquestionably substantial." *Black*, 918 F.3d at 255 (quotation marks and citation omitted). Mr. Murta was indicted in April 2019, and he was arrested in May 2019. Tr. at 65, 72 (July 26, 2021), Dkt. 209 (In May 2019, "[h]e was arrested after an extradition request from the United States."). Then on June 2, 2021, he was rearrested to be extradited. *Id.* at 96. Here, there is far more than one year between accusation and trial, and it is beyond the "2 1/2 years" the Fifth Circuit said "weighed … heavily in [a

defendant's] favor." *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008).[4]  The

Court must go on to examine the other factors.  *Barker*, 407 U.S. at 530.

**B. Reason for Delay: Mr. Murta has never requested a continuance, but the Government has repeatedly undermined his desire for a speedy trial.**

The second factor concerns why and how the delay occurred, including which

parties bear responsibility for the delay.  *See United States v. Peeples*, 811 F.2d 849,

851 (5th Cir. 1987) ("If the prosecutor or the district court were entirely at fault for the

delay in this case[,] we might view Peeples' arguments more favorably.").  Under this

factor, courts evaluate which party is more to blame for the delay.  *Vermont v. Brillon*,

556 U.S. 81, 90 (2009).  Unexplained or negligent delays weigh against the

Government, although not heavily.  *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th

Cir. 2008).  Intentional delay weighs heavily against the Government because "it is

improper for the prosecution intentionally to delay 'to gain some tactical advantage

over [defendants].'"  *Barker*, 407 U.S. at 531 n.32 (quoting *United States v. Marion*,

404 U.S. 307, 325 (1971)).

This case is marked by an unseemly pattern of Government delay and undue

diligence.  First, the Government delayed transporting Mr. Murta from Portugal to the

---

[4] In *United States v. Frye*, the Fifth Circuit calculated the length of delay by excluding time necessary for a Government interlocutory appeal in which the Government prevailed on an important issue.  489 F.3d 201, 211 (5th Cir. 2007); *see also United States v. Loud Hawk*, 474 U.S. 302 (1986) (applying the *Barker* factors to determine whether a Government interlocutory appeal violated right to speedy trial).  Here, even excluding the time while the Government's appeal was pending (July 22, 2022, through March 2, 2023), more than three years have elapsed since Mr. Murta was indicted.  If the Court also excludes the time Mr. Murta spent litigating extradition in Portugal (May 9, 2019, to June 2, 2021), there is still more than one year of delay (June 2, 2021, to July 22, 2022; and March 3, 2023, through the present).

United States, causing him to spend at least 30 unnecessary days in pretrial detention before making an initial appearance.  *See* Mot. to Dismiss at 4, 9, & n.6, Dkt. 263. Second, on the verge of trial last year, the Government asserted that an issue newly arose regarding classified information, Dkt. 270 at 2, even though the Government had indicted Mr. Murta nearly three years earlier and had been investigating this case far longer.  Nine months after Mr. Murta's first appearance in this Court (but only eighteen days before trial), the Government informed the Court it needed the trial continued because of that new discovery.[5]  Third, the Government recently filed a frivolous motion to toll speedy trial and made a similar oral motion days later, both times failing to identify any provision of the Speedy Trial Act that would justify such an order.  *See* Murta Opposition, Dkt. 388; Transcript at 13 (Mar. 13, 2023), Dkt. 391 ("the government would ask … that the time between now and the filing of pretrial motions … be tolled under the Speedy Trial Act").  Fourth, the Government *still* has not given Mr. Murta all discovery to which he is entitled.  Gov't Mot. at 3 (Mar. 3, 2023), Dkt. 387 (saying that "most [of the discovery] has already been provided" to Mr. Murta); *see also* Murta Supplement (May 23, 2022), Dkt. 316 (Government opposes providing discovery that, in another case regarding the same MLAT-related statute-of-limitations

---

[5] In a separate motion, Mr. Murta asks the Court to order discovery regarding the Government's action to delay his trial.  The Government sought delay based on classified information even though it intended to ask the Court to "exclude those documents from discovery because … they are not relevant and helpful."  Tr. at 6 (Mar. 3, 2022), Dkt. 282. The Court reviewed a declaration summarizing the materials before agreeing none of them were "relevant and helpful to the defense."  Dkt. 323 at 2.  Mr. Murta has reason to believe the Government's late-filed motion regarding classified information was an intentional effort to delay his trial, which was scheduled to begin 18 days later.

issue, it has "conceded … could be relevant" and "produced those records [to the defendant] without objection").

By contrast, Mr. Murta has repeatedly asserted his desire for a speedy trial, and he has never asked this Court to delay his trial. This factor weighs heavily in Mr. Murta's favor.

**C. Diligent Assertions of The Right: Mr. Murta has consistently asserted his right to, and desire for, a speedy trial.**

The third factor, "[t]he defendant's assertion of his speedy trial right … is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32. Mr. Murta has repeatedly insisted on a speedy trial and asserted his right under both the Constitution and the Speedy Trial Act. *See United States v. Frye*, 489 F.3d 201, 211–12 (5th Cir. 2007) (assertion of the right to speedy trial generally includes an objection to continuance or request to go to trial). In this case, Mr. Murta has:

- Expressed his concern about a new trial schedule because, "in terms of exercising our speedy trial rights," the "70-day speedy trial clock is upon us." Tr. at 47 (Aug. 23, 2021), Dkt. 225.

- Opposed a Government request for a tolling order. Dkt. 232 at 3 (Sept. 7, 2021).

- Filed an opposed motion to sever to protect "his right to a speedy trial under both the Speedy Trial Act and the Sixth Amendment." Dkt. 252 at 3 (Nov. 11, 2021). He also asked the Court to "give this motion expedited consideration." *Id.* at 6.

- Moved to dismiss based on a violation of the Speedy Trial Act. Dkt. 263 (Feb. 21, 2022).

- Insisted on a speedy trial "both under the Constitution and under the Speedy Trial Act," saying "[w]e are ready to go to trial." Tr. at 9, 20 (Mar. 3, 2022), Dkt. 282.

- Opposed another Government motion for a tolling order. Dkt. 387 at 5 (Mar. 3, 2023).

Mr. Murta has never requested a continuance, and he has never agreed to toll limitations. This factor weighs heavily in Mr. Murta's favor.

### D. Prejudice: The excessive delay has jeopardized Mr. Murta's long-term health, inflicted incredible anxiety and concern upon him, and impaired his defense.

In the Fifth Circuit, a period of delay shorter than five years generally will not constitute presumed prejudice, but a defendant may have suffered actual prejudice. *United States v. Frye*, 372 F.3d 729, 737, 739 (5th Cir. 2004). "Actual prejudice is assessed in light of the three following interests of the defendant: (1) to prevent oppressive pre-trial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (internal quotations omitted).

#### 1. *Mr. Murta spent nine months in pretrial incarceration, exacerbating his critical health condition for which he received wholly inadequate care.*

Mr. Murta was incarcerated from June 2, 2021, through March 10, 2022. *See* Order Setting Conditions of Release (Mar. 10, 2022), Dkt. 292. "The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. … The time spent in jail is simply dead time." *Barker*, 407 U.S. at 532–33. It was all that to Mr. Murta, but worse as a foreigner in a foreign land.

During the nine months he spent in jail awaiting trial, Mr. Murta received substandard medical care that seriously jeopardized his health, especially his hearing.

14

*See* Dkt. 233 at 11–12 (and attached exhibits); Dkt. 213 at 1–3 (and attached exhibits).[6]

In sworn testimony, Mr. Murta's wife described his health condition this way: "[H]e has to be monitored, the situation, because if it's not monitored at least once per month, if it's not aspirated, if it's not cleaned, then actually the tumor [in his ear] can become infected, and it can be a very dangerous infection. It could actually cause loss of hearing, it can actually cause his death." Tr. at 102 (July 26, 2021), Dkt. 209. That concern is corroborated by several medical documents in the record. *See, e.g.*, Dkt. 213-3; Dkt. 233-7.

Unwarranted and oppressive pretrial incarceration has placed Mr. Murta's long-term hearing and health in danger.[7] The Government's own actions reveal that Mr. Murta's pretrial incarceration was completely unnecessary. After nine months of fighting to keep Mr. Murta in custody (*see* Gov't Opposition to Bail, Dkt. 220; Gov't Opposition to Review of Detention Order, Dkt. 239), the Government suddenly

---

[6] Mr. Murta repeatedly raised serious concerns about his health during his time in custody. *See* Testimony of E. Murta, Dkt. 209 at 101–04 (July 26, 2021); Def. Mot. to Dismiss, Dkt. 216 at 1 (Aug. 11, 2021) (noting Mr. Murta's "serious, well-documented health issue pertaining to his ears"); Tr. of Pretrial Conference, Dkt. 225 at 40–43 & 47 (Aug. 23, 2021) (explaining that "we have a very serious medical issue that's pressing" and "he's not getting appropriate treatment," and that "[t]he 70-day speedy trial clock is upon us"); Def. Mot. for Review of Detention Order, Dkt. 233 at 11–12 (Sept. 15, 2021) ("Mr. Murta *still* has not even been seen by an ENT physician even though he has been in US custody for over two months"); Def. Mot. to Sever at 3 & 5, Dkt. 253 (Nov. 12, 2021) (noting serious risk to Mr. Murta's right to speedy trial and "his continuing, ever-worsening, and very serious medical condition").

[7] Since Mr. Murta was released on bond, he continues to suffer from inadequate medical treatment. He has no American health insurance because he has no legal status in this country, so he has not received necessary surgery to address his health condition. That issue is the subject of his motion to modify conditions of release, filed concurrently with this motion.

changed course and in March 2022 agreed that Mr. Murta could be released. Tr. at 15 (Mar. 3, 2022), Dkt. 282 (Prosecutor: "I think we are in agreement on most of the bond conditions that are laid out in [Mr. Murta's] motion."). The Government's abrupt change of heart was not based on any change in the relevant Bail Reform Act factors, and it reveals that the preceding months of incarceration were unnecessary, unwarranted, and dangerous. Mr. Murta did not flee.

This factor demonstrates significant prejudice, and it weighs heavily in Mr. Murta's favor. *See United States v. Bishop*, 629 F.3d 462, 466 (5th Cir. 2010) ("We agree that a defendant's age and health may be relevant to a speedy trial claim. They will be most relevant, however, in evaluating whether actual prejudice occurred pursuant to the fourth *Barker* factor.").

### 2. Mr. Murta has experienced extraordinary anxiety and concern, even since he was released on bond.

As the Supreme Court has recognized:

> [I]nordinate delay between public charge and trial, … wholly aside from possible prejudice to a defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."

*United States v. Taylor*, 487 U.S. 326, 340 (1988) (quoting *Barker*, 407 U.S. at 537 (White, J., concurring)). For constitutional speedy trial challenges, where a defendant is subject to bail, courts must still "engage in a balancing of the restrictions imposed and their effect on the defendant, the necessity of the delay, and the length of delay." *Loud Hawk*, 474 U.S. at 311 n.13.

Here, since the Court ordered Mr. Murta released onto bond last March, he has been subject to a variety of rules and requirements, including a prohibition on returning to Portugal, his home country.  He has been separated from his family and friends, and he has been unable to work or provide for his family.  He has been required to remain apart from his family, his culture, and his livelihood.  In the words of the Supreme Court, these four years since indictment have seriously interfered with Mr. Murta's liberty, disrupted his employment, drained his financial resources, curtailed his associations, subjected him to public scorn, and created exceeding anxiety in him, his family, and his friends.  *See Taylor*, 487 U.S. at 340.  He has lived "under a cloud of anxiety, suspicion, and often hostility."  *Barker*, 407 U.S. at 533.  This factor — especially since arriving in this country — weighs in Mr. Murta's favor, more so than for the typical defendant on bond who is at home in the United States.  Mr. Murta has experienced significantly greater harm based on his unique circumstances.

### 3. Mr. Murta's defense has been impaired because of the Government's ten-year delay in bringing him to trial.

"[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."  *Doggett v. United States*, 505 U.S. 647, 655 (1992).  For that reason, "affirmative proof of particularized prejudice is not essential to every speedy trial claim."  *Id.*  Indeed, "time's erosion of exculpatory evidence and testimony 'can rarely be shown.'"  *Id.* (quoting *Barker*, 407 U.S. at 532).

In this case, a full decade has passed since the last events alleged in the Superseding Indictment.  Despite that, the Government still seeks to delay trial further.

Dkt. 387.  The last ten years have eroded Mr. Murta's ability to find witnesses whose memories are sufficiently reliable to support his defense, and they have certainly harmed his ability to locate exculpatory information — particularly documents and witnesses scattered in various locales around the world — that existed during the time alleged in the indictment.

## IV. This Case is Markedly Different than *Duran-Gomez*.

The Fifth Circuit recently addressed a defendant's Sixth Amendment speedy trial right, reversing a decision to dismiss that defendant's indictment.  *United States v. Duran-Gomez*, 984 F.3d 366 (5th Cir. 2020).  In so doing, the Court outlined several considerations, including the reasons it viewed the defendant as having "acquiesced in and indeed actively sought the delay about which he" complained.  *Id.* at 379.  The facts of this case are dramatically different than those of *Duran-Gomez* — that case, in fact, provides support for this motion.  As in *Duran-Gomez*, Mr. Murta's trial has been "delayed for at least one year," so the Court must evaluate the other three factors.  *Id.* at 374.

### A. Mr. Murta has never moved for a continuance, much less done so ten times, and he has repeatedly asserted his right to a speedy trial.

The three *Barker* factors show that this case is unlike *Duran-Gomez*.  First, "Duran-Gomez moved to continue his trial or various deadlines on ten different occasions.  His counsel certified that he was unopposed to seven of his codefendants' motions for continuance, bringing the total continuances to which he either sought or explicitly consented to seventeen."  *Duran-Gomez*, 984 F.3d at 375.  The Court

explained, "'It can hardly be said that' a defendant's many motions for continuance represent someone 'aggressively asserting his desire to be tried promptly.' This factor weighs heavily against Duran-Gomez." *Duran-Gomez*, 984 F.3d at 378 (quoting *Frye*, 489 F.3d at 212). By contrast, Mr. Murta has never requested a continuance, and he has never consented to another party's request for a continuance.

In addition, Duran-Gomez waited almost nine years before moving to sever his case from that of his codefendant, which would have helped protect his right to a speedy trial. *Duran-Gomez*, 984 F.3d at 376. In contrast, Mr. Murta filed an opposed motion to sever three days after the Court's November 8, 2021, order, which *sua sponte* delayed an approaching December 2021 trial until March 2022. Mot. to Sever (Nov. 11, 2021), Dkt. 252; Amended Scheduling Order (Nov. 8, 2021), Dkt. 250. In that motion, over the Government's objection, Mr. Murta urged a severance from his codefendants, because they were still located abroad and he did not want their cases to "compromise his specific right to a speedy trial." Dkt. 252 at 6.

Unlike Duran-Gomez, Mr. Murta has not requested a single continuance, and he has argued against the delays requested by the Government. He also promptly sought to sever himself from his codefendants to preserve his right to a speedy trial. This weighs heavily in his favor and sharply differentiates this case from *Duran-Gomez*.

## B. Mr. Murta has objected to tolling and has asserted his right to a speedy trial.

In *Duran-Gomez*, the defendant admitted "that he never objected to a continuance or specifically asked to go to trial." *Duran-Gomez*, 984 F.3d at 378. He

also "did not assert his speedy trial right for over nine years." *Id.* at 381. Mr. Murta, on the other hand, asked for a speedy trial just one month after his initial appearance. Tr. at 47 (August 23, 2021), Dkt. 225. He opposed a Government request for an order tolling the Speedy Trial Act. *See* Certificate of Service on Gov't Mot. to Clarify (Sept. 7, 2021), Dkt. 232. Then he filed a motion to sever, seeking to vindicate "his right to a speedy trial under both the Speedy Trial Act and the Sixth Amendment." Mot. to Sever (Nov. 12, 2021), Dkt. 253. And shortly after the Speedy Trial Act deadline passed, he filed a motion to dismiss on that basis. Mot. to Dismiss (Feb. 21, 2022), Dkt. 263. After that, at the March 2022 hearing, he continued to insist on a speedy trial "both under the Constitution and under the Speedy Trial Act," saying "[w]e are ready to go to trial." Tr. at 9, 20 (Mar. 3, 2022), Dkt. 282. And now, on remand, he has opposed yet another Government motion for a tolling order. Murta Opposition (Mar. 6, 2023), Dkt. 388. In short, Mr. Murta has emphatically objected to continuances and actively asserted his right to a speedy trial. In that way, this case is entirely unlike *Duran-Gomez*, and this factor weighs heavily in Mr. Murta's favor.

### C. Mr. Murta has experienced significant anxiety and concern.

In *Duran-Gomez*, the defendant "substantially contributed to the pre-trial delay with his many motions for continuance. His failure to object to a single motion for continuance also undercuts any assertion of anxiety or concern, as does his failure to provide any evidence in support of his argument." *Duran-Gomez*, 984 F.3d at 380. Quite the opposite here: Mr. Murta objected to every Government request to toll speedy trial, and he has consistently asserted his right. As set out above, he has suffered

significant anxiety, concern, and other actual prejudice in a foreign country — both on

bond and in pretrial incarceration — and those harms are not undercut by any failure to

object, as in *Duran-Gomez*.  This factor weighs heavily in his favor.

**V.   The Superseding Indictment Must Be Dismissed Based on a Sixth Amendment Violation.**

The Superseding Indictment must be dismissed based on a violation of

Mr. Murta's Sixth Amendment right to a speedy trial.  The Government is prosecuting

Mr. Murta for acts it says he took in 2012 and 2013.  Despite having a decade to

investigate and prepare for trial, the Government still seeks to delay Mr. Murta's day

in court.  Gov't Request to Toll Speedy Trial (Mar. 3, 2023), Dkt. 387.  After carefully

analyzing the *Barker* factors in light of the record, the Court should dismiss the

superseding indictment with prejudice.

**VI.  Alternatively, Rule 48(b) Grants the Court Broad Discretion to Dismiss.**

Under Federal Rule of Criminal Procedure 48(b), the Court has "extremely

broad discretion" to dismiss an indictment if unnecessary delay occurs in bringing the

defendant to trial. *United States v. Garcia*, 995 F.2d 556, 561 n.8 (5th Cir. 1993) (citing

Fed. R. Crim. P. 48(b)(3)).  "Inarguably the power of the court under 48(b)," for

example, "includes at least a power to dismiss without prejudice because of delay not

rising to the level of a constitutional violation." *United States v. Novelli*, 544 F.2d 800,

803 (5th Cir. 1977).  A Rule 48(b) analysis requires application of the *Barker* factors,

*United States v. Harrison*, 918 F.2d 469, 474 (5th Cir. 1990), but it "places a stricter

requirement of speed on the prosecution, and permits dismissal of an indictment even

though there has been no constitutional violation." *Mathies v. United States*, 374 F.2d 312, 314–15 (D.C. Cir. 1967).

Further, some courts have concluded that "[c]onsideration of prospective, as well as retrospective, delay is appropriate under Fed.R.Crim.P. 48(b)." *United States v. Zabady*, 546 F. Supp. 35, 38 (M.D. Pa. 1982). In *Zabady*, the Government argued that the case was "unique" because it "involved a number of witnesses who reside in eight foreign countries." *Id.* at 39. The court, however, rejected the Government's request for "six months or more" to prepare for trial, calling "such protracted post-indictment delay … patently inconsistent with society's common interest that [the] government prosecute, not persecute, those whom it accuses of crime." *Id.* (internal quotation marks omitted). "With the enormity of the resources of the United States Government," the court explained, "even the preparation of such a complex matter as this should move more expeditiously and orderly." *Id.* The court ordered the indictment dismissed under Rule 48(b), after noting that — unlike the Government — the defendants had expressed readiness to proceed to trial. *Id.* Mr. Murta has done the same since August 2021.

If this Court does not dismiss the superseding indictment based on a constitutional speedy-trial violation, Mr. Murta moves for dismissal with prejudice under Rule 48(b). A separate motion to dismiss based on a violation of the Speedy Trial Act is also on file with the Court.

Respectfully submitted,

/s/ Samy Khalil
Samy Khalil
Texas Bar No. 24038997
Joshua Lake
Texas Bar No. 24129249
**KHALIL LAW PLLC**
4200 Montrose Blvd., Ste. 440
Houston, Texas 77006
713.904.4477

*Attorneys for Paulo Murta*

## CERTIFICATE OF CONFERENCE AND SERVICE

The government opposes this motion. On April 3, 2023, I filed the foregoing

pleading with the Clerk of Court using the CM/ECF system, which served a copy on all

counsel of record.

/s/ Samy Khalil
Samy Khalil