United States District Court
Southern District of Texas
**ENTERED**
June 06, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL NO. 4:17-CR-00514-8 |
| | § | |
| PAULO JORGE DA COSTA CASQUEIRO | § | |
| MURTA (8) | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

### I.    INTRODUCTION

Before the Court are the defendant's, Paulo Jorge Da Costa Casqueiro Murta ("Murta"), motions to dismiss the Superseding Indictment ("SSI") based on a violation of the Speedy Trial Act ("STA") [DE 263] and a violation of his Sixth Amendment federal constitutional right to a speedy trial [DE 411].  Also pending are the government's oppositions to the motions [DEs 276, 422], and a reply and supplements filed by Murta [DEs 290, 412 and 447].  After examining the relevant pleadings and arguments, the Court determines that Murta's motions are meritorious and should be granted.

### II.    MOST RELEVANT BACKGROUND FACTS

#### A.    *Murta's Arrest and Extradition*

In January 2012, the Department of Homeland Security ("DHS") commenced an investigation into a bribery scheme, concerning energy and equipment contracts, against Petroleos de Venezuela, S.A. ("PDVSA"), a Venezuelan state-owned/state-controlled oil company.  Based on that investigation, on April 24, 2019, the government, in a SSI, brought

charges against Murta that resulted in his arrest in Portugal in May 2019.[1]

The government-initiated extradition proceedings shortly after the arrest. When the extradition proceedings were concluded, Murta was rearrested by Portuguese authorities and held from June 2, 2021, until July 2021, when he was transported to the United States to face prosecution. He made his initial appearance on July 12, 2021. On August 5, 2021, the Court entered its supplemental COVID-19 District Scheduling Order (#13), ("DSO-H-13") jury trials through September 7, 2021. Thereafter, the Court entered DSO-H-15 extending the stay of jury trials through October 12, 2021.[2]

### B. Supplemental Facts According to Murta

According to Murta, the government failed to transport him to the United States in a timely fashion, and; therefore, he did not make his initial appearance until July 12, 2021, 40 days after his rearrest in Portugal. At his initial appearance, the government moved to detain Murta which motion resulted in a two-day hearing and post-hearing briefing that did not yield an order addressing Murta's incarceration until August 26, 2021. The Magistrate Judge's order of detention was issued four days prior to the initial trial setting of August 30, 2021.

On August 23, 2021, this Court informed the parties that it would be issuing a new Scheduling Order due to public health concerns due to the COVID-19 pandemic and the suspension of jury trials. At that conference, Murta expressed concern about a speedy trial, pointing out that he had been in continuous custody since his rearrest in Portugal on June 2, 2021, and that the 70-day speedy trial period had nearly expired.

---

[1] The original indictment that was filed in August, 2017, did not name Murta as a defendant.
[2] https://www.txs.uscourts.gov/page/Covid-19-special-Orpers-houstongalveston-divisions.

On August 30, 2021, the Court entered an amended Scheduling Order pursuant to the Court's DSO-H- Order in place.  Murta's trial was, therefore, continued until December 13, 2021 [DE 229].  The Court did not state a specific basis for the continuance, which later prompted the government to seek clarification, requesting a *post-hoc* explanation for the amended Scheduling Order.  The Court did not act on that request because, in the Court's view, a DSO-H-Standing Order had suspended all jury trials through October 12, 2021.

On November 8, 2021, the Court *sua sponte* entered a new Scheduling Order canceling the December 13 trial date and continued the trial until March 21, 2022.  At the time, except for Murta, the indicted co-defendants had not been brought before the Court for initial appearances. However, neither party had requested a continuance.[3]  The Court concluded its order by excluding any delay from November 8, until the commencement of trial or disposition of charges, whichever came first, noting that discovery had not been provided to the defendant, and pretrial motions had not been filed.  *See* [DE 250].

On November 11, 2021, Murta filed a motion to sever his trial from that of his codefendants as none had yet appeared before the Court.  The government filed opposition on November 24, 2021; however, the Court did not address Murta's motion for severance until March 2, 2022.

On February 21, 2022, Murta filed several motions to dismiss, including a motion to suppress any statements attributed to him during a witness interview that was conducted by DHS Agents under Portuguese authority.  *See*  [DEs 262, 263, 265, and 267].   The government

---

[3] The Court's order indicated that "more time is needed to conduct discovery, prepare pretrial motions, and prepare for trial, and that failure to grant a continuance would result in a miscarriage of justice."  The Court stated that, "based on those representations," the ends of justice served by granting a continuance outweighed the best interest of the public and of the defendant to a speedy trial.  *Id.* (citing 18 U.S.C. § 3161(h)(7)(A) & (B)).  Neither Murta nor the government had made any such representations at that time.

responded to Murta's motions on March 7, 2022. *See* [DEs 276, 277, 278, 280], after which Murta filed replies. [DEs 286, 290, 293, 296]. However, in February, prior to responding to Murta's motions, the government raised, for the first time, an issue concerning "classified information" that it had in its possession, had reviewed on two prior occasions and thought it necessary to bring the matter to the Court's attention. The government followed its announcement with a February 27, 2022, motion for a pretrial conference regarding the matter. At that time, it explicitly claimed that the information implicated the Classified Information Procedures Act ("CIPA") and that the information [had] arisen in connection with the case during their trial preparation.

The government requested a hearing which the Court provided on March 3, 2022. At the hearing, the government stated that it had learned that the classified information was held by a governmental agency of the United States, " … and that the information [was] potentially discoverable." However, the government refused to disclose the name of the agency, the nature of the information, any details claiming that the information implicated national security concerns.

The government also informed the Court that it planned to file an *ex parte* motion to exclude the information from discovery because of the nature of the information. It insisted, though, that the information was not relevant or helpful to the government or defense in the case. In spite of this announcement, the government requested time to file an *ex parte* affidavit summarizing the classified information and that the time needed would impact the trial setting. Therefore, it sought a continuance of the trial set for March 21. It estimated that two to three months would be "ample time" for the Court to conclude a CIPA review.

Murta reminded the Court of his pending motion to dismiss the case based on a violation of the STA, and argued for a speedy trial. He also argued that the government's motion was being filed late, on the eve of trial, and that his motion was ripe for resolution. The Court

acknowledged Murta's concerns but, nevertheless, was compelled to grant the government's motion to postpone the trial. The Court was of the mind that discovery disclosure issues, relating to the treatment of potentially classified information, warranted a continuance under 18 U.S.C. §§ 3161(h)(7)(A), (B). *See* [DE 298]. Therefore, the trial was reset to July 25, 2022.

On May 11, 2022, the government filed a sealed, *ex parte -- in camera* motion for a protective order regarding the classified information and requested that its motion and the classified information not be disclosed to the defense. *See* [DE 310]. The Court granted the government's motion on June 10, 2022.

On July 11, 2022, the Court granted Murta's motions to dismiss for lack of jurisdiction, failure to state an offense, lack of a "due process" nexus, and violation of the statute of limitations. However, it did not address Murta's STA claims. The Court also granted Murta's motion to suppress his statements based on *Miranda* and the written record.

The government appealed the Court's decision. On March 2, 2023, the Fifth Circuit reversed the Court's judgment of dismissal, issued its mandate, and remanded the case for further proceedings.[4] Shortly after the matter was remanded, the government twice moved to toll the 70-day speedy trial clock to avoid the application of the STA to certain dates by, retroactively, stating additional finding concerning the Court's November 8, 2022, Order [DE 250]. No language was supplied by the government for supplementing the Court's Order and the Court denied both requests.

---

[4] After the Fifth Circuit reversed the Court's judgment of dismissal, Murta requested an evidentiary hearing and reasserted his motion to suppress.

As a result of the CIPA proceedings, Murta requested discovery as to when the government came into possession of the classified information that led to its CIPA filing. Murta's concerns focused on his previously failed statute of limitations claims. *See* [DE 405]. The Court granted Murta's request for discovery and directed the government to identify the dates on which the Department of Justice and the government, separately, came into possession of the classified information. The government balked at the Court's order declaring that the dates were contained in the classified information that the Court had reviewed and that the dates, too, were classified. The government then requested an *in camera – ex parte* conference with the Court to disclose its knowledge concerning the dates.[5]

## III.    THE LEGAL STANDARDS

### A.    *The Speedy Trial Act*

A defendant may seek dismissal of a case for a violation of the Speedy Trial Act. 18 U.S.C. § 3161. The STA prescribes a framework for ensuring a speedy trial after an indictment has been returned. Barring extenuating circumstances, a criminal defendant's trial must commence within 70 days after he is charged or makes an initial appearance, whichever is later. *Id.* at § 3161(c)(1). Certain periods of delay "shall be excluded in computing" that time if the delay falls into one or more enumerated categories. *Id.* at § 3161(h).

Hence, periods of delay shall be excluded if they resulted from any pretrial motion, but the delay shall not exceed thirty days. *Id.* at § 3161(h)(1)(D), (h)(1)(H). Absent evidence to the contrary, "a motion should be considered under advisement for Speedy Trial Act purposes on

---

[5] In response to the Court's Order concerning the date(s) when the classified information came into the Department of Justice and the U.S. Attorney's hands, the government filed an "Amended Response" on May 1 [DE 439]. There, the government stated that the information was "may" have been available to the government on August 3, 2018, but concerned an unrelated defendant with regard to Murta, the government admits being in actual possession of the information on December 1, 2021, while preparing for trial and again on February 25, 2022. *See* [DE 439 at n. 1].

the day the last paper concerning the motion at issue was filed with the court." *United States v. Johnson*, 29 F.3d 940, 944 (5th Cir. 1994).  Assuming that a court fails to timely rule on any motion, the STA clock is tolled for thirty days after the filing of the last paper related to any motion.  *United States v. Stephens*, 489 F.3d 647, 656 (5th Cir. 2007).  After thirty days, the "clock begins to tick again … regardless of whether the court has ruled on the motion."  *Id.*

A court may exclude time if it makes findings "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  *See* 18 U.S.C.  § 3161(h)(7)(A).  That time will not be excludable, however, "unless the court  sets forth, in the record of the case, either orally or in writing, its reasons." Id. "In the absence of contemporaneous, articulated on-the-record, findings for extending the time for trial past seventy days amounting to an acceptable ends of justice analysis, [a defendant] is entitled to have his case dismissed."  *United States v. Blackwell*, 12 F.3d 44, 48 (5th Cir. 1994).

Any "ends of justice" finding must include consideration of whether more time is needed to prepare for trial *after* "taking into account the exercise of due diligence." *See* 18 U.S.C.  § 3161(h)(7)(B)(iv); *Blackwell*, 12 F.3d at 48.  That finding must be justified by specific facts present in the record at the time the continuance is granted. *United States v. Jones*, 56 F.3d 581, 586 (5th Cir. 1995).  Finally, no "ends of justice" continuance may be granted based on "lack of diligent preparation … on the part of the attorney for the government."  *See* 18 U.S.C.  § 3161(h)(7)(C).

A dismissal may be with or without prejudice; and the court must consider the following factors, among others, in its analysis: (a) "the seriousness of the offense; (b) the facts and circumstances of the case which led to the dismissal; and (c) the impact of a reprosecution on the administration of this chapter and on the administration of justice."  *See* 18 U.S.C. §

3162(a)(2).

**B.     Sixth Amendment Speedy Trial**

The Sixth Amendment to the United States Constitution also grants criminally charged defendants the right to a speedy trial. It serves at least three purposes: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532 (1972).  When determining whether a defendant's Sixth Amendment to a speedy trial has been violated, courts consider four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of his right; and, (4) prejudice to the defendant. *Id.* at 530.

The first factor, length of delay, "functions as a triggering mechanism". When there is at least one year between accusation and trial, a court must examine the other three factors. *Barker*, 407 U.S. at 530; *see also United States v. Duran-Gomez*, 984 F.3d 366, 374 (5th Cir. 2020). The second factor concerns why and how a delay occurred, including which parties bear responsibility for the delay. *See United States v. Peeples*, 811 F.2d 849, 851 (5th Cir. 1987) ("If the prosecutor or the district court were entirely at fault for the delay in this case[,] we might view Peeples' arguments more favorably.").

Under the second factor, courts evaluate which party is more to blame for the delay. *Vermont v. Brillon*, 556 U.S. 81, 90 (2009).  Unexplained or negligent delays weigh against the government, although not heavily. *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008). On the other hand, intentional delay weighs heavily against the government because "it is improper for the prosecution intentionally to delay 'to gain some tactical advantage over [defendants].'" *Barker*, 407 U.S. at 531 n.32 (quoting *United States v. Marion*, 404 U.S. 307, 325 (1971)).

The third factor requires a court to determine if "[t]he defendant's assertion of his speedy trial right … is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32.  Finally, in cases with a delay shorter than five years, the fourth factor, prejudice, requires the Court to examine whether the defendant has suffered "actual prejudice." *United States v. Frye*, 372 F.3d 729, 737, 739 (5th Cir. 2004). "Actual prejudice is assessed in light of the three following interests of the defendant: (1) to prevent oppressive pre-trial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (internal quotations omitted).  With these legal parameters in mind, the Court moves to the parties' arguments and the Court's analysis.

## IV.    THE CONTENTIONS OF THE PARTIES

### A.    *Murta's Contentions*

Murta argues that he was not brought to trial within the 70-day limit set by the STA. He asserts that thirty, non-excludable, days should be counted as excludable to account for the days he was held in custody in Portugal waiting for the United States to transport him to face this prosecution.  He also contends that at least seventy-two, non-excludable, days elapsed between the date of his initial appearance in the Southern District of Texas and the filing of his motion to dismiss on February 21, 2022.  *See* [DE 263].  Finally, he contends that after his motions were filed, twenty-seven additional, non-excludable, days elapsed based on a lack of diligent preparation by the government. *See* [DEs 298 and 310].

In addition to his STA claim, Murta argues that his Sixth Amendment right to a speedy trial has been violated.  In this regard, he contends that the same *Barker* factors weigh in his favor, and that the reason(s) for the delay falls entirely on the government.  He notes that he has

never asked this Court for a continuance and has vigorously asserted his desire for a speedy trial.

### B.     The Government's Contentions

In response to Murta's motions and contentions, the government asserts that at most, seven, non-excludable, days exists from the date of Murta's initial appearance in this District through the trial [setting] that was scheduled for March 21, 2022.  All other delays should be excluded from the STA's excludable delay calculation.  The government requested that the Court enter an order retroactively stating that the Court's August 30, 2021, amended Scheduling Order was justified as an "ends of justice" Order that permitted excludable delay period(s) , pursuant to 18 U.S.C. § 3161(h)(7).

Regarding Murta's Sixth Amendment claim, the government states that none of the *Barker* factors weighs heavily against the government, and that Murta has not proven "actual prejudice" as it relates to any delays.  Hence, the government asserts that Murta has failed to establish a violation of either the STA or the Sixth Amendment regarding a speedy trial.

## V.     ANALYSIS AND DISCUSSION

### A.     Speedy Trial Act Violation Analysis

The Court is of the opinion that Murta's motion to dismiss based on violations of the STA should be granted.  The record is undisputed in most respects.  However, according to Murta, the parties' disputes are essentially limited to four periods of time of non-excludable delay:  (a) June 12 to July 11, 2021; (b) October 29 to November 10, 2021; (c) December 24, 2021, to February 20, 2022; and (d) multiple dates after April 14, 2022.  However, the Court must determine by its own calculations whether non-excludable periods of delay exists and whether the sum exceeds the 70-day period allowed.  *See* 18 U.S.C. § 3162(a)(2).  Assuming that the sum total does exceed the permissible time, the Court must determine whether Murta has suffered

actual prejudice.  The Court will examine the parties' arguments concerning each period, in turn, and determine in its judgment the merits of Murta's motion.

### B.    *Disputed Periods of Delay*

#### 1.    *Disputed dates June 12 to July 11, 2021*

Murta contends that the STA calculation should include the period of delay in transporting him for Portugal to the United States after the extradition proceedings concluded because the delay was unreasonable. He notes that the STA contains a provision identifying ten days as a presumptively reasonable time for transporting a defendant from one location to another.  *See* 18 U.S.C. § 3161(h)(1)(F). He argues that he was rearrested after the extradition proceedings ended on June 2, 2021, and held through July 11, 2021, when he made his initial appearance in the United States.  Hence, Murta argues the STA clock should have started running on June 12, 2021, ten days after his rearrest.  The government disagrees and so does the Court.

Section 3161(b)(1)(F) provides that any "delay resulting from transportation of any defendant from another district . . . [is not charged against the 70-day speedy trial clock] . . . except that any time consumed in excess of ten days from the date [of] an order of removal, or an order directing such transportations, and the defendant's arrival at the destination shall be presumed to be unreasonable."  The Court finds that the delay was not unreasonable.

While the delay may be presumed unreasonable, the government's assertion that Portuguese authorities notified the government only four days before the deadline set by Portuguese officials for picking up Murta.  Formal notification by Portuguese authorities was necessary for United States official plans to be confirmed.  Because Portuguese officials were dilatory, the notice was delayed in transmission, a 20-day extension was not an unreasonable

delay.  Therefore, the Court is of the view, and holds that the delay in transporting Murta to the United States should not be charged against the 70-day speedy trial clock.  *See United States  v. Lopez-Valenzuela*, 511 F.3d 487, 489 (5th Cir. 2007).

> 2.    *Disputed Dates October 29 to November 10, 2021*

Next, Murta asserts that the period from October 29 to November 10, 2021, a period of 12 days, should be charged against the 70-day speedy trial clock. It appears that the parties agree that non-excludable delay began to accrue on October 29, 2021, although the government asserts that the Court should retroactively memorialize findings that would serve to exclude the twelve days. For the Court to do so violates the "contemporaneous" findings requirement.  *Blackwell*, 12 F.3d at 48.  The Court is of the opinion, however, that both parties are in error concerning this period in light of the fact that the Court's Scheduling Orders were truncated by the District's DSC-H-Orders due to COVID-19 precautions.

Up to October 12, 2021, there were no jury trials being conducted in the courts due to the Court's DSO-H Orders. Murta correctly notes, however, that several jury trials were conducted in the courts after October 12, 2021.  Hence, the Court determines that the period of non-excludable delay commenced on October 13, 2021, when DSO-H-2021(18) was entered.  DSO-H-2021(18) and those preceding it, supersedes any exclusion anticipated by the Court or the parties arising out of the Court's amended Scheduling Orders.

Therefore, the Court's Scheduling Order, which did not include sufficient contemporaneous findings failed to toll the STA after October 12, 2021.  *Blackwell,* 12 F.3d at 47; *See Bloate v. United States*, 559 U.S. 196, 210 (2010). Hence, the period from October 13, 2021 through November 10, 2021, is chargeable against the 70-day speedy trial clock because no motions were pending. *See* § 3161(c)(1). That period, accounts for 29 days of a non-excludable

delay.

On November 11, 2021, Murta filed a motion to be severed from his co-defendants also charged in the SSI. The government filed a response on November 24.  At that time the speedy trial clock stopped until December 24, and started again on December 25.  *Stephens*, 489 F.3d at 656.

The government argues that the period from November 8, 2021 until March 21, 2022 should be tolled in light of the Court's *sua sponte* Scheduling Order of November 8. The Court has already addressed this argument except to say that the Court determines that its November 8 Scheduling Order was, in fact, presumptuous and, therefore, should not have been entered at the time.  The Court misjudged the terms and tenue of the District DSC-H-Orders and did not make Scheduling Order adjustments.  Moreover, while the Court included form exclusion language, suggesting that the basis for excludable delay existed, in fact, no basis was presented to the Court then or since.  Because the requirements for excludable delay did not exist at the time, the Court's Scheduling Order was unconstitutionally presumptuous. Hence, the Court's November 8, 2021, Order was ineffective in tolling the STA because of these failures. *United States v. Jones*, 56 F.3d 581, 586 (5th Cir. 1995).[6]

The Fifth Circuit has held that a continuance order that fails to exclude time under the STA, even though it indicates that it is based on the "ends of justice," including counsel's need "to complete discovery and prepare in this complex case," fails when the language is not supported

---

[6] There is no merit to the government's assertion that the Court can justify the November 8 order based on subsequently filed findings.  *See* DE 276 at 19–20.  An ends-of-justice continuance may only be based on the reasons "that actually motivated the court at the time it granted the continuance," *United States v. Bieganowski*, 313 F.3d 264, 283 (5th Cir. 2002), and on November 8, 2021, the Court had no indication of what, if any, motions the parties would file in the future.

by sufficient findings. *Id. see also Blackwell,* 12 F.3d at 47.  While addressing a similar order in *Blackwell,* the Fifth Circuit held that a court must evaluate whether the failure to grant the continuance would deny either counsel the reasonable time necessary for effective preparation. *Blackwell,* 12 F.3d at 47.  Here, neither party requested a continuance.  Therefore, the 59 days identified from December 25, 2021 to February 21, 2022, do not constitute excludable delay.

   3. *Disputed Period – March 18 to July 11, 2022*

 Finally, the parties dispute the significance and effect of the Court's amended Scheduling Order that was issued on March 18, 2022.  The government correctly notes that the Court made finding that delay was warranted, pursuant to 18 U.S.C. §§ 3161(h)(7)(A)(B), based on a notice from the government that matters of significance, concerning the treatment of potentially "classified information", had arisen.  Murta argues, however, that the language of the Court's Scheduling Order was insufficient to toll the STA because the delay was unwarranted and is a result of the lack of diligent preparation for trial by the government.  *See* 18 U.S.C. § 3161(h)(7)(C).

 Murta asserts that any delay that resulted from the Court's, March 18, Scheduling Order must be counted against the speedy trial clock because:  (a) the government has been less than forthcoming in its dealings with the Court and Murta; (b) the government was not ready for trial at any time leading up to February 21, 2022, and, as a result, has sought only to undermine Murta's STA motion; (c) the government's request for excludable delay establishes that the government did not search for *Brady/Giglio* materials until February 2021, approximately 20 days prior to trial set for March 21, 2022; and, (d) the government admits that the information is irrelevant, unhelpful and, although possessions has now been disclosed, the government opposes disclosure.  Therefore, any delay that resulted from the government's lack of readiness must be charged against the 70-

day speedy trial clock.

On February 21, 2022, Murta filed motions to dismiss based on a STA violation and the Sixth Amendment.  The government did not respond at the time, but filed a motion stating that it was in possession of classified information and that a CIPA status conference concerning the information was critical and necessary before going forward in trial. The Court was led to believe that it was a matter of National Security and that the Court must conduct a CIPA examination to determine the admissibility of such information and any terms of disclosure to Murta.

The Court expressed concerns about the timing of the government's disclosure in light of the government remarks that the information was irrelevant to the trial.  After examining the information on two separate occasions, the Court concludes that the cause for delay was unwarranted.  The delay requested by the government, therefore, should not stop the 70-day speedy trial clock.  No continuance under § 3161(h)(7) may be based on a lack of diligence on the part of the government, in preparing for trial, particularly when the information at issue was at all times in the government's hands.

The facts establishes that the government sought a delay based on irrelevant classified information that it had access to for an undetermined number of months prior to December 2021. It failed to disclose that it had the information until March 2022, after Murta filed his STA motion. The government admits that it reviewed the classified material on December 1, 2021; and yet failed to notify the Court and the defendants of any potential discovery-related issues for essentially three months.  The government's timing is also suspect.  One week after Murta filed his motions to dismiss and less than one month before trial the government hits the "pause button". The government has failed to offer persuasive evidence or arguments that justify its lack of diligence in timely revealing that it was in possession of classified information, which delay is an

act of bad faith that cannot be excused based on negligence or inadvertence.  *See* Fed. R. Crim. P., Rule 16(c)(1) and (2).

The history of the government's investigation concerning the PDVSA bribery/kickback scheme that began in 2010 supports the Court's conclusions.  Two of Murta's co-defendants were the subject of the government's investigation and were indicted in 2017.  Two years later, Murta was indicted a SSI based, primarily, on documents presented to him in a "witness" interview that was conducted by DHS agents under the authority of Portuguese law and its law enforcement authorities.  Under these circumstances, the Court finds that the government's word and conduct breached the wall of credibility, particularly in light of its apparent position that it would "go to mat" with the Court concerning the release of any of the information, including the dates when the government came into possession of it.[7]

That said, the period from February 21, when Murta filed his motions to dismiss until May 14, 2022, thirty days after the government responded to Murta's motions to dismiss is counted as excludable delay.  From May 15 to July 11, 2022, when the Court entered its Memorandum Opinion a total of 56 days constitutes non-excludable days against the 70-day STA.

The total of these non-excludable delay periods – October 13 through November 11, 2021 (29 days); December 25, 2021 through February 20, 2022 (56 days); and May 15 through July 11, 2022 (56 days) total 141 days of nonexcludable delay.

### B.      *Speedy Trial Act Dismissal With or Without Prejudice*

Lastly, the Court addresses Murta's request that dismissal be with prejudice.  The Court has discretion to dismiss charges with or without prejudice under 18 U.S.C. § 3162(a)(2).    In

---

[7] The government is yet to disclose to the Court when the confidential informant came to the attention of the Department of Justice.

making the call, three factors, among others, are to guide a court's discretion: (1) the seriousness of the offense; (2) the facts and circumstances of the case that led to the dismissal; and (3) the impact of a reprosecution on the administration of the STA and on the administration of justice. *See Blackwell*, 12 F.3d at 48.  A court must also examine the issue with an eye toward any prejudice to the defendant. *United States v. Taylor*, 487 U.S. 326, 334 (1988) (Under the STA, "there is little doubt that Congress intended [prejudice to the defendant] to be relevant for a district court's consideration.").

The Court is of the opinion that dismissal should be with prejudice in light of the government's intentional and protracted delays. *United States v. Melguizo*, 824 F.2d 370, 371 (5th Cir. 1987).

The government argues that the delays are of little or no consequence because it gets a new 70-day clock now that the Fifth Circuit has reversed the Court's decision, citing to 18 U.S.C. § 3161(d)(2). The Court is of the view that the statute never intended to permit the government to violate the STA, prior to a dismissal on other grounds, and when the case is reinstated, escape the consequences of unseemly conduct committed prior to the dismissal.  It is the Court's view that Murta's STA claims,  that were pending when the case was dismissed by the Court did not simply go away.  Nor are his motions jettisoned by the Fifth Circuit decision on other motions.  Hence, the Court was obligated to take the motion up on remand if the matter is brought to the Court's attention.  That said, the Court now proceeds to address the prejudice issue.

*i.    Seriousness of the Offense*

The SSI charges against the defendant are serious offenses that carry penalties up to 20 years' imprisonment.  *See* 18 U.S.C. § 1956(a)(2)(A).  A sentence of ten years or more has been deemed a "sufficient indication that the offense is serious." *Melguizo*, 824 F.2d at 371.

Although a defendant has no criminal history a fact that weighs in a defendant's favor, the Court finds that this factor does not weigh in favor of Murta.  *See United States v. Blevins*, 142 F.3d 223, 225 (5th Cir. 1998).  Nevertheless, this factor is of little consequence since criminal charges are pending against Murta in Portugal.

> ii.      *Facts and Circumstances Leading to Delays*

The second factor that the Court takes up concerns the cause for delay, including which party bears responsibility for the delay.  In this regard, *United States v. Peeples*, is instructive.  Where the fault lies at the feet of the government or the court, the question of "with or without" prejudice must be viewed as more favorable to the defendant, *Peeples,* 811 F.2d at 851.

In this case, the government "frittered" away the time, never announcing ready for trial and, it appears in hindsight, relied on the Court to give it cover.  Except for Murta's motion to be released on bond, a matter of no consequence in this discussion, Murta's motion to sever and his several motions to dismiss, all of which have been assessed against him, the substantial non-excludable delay periods cannot be attributed to him.  Moreover, any "[d]elay attributable to the trial court, just as delay attributable to the government, weighs in favor of dismissal with prejudice." *United States v. Blevins*, 755 F.3d 312, 318 (5th Cir. 2014) (internal quotation marks and citation omitted); *see also United States v. Bert*, 801 F.3d 125, 134–35 (2d Cir. 2015).

There is more to be said about the CIPA delay.  To what purpose was this disclosure made?  The government owes a duty of candor toward the Court and to Murta.  To create a *faux pas* circumstance, drawing the Court into a non-existent discovery matter, is of consequence.  It is the government's duty to determine as early as possible whether *Brady/Griglio* disclosures exists and make appropriate disclosures.  *See* [Fedr. R. Crim. P., Rule 16(a)(1) and (2).  In this duty, the government wholly failed.  This factor weighs in Murta's favor.

###### iii.      Impact of Reprosecution

The Court also determines that the third factor weighs in favor of dismissal with prejudice.  This factor "encompasses three concerns: (1) the defendant's right to a timely trial; (2) the potential deterrent effect of a prejudicial dismissal on repeated violations of the STA; and, (3) the public's interest in bringing the defendant to trial." *United States v. Blank*, 701 F.3d 1084, 1090 (5th Cir. 2012) (citation omitted).

During the first two periods of non-excludable delay at issue, the defendant was held in pretrial confinement in the United States for eight months (July 2021 through March 2022) — a period that does not include his incarceration in Portugal, pending transportation to the United States.  After Murta filed his motion to dismiss, based on violations of the STA, the government reversed its position on incarceration and agreed to a bond apparently determining that contrary to it earlier arguments, a Court could put in place a structure that would insure Murta's appearances for trial.  Murta's unnecessary lengthy detention is a matter of consequence.

This Court wrote in its Memorandum Opinion that "the people of Portugal have [as great a] stake in determining whether Murta's conduct was of a criminal nature [as] the United States." Murta continues to face criminal charges in Portugal based on alleged crimes similar to those described in this case.  Hence, a dismissal with prejudice here will not result in Murta being declared immune from prosecution in Portugal.  To the contrary, a dismissal expedites his return to Portugal to face those charges.  It is ironic that Murta has spent more than nine months in pretrial incarceration here in the United States, about one-half the sentence that two of the government's star witnesses, Rincon and Shiera, received for committing the substantive crimes of bribery and kickback.  Hence, the Court's earlier comment on the seriousness of the charges.

That length of pretrial incarceration also diminishes the public interest in prosecuting Murta. *See United States v. Elizondo*, Cr. No. L-00-937 (S.D. Tex. July 24, 2003). Concluding, the Court determines that the underlying facts of the case, the impact of a re-prosecution on the administration of justice under the STA and the proper display of the administration of justice, weigh in favor of dismissal with prejudice.

  iv. *Prejudice to the Defendant*

In examining prejudice to a defendant, the Court must consider unenumerated factors other than simply dismissal when dismissal is based on violation of the STA. 18 U.S.C. § 3162(a)(2). There is "little doubt that Congress intended [prejudice to the defendant] to be relevant for [ ] consideration." *Taylor*, 487 U.S. at 334. In that vein, the Court is of the view that Murta will suffer prejudice in at least two ways that reach far beyond what is typical for a criminal defendant who commits like or similar crimes in the United States.

First, Murta has suffered damage to his long-term health due to inadequate medical care while incarcerated and detained in the United States. *See* [DEs 213, 213-3, 233, 233-7]. Second, while in pretrial custody and while released on bond, Murta has been confined in a foreign country where he has no family, no connections to his community and no employment. There can be no doubt that the long delay in bringing his case to trial has "seriously interfere[d] with the defendant's liberty" and "disrupt[ed] his employment, drain[ed] his financial resources, curtail[ed] his associations, subject[ed] him to public obloquy, and create[d] anxiety in him, his family and his friends." *Id*. Such suffering by him has been experienced, in the Court's view, to a greater degree than most non-violent defendants, who are prosecuted in their home country. This factor also weighs in favor of dismissing the charges against Murta with prejudice.

Balancing all these factors against the circumstances, the Court concludes that it is appropriate to dismiss this case with prejudice.

### C.      *Constitutional Speedy Trial Violation*

Murta has also raised an independent basis for dismissal found in the Sixth Amendment right to a speedy trial. Under the four factors articulated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), it is evident that Murta's circumstances and the facts revealed, support the Court's earlier conclusion that a speedy trial violation occurred.  The Court will address each briefly as the Court has already stated in detail the Court's opinion.

#### i.      *Delay*

The government indicted the defendant on April 24, 2019.  He first appeared in this District on or about July 12, 2021, after his extradition became final.  It has been over two years since he arrived, yet the government has never announced ready for trial nor sought to bring brought him to trial.  Even excluding the approximately two years of delay between the SSI in 2019 and Murta's initial appearance in 2021, his trial has been delayed well beyond the one-year threshold.  Such a lengthy delay requires a Court to examine the other three *Barker* factors.

#### ii.      *Reason for the Delay*

Under the second factor, the Court must evaluate which party bears the greater responsibility for the delay.  On March 3, 2022, the government moved to delay trial for two to three months based on classified information that it said "had arisen."  At the time, trial was only three weeks away, and the government offered no good reason for waiting until the eve of trial to raise the matter, particularly since the information was by their own admission irrelevant, having been in its possession months, perhaps years before revelation.

The evidence also shows that the government began investigating this case at least as

early as 2010, and only in 2019 did it indict Murta. In the meantime, the government had access to all pertinent classified information, but failed to examine it or acknowledge possession until February of 2022. Had the government timely raised the issue of classified information, the Court and the parties could have resolved it well in advance of the March 21, 2022, trial date. Therefore, the Court finds that the government's lack of diligence, an unwarranted hinderance, led to that delay, which weighs in the defendant's favor.

As stated earlier, in the Court's view, the government used irrelevant information as a basis to delay the trial and/or to gain a strategic advantage. When the government raised the CIPA issue, it knew that the information was irrelevant to this case and would not be helpful to the defense. The rules pertaining to discovery and disclosure do not require the government to disclose irrelevant data. It is noteworthy that the government notified the Court that a motion to exclude the information would be filed, even before presenting it to the Court for an *in camera* review. In this respect, the government created a false issue concerning the disclosure of information that it declared potentially discoverable when it never intended to disclose the information.

The rules of disclosure limit discovery obligations to relevant and/or material information. *See* Fed. R. Crim. P. 16(a)(1)(A); 16(a)(1)(B)(i) ("relevant written or recorded statement"); *see also* 16(a)(1)(E) (tangible documents that are "material to preparing the defense"). The CIPA disclosure did not trigger disclosure obligations.

The Court concludes that the government intentionally used non-discoverable, irrelevant material as *a faux pas* basis for delaying Murta's trial because it was unprepared. Motives and reasons aside, intentional bad-faith delay weighs heavily in Murta's favor. *Barker*, 407 U.S. at 531 n.32 (quoting *United States v. Marion*, 404 U.S. 307, 325 (1971)).

### iii. Assertion of the Speedy Trial Right

Murta has aggressively asserted sought a speedy trial since, at least August 2021.  He opposed the government motion for excludable delay [DE 232 at 3] that it filed when Murta sought to sever his case from the other codefendants. *See* [DE 252 at 3] and [DE 282].  Hence, the Court concludes that the defendant has aggressively sought a speedy trial.

### iv. Prejudice

The fourth *Barker* factor requires the Court to determine whether Murta has suffered actual prejudice.  *United States v. Frye*, 372 F.3d 729, 737, 739 (5th Cir. 2004). "Actual prejudice is assessed in light of the three following interests of the defendant: (1) to prevent oppressive pre-trial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (internal quotations omitted).

It bears repeating that Murta's incarceration from June 2, 2021, through March 10, 2022, has taken its toll on Murta and his family in multiple ways.  His circumstances are more severe than those of a typical non-violent defendant would suffer when charged with like or similar crimes in his home country or the United States.  Murta also suffers from a very serious health condition that has received inadequate medical treatment during his stay in the United States.  Medical records reflect that if the condition goes untreated, it can result in a loss of hearing or even death. The severity of his  condition is corroborated by multiple physicians from multiple countries, including reputable United States physicians.  The government does not dispute these medical facts, but does dispute the question of prejudice.

The Court holds that the defendant's Sixth Amendment right to a speedy trial has been violated, and this finding constitutes an independent basis for dismissing this case against him with prejudice.

### Rule 48(b)

Finally, the Court determines that Federal Rule of Criminal Procedure 48(b) independently supports a dismissal with prejudice.  Rule 48(b)(3) grants the Court discretion to dismiss an indictment if unnecessary delay occurs in bringing a defendant to trial.  In reviewing a Rule 48(b) dismissal, the Fifth Circuit applied the *Barker v. Wingo* factors in analyzing alleged violations of the Sixth Amendment right to a speedy trial.  The Court need not repeat the *Barker* factors, or conduct a separate *Barker* analysis of the facts, as the Court has already done so heretofore, which analysis applies here. Based on an application of those factors already addressed and applied heretofore, the Court concludes that they weigh in favor of a Rule 48(b) dismissal with prejudice.

The Court has carefully and scrupulously considered the government's arguments against dismissal, and particularly dismissal with prejudice, and has not taken the government's arguments lightly.  But, the Court finds them lacking in light of its conduct.  For the heretofore found reasons, the Court holds that the Superseding Indictment against defendant, Paulo Jorge Da Costa Casqueiro Murta should be, and is hereby, DISMISSED with prejudice.

It is so ORDERED.

SIGNED on June 6, 2023, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge